1  BLAKE M. HARPER
    HULETT HARPER STEWART LLP
2  2225 Broadway
    Suite 1350
3  San Diego, California  92101
    Telephone: (619) 338-1133
4

5  OLIMPIO LEE SQUITIERI
    SQUITIERI & FEARON, LLP
6  32 East 57th Street
    12th Floor
7  New York, New York 10022
    Telephone: (212) 421-6492
8
    Attorneys for Plaintiffs
9

10  DONNA M. MEZIAS (SBN 111902)
    AKIN GUMP STRAUSS HAUER & FELD LLP
11  580 California Street, Suite 1500
    San Francisco, CA 94104
12  Telephone:  415-765-9500
    Facsimile:  415-765-9501
13  dmezias@akingump.com

14  Attorney for Defendant
    Home Depot U.S.A., Inc.
15

16               UNITED STATES DISTRICT COURT

17            SOUTHERN DISTRICT OF CALIFORNIA

18

| 19 | JOHN AMBROSINO, ET AL. | No. 3:11-cv-01319-L-MDD |
| 20 | Plaintiffs, | |
| 21 | v. | MEMORANDUM IN SUPPORT OF SECOND RENEWED JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT |
| 22 | HOME DEPOT U.S.A., INC., | |
| 23 | Defendant. | |
| 24 | | JUDGE: Honorable M. James Lorenz |
| 25 | | |

26

27

28

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

I.    BACKGROUND .............................................................................................. 1

II.   THE COURT SHOULD APPROVE THE PARTIES' SETTLEMENT. ........ 2

      A.    The Settlement Is Fair And Reasonable. .............................................. 3

      B.    The Scope Of The Revised Waiver And Release Is Fair And
            Reasonable. ........................................................................................... 6

III.  PLAINTIFFS' FEE AND EXPENSE APPLICATION SHOULD BE
      APPROVED. ................................................................................................... 6

      A.    Plaintiffs' Counsel's Attorneys' Fees Of 33.3% And Expenses Are
            Subject To A Private Agreement With Their Clients And Are
            Reasonable. ........................................................................................... 6

      B.    The Requested Attorneys' Fees Are Reasonable. ................................. 8

            1.    Plaintiffs' counsel has achieved exceptional results. ................. 9

            2.    This litigation was extremely risky. .......................................... 10

            3.    Each plaintiff has approved the settlement and award of 33.3
                  % in attorney's fees. ................................................................. 11

            4.    Plaintiffs' counsel carried the financial burden of this
                  litigation ..................................................................................... 11

            5.    Attorney's fee awards in other cases support a 33.3% award
                  here. ............................................................................................ 11

      C.    Plaintiffs' Counsel's Fees Are Reasonable Under The Lodestar
            Cross-Check. ........................................................................................ 12

      D.    The Request For Reimbursement Of Reasonable Out-of-Pocket
            Expenses Merits Approval. .................................................................. 16

IV.   CONCLUSION ............................................................................................ 19

## TABLE OF AUTHORITIES

*Almodova v. City & County of Honolulu,*
  No. 07-00378 DAE-LEK, 2010 WL 1372298 (D. Haw. Mar. 31, 2010) ..... 8

*Aquilino v. Home Depot U.S.A., Inc.,*
  04-cv-4100 (PGS) (D.N.J. 2004) ........................................................ passim

*Barbosa v. Cargill Meat Solutions Corp.,*
  297 F.R.D. 431 (E.D. Cal. 2013) ..................................................................... 6

*Blackwell v. Foley,*
  724 F. Supp. 2d 1068 (N.D. Cal. 2010) ...................................................... 14

*Burkholder v. City of Fort Wayne,*
  750 F. Supp. 2d 990 (N.D. Ind. 2010) .......................................................... 7

*Campanelli v. Hershey Co.,* No. C 08-1862 BZ,
  2011 WL 3583597 (N.D. Cal. May 4, 2011) ............................................ 7, 8

*Caudle v. Bristow Optical Co.,*
  224 F.3d 1014 (9th Cir. 2000) ..................................................................... 13

*Clements v. Serco, Inc.,*
  530 F.3d 1224 (10th Cir. 2008) ..................................................................... 3

*Cunningham v. Cnty. of Los Angeles,*
  879 F.2d 481(9th Cir. 1988) ....................................................................... 13

*Desmond v. PNGI Charles Town Gaming, L.L.C.,*
  630 F.3d 351 (4th Cir. 2011) ......................................................................... 3

*Faican v. Rapid Park Holding Corp.,*
  No. 10-CV-1118 (JG), 2010 WL 2679903 (E.D.N.Y. July 1, 2010) ............. 8

*Fisher v. City of San Diego,*
  No. 12-CV-1268-LAB-NLS, 2013 WL 4401387
  (S.D. Cal. Aug. 14, 2013) ............................................................................ 16

*Franco v. Ruiz Food Prods., Inc.,*
  No. 1:10-cv-02354-SKO, 2012 WL 5941801
  (E.D. Cal. Nov. 27, 2012) ............................................................................ 12

*Garner v. State Farm Mut. Auto. Ins. Co.,*
  No. CV-08-1365 CW, 2010 WL 1687829
  (N.D.Cal. Apr. 22, 2010) ............................................................................. 11

*Glass v. UBS Fin. Servs., Inc.,*
  No. CV-06-4068 MMC, 2007 WL 221862
  (N.D. Cal. Jan. 26, 2007) ............................................................................... 5

*Graham et al. v. Overland Solutions, Inc.,*
  No. 3:10-cv-00672-BEN-BLM (S.D.Cal. Jan. 14, 2013) ..................... 15, 16

ii

*Grant v. Capital Mgmt. Servs., L.P.,*
   No. 10-cv-2471-WQH (BGS), 2014 WL 888665
   (S.D. Cal. Mar. 5, 2014) .................................................................. 15

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) ..................................................... 13

*Harris v. Marhoefer,*
   24 F.3d 16 (9th Cir. 1994) ..................................................... 16, 18

*In re Mego Fin. Corp. Sec. Litig.,*
   213 F.3d 454 (9th Cir. 2000) ......................................................... 5

*In re Omnivision Techs., Inc.,*
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................... 11

*In re Wash. Pub. Power Supply Sys. Sec. Litig.,*
   19 F.3d 1291 (9th Cir. 1994) ..................................................... 11

*Johnson v. Home Depot U.S.A., Inc.,*
   No. 3:11-cv-03561-PGS-TJB (D.N.J. Mar. 3, 2014) ........................ 6, 7, 12

*Jordan v. Multnomah Cnty.,*
   815 F.2d 1258 (9th Cir. 1987) ..................................................... 16

*Kerr v. Screen Extras Guild, Inc.,*
   526 F.2d 67 (9th Cir. 1975) ......................................................... 13

*Kim v. Space Pencil, Inc.,*
   No. C 11-03796 LB, 2012 WL 5948951 (N.D. Cal. Nov. 28, 2012) .......... 13

*Lamonica v. Safe Hurricane Shutters, Inc.,*
   711 F.3d 1299 (11th Cir. 2013) ..................................................... 3

*Lee v. The Timberland Co.,*
   No. C 07-2367 JF, 2008 WL 2492295 (N.D. Cal. June 19, 2008) ....... passim

*Love v. Home Depot U.S.A., Inc.,*
   No. 4:11-cv-00485-JMM (E.D. Ark. Mar. 5, 2014) .......................... 7, 12

*Lynn's Food Stores, Inc. v. United States,*
   679 F.2d 1350 (11th Cir. 1982) ..................................................... 2

*Monterrubio v. Best Buy Stores, L.P.,*
   291 F.R.D. 443 (E.D. Cal. 2013) ................................................... 5

*Moore v. Fitness Int'l, LLC,*
   No. 3:12-cv-1551-LAB-NLS (S.D.Cal. Oct. 8, 2013) ..................... 15

Moreno v. City of Sacramento,
   534 F.3d 1106 (9th Cir. 2008) ..................................................... 14

*Powers v. Eichen,*
   229 F.3d 1249 (9th Cir. 2000) ..................................................... 12

iii

*Ransom v. M. Patel Enters., Inc.,*
    734 F.3d 377 (5th Cir. 2013) ........................................................... 3

*Rippee v. Boston Mkt. Corp.,*
    No. 05cv1359 BTM (JMA) (S.D.Cal. Oct. 10, 2006) ................................. 12

*Scott v. Memory Co., LLC,*
    No. 3:09cv290-SRW, 2010 WL 4683621
    (M.D. Ala Nov. 10, 2010) .................................................................... 7

*Singer v. Becton Dickinson & Co.,*
    No. 08-CV-821-IEG (BLM), 2010 WL 2196104
    (S.D. Cal. June 1, 2010) ..................................................................... 12

*Smalley v. Home Depot U.S.A., Inc.,*
    No. 3:11-cv-02951-JCS (N.D. Cal. Mar. 17, 2014) ......................... 6, 11, 12

*Thalheimer v. City of San Diego,*
    No. 09cv2862-IEG(BGS), 2012 WL 1463635
    (S.D. Cal. Apr. 26, 2012) .................................................................... 15

*Tijero v. Aaron Bros., Inc.,*
    --- F.R.D. ---,  2013 WL 6700102 (N.D. Cal. Dec. 19, 2013) ................. 15

*Trinh v. JPMorgan Chase & Co.,*
    No. 07-cv-01666 W(WMC),  2009 WL 532556
    (S.D. Cal. Mar. 3, 2009) ..................................................................... 3

*Urnikis-Negro v. Am. Family Prop. Servs.,*
    616 F.3d 665 (7th Cir. 2010) ............................................................... 3

*Valerio v. Putnam Assocs. Inc.,*
    173 F.3d 35 (1st Cir. 1999) ................................................................. 3

*Vasquez v. Coast Valley Roofing, Inc.,*
    670 F. Supp. 2d 1114 (E.D. Cal. 2009) ........................................... 6, 16

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (9th Cir. 2002) ....................................................... 8, 11

*Williams v. Costco Wholesale Corp.,*
    No. 02cv2003 IEG (AJB), 2010 WL 2721452
    (S.D. Cal. July 7, 2010) ...................................................................... 5

iv

1    Plaintiffs John Ambrosino, Angela Ashworth, Susan Clarke, Merat Farokhnia,

2 Susan Giebelhaus, David Ingle, Peggy Jensen, Joseph Leon, Joseph Lorenz, Jennifer

3 Machamer, Jose Mendoza, Christopher Mills, Kevin Mussro, and Michael Sanchez

4 (collectively "plaintiffs") and defendant Home Depot U.S.A., Inc. renew their request

5 for approval of their agreement to settle the plaintiffs' the Fair Labor Standards Act

6 claims.

7    On April 28, 2014, the Court denied without prejudice the renewed joint request

8 of the parties for approval of their settlement. (DE 73.)  The parties have revised their

9 settlement agreement to address the deficiencies noted in the April 28 Order relating to

10 the scope of the waiver and release provision and provide additional information herein

11 to address the remaining deficiencies referenced by the Court.  The information includes

12 the ranges of possible recovery, number of overtime hours worked by plaintiffs, and

13 how settlement and attorney's fees amounts were determined.  Based on the revisions

14 made by the parties, the Court should approve the parties' settlement agreement.

15  I.    BACKGROUND

16    Plaintiffs are former Home Depot assistant store managers who filed consents to

17 join *Aquilino v. Home Depot U.S.A., Inc*., No. 04-cv-04100 (PGS) (D.N.J.), an FLSA

18 collective action.  In February 2011, the district court decertified *Aquilino*, which had

19 been conditionally certified as a collective action.  2011 WL 564039, at *1, *12.

20    In June 2011, plaintiffs' counsel filed the instant action on behalf of 109 named

21 plaintiffs,[1] alleging that Home Depot improperly classified them as exempt from federal

22 and in some instances state overtime requirements.[2]  (DE 1.)  Home Depot denied that

23 any of the plaintiffs were improperly classified.  (DE 24.)  Plaintiffs' counsel also filed

24 _____

25 [1]  Fourteen plaintiffs remain—Ambrosino, Ashworth, Clarke, Farokhina, Giebelhaus, Ingle, Jensen, Leon, Lorenz, Machamer, Mendoza, Mills, Mussro, and Sanchez.  All other plaintiffs have been voluntarily dismissed.

26 [2]  Plaintiffs subsequently filed an Amended Complaint.  (DE 21.)  Because this is not a Rule 23 class action, there is no requirement that the Court approve settlement of the state law claims.

28                                      1

five additional federal actions with other former *Aquilino* opt-in plaintiffs. *See* Declaration of Lee Squitieri ("Squitieri Decl.") at ¶ 8, attached hereto as Exhibit A. Each of the other actions has settled after a similarly large proportion of plaintiffs voluntarily dismissed, and the respective courts have approved the settlements. *Id.* at ¶ 4, 8.

During this litigation and in *Aquilino*, the parties engaged in substantial discovery and legal argument. In September 2013, the parties participated in a full-day mediation with Mark S. Rudy, an experienced mediator with significant experience mediating wage and hour actions. Squitieri Decl. at ¶ 3. During that mediation, the parties made substantial progress. *Id.* The parties ultimately reached a settlement agreement on December 16, 2013 with the ongoing assistance of Mr. Rudy. *Id.*

On March 24, 2014, the parties filed a renewed joint motion seeking approval of their settlement. (DE 72.) On April 28, the Court denied, without prejudice, the parties' motion, because the (1) parties provided insufficient evidence and analysis relating to the fairness and adequacy of the agreement, including the ranges of possible recovery, the number of overtime hours worked, and how the parties calculated the amounts to be paid to each plaintiff; (2) scope of the waiver and release in the agreement was overly broad; and (3) parties provided insufficient evidence and analysis showing the fairness and reasonableness of the requested attorney's fees. (DE 73.)

Based on this Order, the parties narrowed the scope of the waiver and release of claims and have executed a revised settlement agreement, which is attached to the Declaration of Lee Squitieri as Exhibit 2.

II.   THE COURT SHOULD APPROVE THE PARTIES' SETTLEMENT.

A district court may approve an FLSA settlement as long as the settlement is a fair and reasonable settlement of a bona fide dispute. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). In deciding whether a settlement under the FLSA is "fair and reasonable" courts balance numerous factors, including "the

strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the extent of the discovery completed, the stage of the proceedings, and the experience and views of counsel." *Trinh v. JPMorgan Chase & Co.,* No. 07-cv-01666 W(WMC),  2009 WL 532556, at *1 (S.D. Cal. Mar. 3, 2009).

### A.   The Settlement Is Fair And Reasonable.

The settlement here is a fair and reasonable compromise of the plaintiffs' claims. This action originally involved 109 plaintiffs, but 95 voluntarily dismissed their claims, and only 14 plaintiffs remain. Squitieri Decl. at ¶ 2.  The parties engaged in significant discovery, including the depositions of six plaintiffs and the exchange of thousands of pages of documents. *Id.* at ¶¶ 6, 9.  However, due to the fact-intensive inquiry required to determine whether each plaintiff was properly classified as exempt from federal overtime requirements, the parties recognized that significant time and expense would be expended if the litigation continued and the uncertainty of litigation. *See id.* at ¶¶ 9-10.  In this context, the parties entered arm's length settlement negotiations that were facilitated by an experienced mediator.  *Id.* at ¶ 3.

Plaintiffs have considered the potential value of their claims and concluded that the proposed settlement provides a fair and reasonable resolution of their claims.  In particular, plaintiffs calculated potential damages for each plaintiff by:  (1) identifying the number of weeks each plaintiff worked during the relevant limitations period, (2) identifying each plaintiff's salary as an assistant manager, (3) calculating the overtime pay[3] for 15 hours of overtime per week. Squitieri Decl. at ¶ 12.  The parties agreed that,

---

[3]  Weekly overtime pay was calculated based upon the half-time and time and a half methods.  The United States Department of Labor and every federal court of appeals to address the issue has endorsed the half-time method. *See Ransom v. M. Patel Enters., Inc.,* 734 F.3d 377, 386-88 (5th Cir. 2013); *Lamonica v. Safe Hurricane Shutters, Inc.,* 711 F.3d 1299, 1310-12 (11th Cir. 2013); *Desmond v. PNGI Charles Town Gaming, L.L.C.,* 630 F.3d 351, 357 (4th Cir. 2011); *Urnikis-Negro v. Am. Family Prop. Servs.,* 616 F.3d 665, 680-82 (7th Cir. 2010); *Clements v. Serco, Inc.,* 530 F.3d 1224, 1230-31 (10th Cir. 2008); *Valerio v. Putnam Assocs. Inc.,* 173 F.3d 35, 38-40 (1st Cir. 1999); DOL Op. Ltr. (FLSA 2009-3), Jan. 14, 2009.  The half-time method assumes that the manager has already been paid for all straight-time hours worked and thus is entitled to only one-half of his or her regular rate for hours worked over 40.  While the Ninth

3

1   based on Home Depot's policy of scheduling assistant managers for 55 weekly hours,

2   15 hours per week was a reasonable estimate of the overtime hours of each plaintiff. *Id.*

3   at ¶ 12. Based upon the above assumptions, potential damages for each plaintiff were

4   calculated under the FLSA's standard two-year limitations period[4] and/or California's

5   three-year limitations period for named plaintiff Joseph Lorenz.[5] The estimated total

6   damages for plaintiffs' claims was $238,404. *Id.* at ¶ 13.

7       Plaintiffs contend that they were entitled to liquidated damages equal to the

8   amount of back pay if Home Depot was unable to establish that it acted in good faith

9   and with a reasonable belief that it was not violating the FLSA in classifying plaintiffs

10  as exempt from overtime. *See* 29 U.S.C. § 260 (2012). Thus, the plaintiffs' possible

11  recovery ranged from $0, if they were found to be properly classified as exempt, to

12  $238,404, if they were found to be improperly classified, to $476,808, if they were

13  found to be improperly classified and Home Depot could not establish that it in good

14  faith classified plaintiffs as exempt. Squitieri Decl. at ¶ 13.

15      In compromising their claims for $224,062 (not including attorney's fees), each

16  plaintiff received about 47 percent of their maximum damages. Plaintiffs have fully

17  evaluated the likelihood of prevailing on the merits of their claims and defenses and

---

19  Circuit has not yet addressed the half-time method, Home Depot believes that there is
    no reason to believe that it would not agree with its sister circuits. If the time-and-a-half
20  method was used to calculate damages, plaintiffs estimate that their maximum recovery,
    including liquidated damages, would have been about $1.4 million under the two-year
21  limitations period for non-willful violations and about $1.6 million under the three-year
    limitations period for willful violations. Squitieri Decl. at ¶ 13; *see* 29 U.S.C. §255(a)
    (2012) (limitations period for willful violations is three years).
22  [4] The parties did not base their settlement discussions on damages under the FLSA's
    extended three-year statute of limitations because there was insufficient evidence to
23  establish that Home Depot willfully misclassified plaintiffs. However, under a three-
    year limitations period, plaintiffs estimated that their damages would have been
24  $544,988 under the half-time method, including liquidated damages. Squitieri Decl. at ¶
    13.
25  [5] Plaintiff Lorenz was the only plaintiff with a viable state law misclassification claim.
    Squitieri Decl. at ¶ 15, n.3. Since California law calculates unpaid overtime at a rate of
26  1.5 times the regular rate and plaintiff Lorenz worked more weeks during the three-year
    state limitations period than other plaintiffs, his damages were significantly higher than
27  other plaintiffs. *See id.*

28                                          4

determined that this is a fair compromise of their claims.  Home Depot supports this
result because it eliminates the risks, uncertainties, and cost of further litigation.  Forty-
seven percent is well within the range that courts have found to be fair and reasonable
given the costs and uncertainty of litigation.  *See, e.g., In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454, 459 (9th Cir. 2000) (finding settlement for one-sixth of the potential
maximum was fair and adequate); *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D.
443, 454 (E.D. Cal. 2013) (finding settlement for 57 percent of maximum exposure in
wage-hour action was fair and reasonable); *Williams v. Costco Wholesale Corp.*, No.
02cv2003 IEG (AJB), 2010 WL 2721452, at *4 (S.D. Cal. July 7, 2010) (settlement for
over 75 percent of the plaintiffs' claimed losses from unpaid overtime was reasonable);
*Glass v. UBS Fin. Servs., Inc.,* No. CV-06-4068 MMC, 2007 WL 221862, at *4 (N.D.
Cal. Jan. 26, 2007) (settlement of a wage and hour class action for 25 to 35 percent of
claimed damages was reasonable under circumstances), *aff'd*, 331 F. App'x 452 (9th
Cir. 2009).

Additionally, each plaintiff received his or her pro rata share of the award based
on his or her salary, number of weeks worked as an assistant store manager during the
limitations period, and whether he or she had a viable California state law claim.
Squitieri Decl. at ¶¶ 12, 14.   No plaintiff was given any preferential treatment.  *Id.* at ¶
14.   Thus, the agreement was fair.  *See, e.g., Tijero v. Aaron Bros., Inc.,* --- F.R.D. ---,
2013 WL 6700102, at *8 (N.D. Cal. Dec. 19, 2013) (finding settlement fair and
reasonable as "[t]here is no indication that the proposed settlement improperly grants
preferential treatment to class representatives or segments of the class . . . [and t]he
methodology agreed to by the parties for allocating [settlement amount] appears fair and
reasonable"); *Monterrubio*, 291 F.R.D. at 455 (no preferential treatment among
settlement recipients supports that settlement was fair).  Indeed, in signing the
agreement, each plaintiff was fully aware of the total recovery, his or her pro rata share,
and the pro rata shares of each other plaintiff. Squitieri Decl. at ¶¶ 17-18.  This fact

supports that each plaintiff found his or her pro rata share to be fair and adequate.  *See*

*Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013)

(positive reaction of settlement class supports that agreement was fair and adequate).

      B.    The Scope Of The Revised Waiver And Release Is Fair And Reasonable.

      The parties have revised the waiver and release provision to address the Court's

concern that the provision was "overly broad." (DE 73 at 4.)  Specifically, the parties

have revised paragraphs 3, 8, and 24, and removed former paragraph 6, to limit the

scope of the waiver and release to claims based on or arising from the allegations that

they were misclassified as exempt from federal and state overtime requirements.  *See*

Ex. B, at ¶ 8.  This provision is proper because the "released claims appropriately track

the breadth of [p]laintiffs' allegations in the action and the settlement does not release

unrelated claims that [plaintiffs'] may have against defendant[]."  *Vasquez v. Coast*

*Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1126 (E.D. Cal. 2009) (release of claims

"based on or arising from the allegations that they were or are improperly compensated

under federal, California, or local law" in wage-hour action proper in scope).

III.    PLAINTIFFS' FEE AND EXPENSE APPLICATION SHOULD BE
      APPROVED.

      A.    Plaintiffs' Counsel's Attorneys' Fees Of 33.3% And Expenses Are Subject
            To A Private Agreement With Their Clients And Are Reasonable.

      The Court should approve plaintiffs' attorney's fees in the amount of $113,588.76

and expenses in the amount of $39,291.15.  As other courts have already found, these

amounts are reasonable.  *See e.g.*, *Smalley v. Home Depot U.S.A.*, Inc., No. 3:11-cv-

02951-JCS (N.D. Cal. Mar. 17, 2014) (approving settlement in the parallel matter that

included an award of 33.3% in attorneys' fees and a *pro rata* allocation of expenses);

*Johnson v. Home Depot U.S.A., Inc.*, No. 3:11-cv-03561-PGS-TJB (D.N.J. Mar. 3,

1 | 2014) (same); *Love v. Home Depot U.S.A., Inc.*, No. 4:11-cv-00485-JMM (E.D. Ark.
2 | Mar. 5, 2014) (same).[6]

3 |      The settlement herein "is a privately negotiated settlement." *Campanelli v.*
4 | *Hershey Co.,* No. C 08-1862 BZ, 2011 WL 3583597, at *1 (N.D. Cal. May 4, 2011)
5 | (approving confidential settlement under FLSA without requiring public disclosure of
6 | the settlement amounts).  Unlike a Rule 23 class, where class members are part of a
7 | certified class unless they elect to opt-out, each plaintiff in this litigation affirmatively
8 | chose to join the action and be represented by plaintiffs' counsel.  Plaintiffs' counsel
9 | took this matter on a contingency basis.  Squitieri Decl. at ¶ 20.  Thus, counsel did not
10 | receive any payment for their time spent litigating, nor did they receive reimbursement
11 | for their out-of-pocket expenses during the litigation.  *Id.*  Plaintiffs' counsel alone
12 | undertook the financial risk of unsuccessful litigation.  *Id.*  Plaintiffs' counsel has legal
13 | services agreements with all plaintiffs in this litigation.  *Id.*  Those agreements provide
14 | for payment of attorney's fees to counsel in the amount of one third of any settlement
15 | amount after expenses are deducted from the gross settlement amount.  *Id.*  Moreover,
16 | before accepting the terms of the settlement, each plaintiff was advised of and accepted
17 | the amount of fees and expenses on his/her behalf as part of the settlement.  *Id.*

18 |      The Court should honor those private agreements and approve the payment of
19 | attorney's fees on a contingency basis in the amount of $113,588.76.  *Scott v. Memory*
20 | *Co., LLC,* No. 3:09cv290-SRW, 2010 WL 4683621, at *1 (M.D. Ala Nov. 10, 2010)
21 | (settlement approved with attorney's fees paid according to plaintiff's contingency
22 | agreement with his attorney); *Burkholder v. City of Fort Wayne,* 750 F. Supp. 2d 990,
23 | 997 (N.D. Ind. 2010) (33.3% of the total settlement amount proper in an FLSA action);

---

[6] These courts reviewed and approved these substantially similar settlement agreements in *Love* and *Smalley in camera*, maintaining the confidentiality provisions of those settlement agreements.  As such, the parties have not included the total settlement amount or any specific dollar amounts of those settlements here.

7

MEMORANDUM IN SUPPORT OF SECOND RENEWED JOINT MOTION TO APPROVE SETTLEMENT
AGREEMENT

1  *Faican v. Rapid Park Holding Corp.*, No. 10-CV-1118 (JG), 2010 WL 2679903, at *2

2  (E.D.N.Y. July 1, 2010) (approving fee award of 33.3 % in an FLSA action).

3      The Court's obligation on approval of an FLSA settlement is to determine that

4  attorney's fees are reasonable. *Campanelli*, 2011 WL 3583597, at *1.  This action was

5  part of a complex multi-district litigation in which plaintiffs' counsel litigated plaintiffs'

6  claims aggressively and resulted in substantial monetary relief for plaintiffs. *See infra*

7  section __.  In light of these circumstances, the Court should find that the contingency

8  arrangement is a reasonable payment of attorney's fees.

9      B.   The Requested Attorneys' Fees Are Reasonable.

10     The FLSA "requires that a settlement agreement include an award of reasonable

11  fees." *Lee v. The Timberland Co.,* No. C 07-2367 JF, 2008 WL 2492295, at *2 (N.D.

12  Cal. June 19, 2008), *citing* 29 U.S.C. § 216(b) (court in such action shall, in addition to

13  any judgment awarded to the plaintiff or plaintiffs, "allow a reasonable attorney's fee to

14  be paid by the defendant, and the costs of the action").

15     When assessing the reasonableness of attorney's fees, district courts in the Ninth

16  Circuit examine the following factors to determine "what a proper percentage is for an

17  award of attorney's fees:  (1) the results achieved; (2) the risks of litigation; (3) whether

18  there are benefits to the class beyond the immediate generation of a cash fund; (4)

19  whether the percentage rate is above or below the market rate; (5) the contingent nature

20  of the representation and the opportunity cost of bringing the suit; (6) reactions from the

21  class; and (7) a lodestar cross-check." *Burden v. SelectQuote Ins. Servs.*, No. C 10-5966

22  LB, 2013 WL 3988771, at *4 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-

23  52 (9th Cir. 2002)); *see Almodova v. City & County of Honolulu*, No. 07-00378 DAE-

24  LEK, 2010 WL 1372298, at *7 (D. Haw. Mar. 31, 2010). ("In reviewing the proposed

25  fees for reasonableness," court will use the principles of the traditional lodestar method

26  as a guide).  Taking these factors into consideration, a 33% award is warranted in this

27  action.

28

8

1                   1.    <u>Plaintiffs' counsel has achieved exceptional results.</u>

2       It is often difficult to pinpoint a realistic "potential recovery" in an FLSA action

3  because there are multiple variables that go into an FLSA damage analysis which cause

4  numbers to vary widely.  For example, the half-time overtime method creates an almost

5  75% reduction in damages.  *See* Squitieri Decl. at ¶ 13.  The Ninth Circuit has yet to

6  decide this issue, but there was a significant risk to plaintiffs that Home Depot would

7  prevail on this issue here or in the Ninth Circuit since every circuit court to have

8  resolved the issue has decided in favor of the employer.  *See supra* FN 3.  And there

9  was additional uncertainty regarding damages because liquidated damages can double

10  damages and the limitations period can be two or three years.

11       Based on the damage calculation variables, the settlement is an exceptional result.

12  Plaintiffs' possible recovery ranged from $0, if they were found to be properly classified

13  as exempt, to $238,404, if they were found to be improperly classified as exempt, to

14  $476,808, if they were found to be improperly classified as exempt, and Home Depot

15  could not establish that it classified plaintiffs as exempt in good faith.  Squitieri Decl. at

16  ¶ 13.  In compromising their claims for $224,062 (not including attorneys' fees), each

17  plaintiff received about 47% of their maximum damages.  But even if the plaintiff were

18  somehow able to establish that Home Depot's alleged violations were willful, plaintiffs'

19  maximum damage sunder a three-year statute of limitations would have been $544,988,

20  including liquidated damages.  Squitieri Decl. at ¶ 13.  Plaintiffs received about 41% of

21  this amount in the settlement.

22       In light of the uncertainties concerning the underlying liability, applicable statute

23  of limitations, availability of liquidated damages, and use of the half-time method for

24  calculating damages, all of which were hotly contested, the settlement amount of

25  $$224,062 (not including attorneys' fees) is an exceptional result as compared to any

26  number of potential outcomes.

27

28

9

### 2.    This litigation was extremely risky.

Prior to this action being filed, plaintiffs and plaintiffs' counsel faced substantial risks in *Aquilino v. Home Depot U.S.A., Inc.,* 04-cv-4100 (PGS) (D.N.J. 2004). Despite plaintiffs' counsel's efforts, the district court decertified the *Aquilino* collective action, which is a point when most actions like this end. However, plaintiffs' counsel refused to abandon the opt-in plaintiffs who wished to continue with their claims and filed this matter, along with others, and pursued a multi-district approach for all opt-in plaintiffs.

Plaintiffs employed by Home Depot in the southwest and southern California brought this action under the FLSA.[7] The litigation was complex and difficult in great part because the law in this area is currently in a state of flux. For instance, if plaintiffs were able to establish that they were misclassified as exempt from overtime, there are significant questions as to whether they are entitled to overtime at a rate of 1.5 or .5 their regular rate of pay. The Ninth Circuit has not resolved this question yet and the parties had begun briefing the issue for this Court before they reached a settlement agreement. And while plaintiffs believe that their claims that they were misclassified were strong, there are risks attendant to this litigation. Indeed, Home Depot strongly denies that it misclassified plaintiffs and may have sought summary judgment against each plaintiff prior to trial. Although plaintiffs' counsel successfully opposed previous summary judgment motions brought by Home Depot, there was no guarantee that the same results could be achieved here. In other words, plaintiffs faced significant risk of not prevailing on the merits or having their potential recovery reduced by two-thirds if this Court adopted the half time overtime method.

---

[7] Plaintiff Lorenz also asserts a California state wage and hour claim, which is included in his settlement.   Squitieri Decl. at ¶ 15, FN 3.

10

3.     Each plaintiff has approved the settlement and award of 33.3 % in attorney's fees.

Each plaintiff has approved of plaintiffs' counsel obtaining 33.3% in attorney's fees which supports the request for fees. *See* Squitieri Decl. at ¶ 17; *see Burden*, 2013 WL 3988771, at *5 (finding class members' reaction to settlement favored a 33% award); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008) (finding class members' reaction to fees of 28% supports decision to approve fees).

4.     Plaintiffs' counsel carried the financial burden of this litigation.

Plaintiffs' counsel accepted this matter on a contingent basis with the attendant risk that counsel would receive no fee or expense reimbursement. As is evident from the attorney time and expenses invested to date, plaintiffs' counsel were committed to litigating the action through trial and beyond. Further, litigating this action required plaintiffs' counsel to forgo significant other work. Courts have recognized that the public interest is served by rewarding attorneys who assume representation on a contingent fee basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299-1300 (9th Cir. 1994); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1046-47; *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW, 2010 WL 1687829, at *2 (N.D. Cal. Apr. 22, 2010); *Burden*, 2013 WL 3988771, at *5 (approving a 33% fee award because counsel assumed substantial risk and litigated on a contingent basis).

5.     Attorney's fee awards in other cases support a 33.3% award here.

As previously explained, this action is one of four remaining lawsuits originating out of *Aquilino* that is being resolved through an aggregate settlement. Each of the other three district courts have approved plaintiffs' request for a fee award of 33.3% plus expenses, which supports the same result here. *See Smalley v. Home Depot U.S.A.*,

11

Inc., No. 3:11-cv-02951-JCS (N.D. Cal. Mar. 17, 2014) (approving settlement that included an award of 33.3% in attorney's fees and a *pro rata* allocation of expenses); *Johnson v. Home Depot U.S.A., Inc.*, No. 3:11-cv-03561-PGS-TJB (D.N.J. Mar. 3, 2014) (same); *Love v. Home Depot U.S.A., Inc.*, No. 4:11-cv-00485-JMM (E.D. Ark. Mar. 5, 2014) (same).

Moreover, a fee award of 33.3% is within the acceptable range of awards within this Circuit. "The typical range of acceptable attorneys' fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement value, with 25 percent considered a benchmark percentage." *Franco v. Ruiz Food Prods., Inc.*, No. 1:10-cv-02354-SKO, 2012 WL 5941801, at \*15 (E.D. Cal. Nov. 27, 2012) (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)). While 25% is the benchmark in other kinds of actions, courts within this Circuit typically award 33.3% in FLSA and other wage and hour actions. *See e.g., Burden*, 2013 WL 3988771, at \*4-5 (awarding attorney's fees of 33.3% in a FLSA misclassification matter); *Franco*, 2012 WL 5941801, at \*17-18, \*22 (awarding 33% in attorney's fees and collecting nine actions where the award ranged from 30 to 33.3%); *Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at \*5, \*8-9 (S.D. Cal. June 1, 2010) (in a wage and hour action awarding 33.3% in attorney's fees plus expenses where the settlement payout amounted to 28.84% of the total claimed losses); *Rippee v. Boston Mkt. Corp.*, No. 05cv1359 BTM (JMA) (S.D.Cal. Oct. 10, 2006) (DE 70 at 7-8) (awarding a 40% fee on in a wage and hour class action).

C.    Plaintiffs' Counsel's Fees Are Reasonable Under The Lodestar Cross-Check.

Even if plaintiffs' attorney's fees and expenses were not governed by retainer agreements, the request for attorneys' fees of 33.3% and expenses are reasonable based on the lodestar method employed in this Circuit. "In employment, civil rights and other injunctive [] actions, courts often use a lodestar calculation because there is no way to

gauge the net value of the settlement or any percentage thereof." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).  The lodestar calculation multiplies the number of hours reasonably expended by the reasonable rates requested.  *See Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1028 (9th Cir. 2000).  The Ninth Circuit considers the lodestar figure is "presumptively reasonable," *Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988), but recognizes that the district court may adjust it up or down by a positive or negative multiplier reflecting a number of "reasonableness" factors, "including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *See Hanlon*, 150 F.3d at 1029 (*citing Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).  "The customary range for multipliers is between 1.0 and 4.0." *Kim v. Space Pencil, Inc.*, No. C 11-03796 LB, 2012 WL 5948951, at *7-8 (N.D. Cal. Nov. 28, 2012) (awarding fees with a multiplier of 1.18 under the lodestar method).  The lodestar here confirms that the 33.3% request is reasonable.

The Agreement provides that, out of the total settlement amount, Home Depot will pay $152,879.91 to Squitieri & Fearon, LLP, as attorney's fees and litigation costs incurred in prosecuting this lawsuit for plaintiffs. *See* Settlement Agreement at ¶ 7. This figure includes about $113,000 in fees and $39,000 in expenses.  Squitieri Decl. at ¶¶ 22, 27.  As shown by plaintiffs' counsel's time records which list the hours worked by each individual at the firm and the general subject matter of those individual's time expenditures, plaintiffs' counsel and its staff have spent more than 475 hours working on this action. *See* Squitieri Decl. at ¶¶ 22-23; Ex. 3.  Plaintiffs' counsel's lodestar is based on the hours that were incurred investigating plaintiffs' claims, communicating with the plaintiffs, reviewing and analyzing documents produced by Home Depot and the plaintiffs, preparing the first complaint and the Amended Complaint, conducting necessary legal research, briefing a MDL motion, briefing a motion for partial summary judgment seeking a ruling on the proper measure for damages, engaging in mediation

13

and settlement negotiations, conducting discovery, and preparing the agreements and pleadings related to the settlement. See *id.* Given these activities, the number of plaintiffs involved, and the complexity of the legal issues involved, the hours plaintiffs' counsel incurred are reasonable.[8]

Plaintiffs' counsel estimates that hundreds of additional hours between 2004-2011 have been spent related to this litigation, which plaintiffs' counsel has not included in the lodestar calculation. This time was spent in *Aquilino v. Home Depot U.S.A., Inc.*, 04-cv-4100 (PGS) (D.N.J.), in which counsel obtained conditional certification of a national class which allowed plaintiffs the ability to opt into the litigation, tolled the statute of limitations for plaintiffs while the motion for conditional certification was pending, and took and defended multiple depositions and obtained document discovery from Home Depot, all of which plaintiffs' counsel believes furthered plaintiffs' claims in this matter. Squitieri Decl. at ¶ 23.

Based on the documented 475 hours of work by plaintiffs' counsel, the requested fee award of $113,000 averages to an hourly rate of less than $240. Squitieri Decl. at ¶ 20. The parties agree that this is a reasonable hourly rate for a complex litigation in Southern California. Moreover, plaintiffs' counsel's submits that its rates, between $225.00 and $695.00 per hour, are reasonable based on each attorney's position and

---

[8] Courts "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno v. City of Sacramento,* 534 F.3d 1106, 1112 (9th Cir. 2008); *Blackwell v. Foley,* 724 F. Supp. 2d 1068, 1081 (N.D. Cal. 2010) ("An attorney's sworn testimony that, in fact, [she] took the time claimed ... is evidence of considerable weight on the issue of the time required." (citation omitted)). To reduce the number of hours worked, "it must appear that the time claimed is obviously and convincingly excessive under the circumstances." *Blackwell,* 724 F. Supp. 2d at 1081 (citation omitted). "It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee." *Moreno,* 534 F.3d at 1112.

14

experience level and are within the average rates charged in the San Diego area.[9] *See Grant v. Capital Mgmt. Servs., L.P.*, No. 10-cv-2471-WQH (BGS), 2014 WL 888665, at *6 (S.D. Cal. Mar. 5, 2014) (finding attorneys' billable rates reasonable in complex litigation where the billable rates ranged for partners from $875.00 to $525.00, from $395 to $245.00 for associates, and $150.00 for paralegals); *Thalheimer v. City of San Diego*, No. 09cv2862-IEG(BGS), 2012 WL 1463635, at *7 (S.D. Cal. Apr. 26, 2012) (in a civil rights action approving attorney rates two years ago within a range of $225 to $600 and refusing to reduce rates based on rates requested 3½ years prior "because fees are to be determined by application of current, rather than historic, hourly rates.")

Other fee applications of wage and hour matters before this District Court reveals that plaintiffs' counsel's billing rates are within the average rates charged for those attorneys practicing in similar matters within this District.  For example, in 2012, Scott Cole and Associates, APC sought a 33.3 % award in attorney's fees and billed at rates that ranged between $320 for attorneys admitted to the bar in 2011 to $720 for attorneys admitted to the bar in 1992. *See Moore v. Fitness Int'l, LLC*, No. 3:12-cv-1551-LAB-NLS (S.D.Cal. Oct. 8, 2013) (DE 32-1 at 6, Exs. D, E) (attached to the Squitieri Decl. as Ex. 5).  The *Moore* court subsequently granted plaintiffs' counsels' request for 33.3% in fees. *Moore et al. v. Fitness Int'l, LLC*, 3:12-cv-1551-LAB-NLS (S.D.Cal. Oct. 8, 2013) (DE 36 at 9) (attached to Squitieri Decl. as Ex. 5).

Similarly, in 2013, the attorneys pursuing a FLSA class action sought a 30% award in attorney's fees based on a 1.26 mulitplier.[10]  The attorneys' billable rates ranged from $750, $700, and $650 for partners admitted to the bar in 1974, 1984, and 1987 respectively, and an hourly rate of $350.00 for an associate admitted in 2001. *See Graham et al. v. Overland Solutions, Inc.*, No. 3:10-cv-00672-BEN-BLM (S.D.Cal. Jan.

---

[9]  For travel time, plaintiffs' counsel bills at ½ their regular rate.
[10]  The parties do not contend that a multiplier is applicable here, and none has been applied.

14, 2013) (DE 102-2 at 4, 8, 9-15) (attached to the Squitieri Decl. as Ex. 7).  The court in *Graham* subsequently granted class counsel's request for attorney's fees. *Graham et al. v. Overland Solutions, Inc.*, No. 3:10-cv-00672-BEN-BLM (S.D.Cal. Jan. 30, 2013) (DE 106 at 2) (attached to the Squitieri Decl. as Ex. 7).

Taking into account the factors discussed above, including the results achieved, complexity and risk of the litigation, and the skill and experience of counsel, the rates requested by plaintiffs' counsel are reasonable and appropriate.

The requested fee of $113,588.76 is merely approximately 72% of plaintiffs' counsel's lodestar of $158,383.38, and there is a strong presumption that plaintiffs' counsel's lodestar figure represents a reasonable fee.[11] *See* Squitieri Decl. at ¶ 22. "The lodestar figure is presumptively reasonable [] and courts do not frequently adjust it after it is calculated." *Fisher v. City of San Diego*, No. 12-CV-1268-LAB-NLS, 2013 WL 4401387, at *4 (S.D. Cal. Aug. 14, 2013) (citing *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987) and *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994)). Accordingly, plaintiffs' counsel requests that the Court approve plaintiffs' request for attorney's fees in the amount of $113,588.76. *See e.g.*, *Burden*, 2013 WL 3988771, at *5 (in an FLSA class action, approving an award of 33.3% where total lodestar value was above the amount requested.); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491-92 (E.D. Cal. 2010) *(*approving a fee award of 33 1/3% of the common fund where class counsel's asserted lodestar was less than the fee award).

> **D.**     **The Request For Reimbursement Of Reasonable Out-of-Pocket Expenses Merits Approval.**

Plaintiffs' counsel is also entitled to reimbursement of reasonable out-of-pocket expenses.  Starting from 2004 through the present, plaintiffs' counsel has incurred a

---

[11]  Even if partner-in-charge Lee Squitieri billed at $600 an hour and the supervising associate Caitlin Duffy billed at $225 an hour continuously throughout the litigation, plaintiffs' counsel's lodestar of $120,914.50 would still be above the requested fees. *See* Squitieri Decl. at ¶ 22; Ex. 3.

MEMORANDUM IN SUPPORT OF SECOND RENEWED JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT

total of $182,826.00 in expenses litigating this action on behalf of plaintiffs and the others involved in the aggregate settlement. Squitieri Decl. at ¶ 28; Ex. 8. Those expenses include, among other things mediator fees, filing fees, correspondence with clients, depositions and related travel expenses, court appearances and the mediation, and document discovery from defendant. *See id.* Specifically, plaintiffs' counsel incurred $135,476.18 in expenses in the earlier *Aquilino* action that are relevant to this litigation. *Id.* at ¶ 29. Plaintiffs' counsel has excluded the additional expenses that were not borne for the common good of the opt-in plaintiffs. *Id.* Additionally, plaintiffs' counsel capped those expenses incurred for everyone in *Aquilino* at $105,000 before allocating them among the plaintiffs and the other 27 plaintiffs who are settling their claims in the aggregate settlement. *See id.* Plaintiffs' counsel also incurred an additional $47,352.42 in expenses for the 41 plaintiffs, including the 14 plaintiffs here, who are part of the aggregate settlement with Home Depot. *Id.* Thus plaintiffs' counsel only sought a total of $152,352.00 of its expenses from the aggregate settlement. *Id.*

Some of the 41 plaintiffs sat for depositions while others had yet to be deposed. Squitieri Decl. at ¶ 30. Each plaintiff however would eventually be deposed and their testimony might have contributed to the strength of other claims. *Id.* As such, plaintiffs' counsel believed it was fair to allocate all costs and expenses (including those incurred for individual plaintiff's depositions) to each plaintiff on a *pro rata* basis that was determined by each plaintiff's claim value in relation to the other plaintiffs in the aggregate settlement. *Id.* Plaintiffs' counsel allocated those expenses across all 41 of the settling plaintiffs based on each plaintiff's *pro rata* share in the total aggregate settlement. *Id.* As such, plaintiffs' counsel seeks reimbursement of $39,291.15 in expenses from plaintiffs' settlement. Squitieri Decl. at ¶ 31. This amount is based on plaintiffs' *pro rata* share of expenses in relation to the 27 other plaintiffs who are part of the aggregate settlement with Home Depot. *Id.*

MEMORANDUM IN SUPPORT OF SECOND RENEWED JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT

1    Plaintiffs' counsel's agreements with their clients provide for reimbursement of

2  litigation expenses in addition to payment of attorney's fees.  Squitieri Decl. at ¶ 20.

3  Plaintiffs were informed of their *pro rata* share[12] of the expenses and approved their

4  allocation of the expenses before agreeing to the settlement.  *Id.* at ¶¶ 17-18.  Thus, the

5  Court should honor the private agreements between plaintiffs' counsel and its clients

6  and approve reimbursement of $39,291.15 of expenses through this settlement.

7    Additionally, these expenses are those that would typically be billed to a paying

8  client in a non-contingency matter and therefore plaintiffs' counsel's expenses are

9  reasonable.  *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that

10  attorneys may recover reasonable expenses that would typically be billed to paying

11  clients in non-contingency matters.)  In *Harris*, the court held that expenses for service

12  and summons of a complaint, service of trial subpoenas, the fee for a defense expert at a

13  deposition, postage, investigator, copying, hotel bills, meals, messenger service, and

14  employment record reproduction were reasonable.  *Id.* at 19-20.  Courts also find that

15  travel expenses are reasonable litigation expenses.  *See Burden*, 2013 WL 3988771, at

16  *5 (approving travel related expenses in FLSA matter.)

17    For these reasons, the Court should approve plaintiffs' counsel's reimbursement

18  of $39,291.15 of expenses.

---

26  [12]  Plaintiffs' pro rata share of the expenses was based on the value of his or her claim in
27  relation to the other 41 plaintiffs in the total aggregate settlement.  *See* Squitieri Decl. at
    ¶ 14.

28

MEMORANDUM IN SUPPORT OF SECOND RENEWED JOINT MOTION TO APPROVE SETTLEMENT
AGREEMENT

11-cv-001319

IV.   CONCLUSION

For the foregoing reasons, the parties jointly request that the Court approve the settlement agreement as fair and reasonable and enter an order dismissing plaintiffs' claims with prejudice.

Respectfully submitted,

Dated: May 27, 2014

/s/ *Lee Squitieri*
Lee Squitieri (pro hac vice)
Squitieri & Fearon, LLP
32 E. 57th Street, 12th Floor
New York, NY 10022
Telephone: (212) 421 – 6492
Fax: (212) 421 – 6553
lee@sfclasslaw.com
caitlin@sfclasslaw.com

Attorneys for plaintiffs

Dated: May 27, 2014

/s/ *Donna Mezias*
Donna M. Mezias
Akin Gump Strauss Hauer & Feld LLP
580 California Street, Suite 1500
San Francisco, California 94104-1036
Telephone:  (415) 765-9500
Facsimile:  (415) 765-9501

Attorney for defendant Home Depot U.S.A., Inc.

## Signature Certification

Pursuant to section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual, I hereby certify that the content of this document is acceptable to Donna Mezias, counsel for the defendant, and that I have obtained Ms. Mezias's authorization to affix her electronic signature to this document.

/s/ Lee Squitieri
Lee Squitieri

MEMORANDUM IN SUPPORT OF SECOND RENEWED JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT

11-cv-001319

## CERTIFICATE OF SERVICE

I am employed in the County of New York, State of New York. I am over the age of 18 and not a party to the within action; my business address is: 32 East 57th Street, 12th Floor, New York, New York 10022. On May 27, 2014, I served the foregoing document(s) described as:

### MEMORANDUM IN SUPPORT OF SECOND RENEWED JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT

on the interested party(ies) below, using the following means:

### All parties identified for Notice of Electronic Filing generated by the Court's CM/ECF system under the referenced case caption and number

for BY ELECTRONIC MAIL OR ELECTRONIC TRANSMISSION. Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent to the respective e-mail address(es) of the party(ies) as stated above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

### *(by U.S. Mail)*

Donna M. Mezias
Akin Gump Strauss Hauer & Feld LLP
580 California Street, Suite 1500
San Francisco, California 94104-1036

☒ BY UNITED STATES MAIL   I enclosed the documents in a sealed envelope or package addressed to the respective address(es) of the party(ies) stated above and placed the envelope(s) for collection and mailing, following our ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid at New York, New York.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on May 27, 2014 at New York, New York.

*/s/Lee Squitieri*
Lee Squitieri