# EXHIBIT A

BLAKE M. HARPER
HULETT HARPER STEWART LLP
2225 Broadway
Suite 1350
San Diego, California 92101
Telephone: (619) 338-1133

OLIMPIO LEE SQUITIERI
SQUITIERI & FEARON, LLP
32 East 57th Street
12th Floor
New York, New York 10022
Telephone: (212) 421-6492

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN AMBROSINO, ET AL.<br><br>Plaintiffs,<br><br>v.<br><br>HOME DEPOT U.S.A., INC.,<br><br>Defendant. | Case No. 13:11-cv-01319-L-MDD<br><br>DECLARATION OF LEE SQUITIERI IN SUPPORT OF JOINT MOTION FOR APPROVAL OF SETTLEMENT AND DISMISSAL |

LEE SQUITIERI, pursuant to 28 U.S.C. § 1746, declares:

1.  My name is Lee Squitieri. I am a partner with the law firm of Squitieri & Fearon, LLP, and am the counsel for plaintiffs in this matter. I make this declaration in support of the parties' Joint Motion to Approve Settlement and Dismissal of Claims.

## BACKGROUND

2. This action was regionally filed by 109 plaintiffs. Ninety-five plaintiffs voluntarily dismissed their claim, and only 14 plaintiffs remain and are subject to the settlement.

3. In September 2013, the parties participated in a full-day mediation with Mark S. Rudy, an experienced mediator with significant experience mediating wage and hour actions. *See* Exhibit 1 (Mark Rudy's Resume). The parties made substantial progress. The parties reached an agreement in principal to settle plaintiffs' claims on December 16, 2013.

4. The settlement is based on an aggregate settlement agreement[1] reached with Home Depot to settle the claims of the 41 plaintiffs that remained in the multi-district litigation that included, this action, as well as *Smalley et al. v. Home Depot, U.S.A.*, Inc., 3:11-cv-02951-JCS (N.D. Cal. Mar. 17, 2014) (approving settlement in parallel matter that included a 33.3% attorneys' fees award and *pro rata* allocation of expenses); *Johnson et al. v. Home Depot, U.S.A., Inc.*, 3:11-cv-03561-PGS-TJB (D.N.J. Mar. 3, 2014) (same); *Love v. Home Depot, U.S.A., Inc.*, 4:11-cv-00485-JMM (E.D.Ark. Mar. 5, 2014) (same). Subject to the Court's approval, the parties agreed to resolve the claims of the 14 plaintiffs in this action, for a total of $376,941.72, inclusive of

---

[1] Since *Smalley* and *Love* are subject to confidentiality provisions which were approved by those courts, I have not included the total aggregate settlement dollar amount here.

attorney's fees and costs. Attached hereto as Exhibit 2 is a true and correct copy of the revised settlement agreement executed by plaintiffs in this action.

5. This settlement is the culmination of litigation that began in 2004 when my firm brought a collective action against Home Depot, in the district court of New Jersey stylized *Aquilino v. Home Depot, U.S.A., Inc.*, 04-cv-4100, alleging that the company misclassified its merchandising assistant store managers and specialty assistant store managers as exempt from overtime in violation of the Fair Labor Standards Act, 29 U.S.C. 216(b). Through our efforts, the district court in *Aquilino* conditionally certified a national class and permitted us to send notice to the potential opt-in members.[2] The plaintiffs in this action subsequently opted in to that litigation.

6. Between 2004 and 2011, the parties engaged in significant discovery, which included dozens of depositions of opt-in plaintiffs (including plaintiffs Ashworth and Mills), depositions of Home Depot corporate officers, as well as the exchange of thousands of pages of documents.

7. In 2011, Home Depot moved to decertify the collective action and, while plaintiffs' counsel's strenuously opposed decertification, the district court granted the motion and dismissed without prejudice the plaintiffs who had opted-in to *Aquilino*.

---

[2] Plaintiffs were also able to obtain a tolling order from the District Court which tolled the statutory time period for 308 days while it decided plaintiffs' counsel's motion for conditional certification.

8. Typically, when a collective action is decertified that ends the litigation. But despite the significant time needed to pursue these claims, the significant litigation costs and risks of recovery, my firm did not want abandon the plaintiffs who had opted-in to the litigation and wished to continue to pursue their claims. Instead, we filed six actions in six different jurisdictions, including this one. Out of those six actions, four of those actions were the subject of the parties' mediation with Mark Rudy and the parties' aggregate settlement agreement and one had previously settled. The respective courts have approved all of the settlements.

9. In June 2011, we filed this action on behalf of 109 opt-ins who generally worked in Home Depot stores in the southwest and in Southern California. Since the filing of this action, the parties have exchanged additional discovery. Plaintiffs Mills and Ashworth had been deposed in *Aquilino,* but plaintiffs Clarke, Ingle, Machamer, and Sanchez were deposed after this action was filed. The remaining eight plaintiffs were scheduled to be deposed when the parties reached a settlement agreement. Had the plaintiffs not settled, the parties would have incurred additional expenses deposing these plaintiffs as well as other witnesses that plaintiffs' counsel would have deposed.

10. Although Home Depot did not file any summary judgment motions in this action, Home Depot has filed five summary judgment motions in the other actions that are part of the aggregate settlement. Plaintiffs' counsel believed Home Depot would

have filed such motions against many of the plaintiffs here, potentially resulting in the dismissal of plaintiffs' claims.

11. In reaching this settlement amount, each party took into account a wide range of possible outcomes that would be impacted by the number of overtime hours that each Plaintiff would likely be able to prove, method for calculating overtime, the question whether the Court would award liquidated damages, or find that a three year statute of limitations should be applied. Plaintiffs also faced substantial risks that their overtime claims would be calculated under the fluctuating work week method which, as demonstrated in the chart below, drastically reduces Plaintiffs' overtime claims.

## METHOD FOR CALCULATING OVERTIME AND ALLOCATION

12. Plaintiffs' individual overtime damages were calculated based on the following factors: (1) the time period that they worked as merchandising assistant store manager or specialty assistant store manager within the statute of limitations; (2) their regular rate of pay as determined by Home Depot payroll data; and (3) an estimate of 15 hours of overtime for each week that the plaintiff worked, based on Home Depot's policy of scheduling assistant managers for 55 weekly hours.

13. Damages under the FLSA involve at least four variables: hours worked, the statute of limitations (two or three years), liquidated damages, and the half-time method of calculating damages. For the purposes of estimating damages, the parties

agreed that 15 hours of overtime per week was reasonable because plaintiffs were scheduled to work 55 hours per week. The following examples show the range of possible recovery given the remaining three variables:

| Total Time And A Half Overtime Owed – 3 Year Statute Of Limitations | Maximum Recovery With Liquidated Damages - 3 Year Statute Of Limitations | Total Time And A Half Overtime Owed – 2 Year Statute Of Limitations | Maximum Recovery With Liquidated Damages - 2 Year Statute Of Limitations |
|---|---|---|---|
| $801,555.12 | $1,603,110.25 | $686,237.24 | $1,372,474.48 |

| Total Half Time Overtime Owed – 3 Year Statute Of Limitations | Maximum Recovery With Liquidated Damages Half Time 3 Year Statute Of Limitations | Total Half Time Overtime Owed – 2 Year Statute Of Limitations | Maximum Recovery With Liquidated Damages - – 2 Year Statute Of Limitations |
|---|---|---|---|
| $272,494.32 | $544,988.64 | $238,403.90 | $476,807.81 |

14. Once a total settlement amount was agreed to by the parties, plaintiffs' individual settlement allocations were determined based on their pro rata share of the total aggregate settlement for the 41 plaintiffs based on the value of their two-year claim. No plaintiff was given preferential treatment.

15. Based on this analysis, the 14 plaintiffs in this action were allocated a total of $376,941.72. Each plaintiff's individual allocation is as follows:

| Plaintiff | Pro Rata | W-2 Portion | 1099 Portion | Fees and Costs | Total |
|---|---|---|---|---|---|
| John J. Ambrosino | 2.62% | $11,536.98 | $11,536.97 | $15,504.43 | $38,578.38 |
| Angela Ashworth | 1.86% | $8,186.97 | $8,186.97 | $11,002.39 | $27,376.33 |
| Susan M. Clarke | 2.06% | $9,102.95 | $9,102.95 | $12,233.37 | $30,439.26 |
| Merat Farokhnia | 1.56% | $6,882.12 | $6,882.12 | $9,248.82 | $23,013.05 |
| Susan J. Giebelhaus | 2.00% | $8,837.98 | $8,837.97 | $11,877.27 | $29,553.22 |

| David Ingle | 1.37% | $6,039.76 | $6,039.76 | $8,116.78 | $20,196.30 |
| Peggy M. Jensen | 0.94% | $4,163.99 | $4,163.98 | $5,595.94 | $13,923.91 |
| Joseph R. Leon | 1.48% | $6,514.05 | $6,514.05 | $8,754.17 | $21,782.26 |
| Joseph A. Lorenz[3] | 6.61% | $29,161.90 | $29,161.90 | $39,190.20 | $97,514.19 |
| Jennifer L. Machamer | 1.02% | $4,484.36 | $4,484.36 | $6,026.49 | 14,995.21 |
| Jose J. Mendoza | 1.75% | $7,735.08 | $7,735.08 | $10,395.10 | $25,865.26 |
| Christopher Mills | 0.52% | $565.40 | $565.39 | $3,082.53 | $4,213.32 |
| Kevin J. Mussro | 1.11% | $4,893.17 | $4,893.16 | $6,575.87 | $13,362.20 |
| Michael A. Sanchez | 0.89% | $3,926.22 | $3,926.22 | $5,276.39 | $13,128.83 |

16. Plaintiffs' counsel's attorneys' fees and expenses were then calculated. Pursuant to the contingency fee arrangement with each plaintiff, plaintiffs' counsel's fees amount to $113,588.76, which is 33.3% of the settlement calculated only after expenses are deducted from the settlement. As explained below, the expenses deducted here in the amount of $39,291.15 are based on each plaintiff's *pro rata* allocation of the total expenses plaintiffs' counsel incurred litigating this matter from 2004 to the present on behalf of the plaintiffs.

### Plaintiffs Have Been Fully Informed And Approved The Settlement

17. Plaintiffs' counsel sought each plaintiff's approval before agreeing to resolve their claims based on an aggregate settlement. Before agreeing to settle their claims in the aggregate, each plaintiff was informed that they would receive a pro rata allocation based on the value of their claim relative to the other 41 plaintiffs. Plaintiffs were further informed that the proposed settlement included their attorney's fees and the

---

[3] A portion of plaintiff Lorenz's claim calculation included his California overtime which was not time-barred. Plaintiff Lorenz was the only plaintiff with a viable state law misclassification claim

pro-rated expenses and would therefore be deducted out of their settlement. Plaintiffs were also informed what their net allocation (before taxes) would be before agreeing to the settlement.

18. Prior to agreeing to the initial settlement agreement, each plaintiff was advised through an email of their pro rata allocation of the aggregate settlement, their attorney's fees, and expenses. Then, after agreeing upon settlement terms, we sent the Settlement Agreement to each of the 14 plaintiffs, explained the terms of the settlement, and set forth each plaintiff's individual settlement allocation and amount paid on each plaintiff's behalf for attorney's fees and expenses associated with the settlement. My firm has been available to and has answered any questions that plaintiffs have had during the process.

19. By email, each plaintiff was further advised of the changes in the release of claims from the initial settlement agreement to the revised settlement agreement before agreeing to the Revised Settlement Agreement.

### Plaintiffs' Attorneys' Fees And Expenses Are Reasonable

20. As plaintiffs' counsel, we have worked diligently to investigate plaintiffs' claims. We also shouldered a significant risk of nonpayment if Home Depot were to prevail. The action was litigated on a 33.3% contingency fee basis, and each plaintiff has a fee agreement with our firm, which provided for payment of attorney's fees to

counsel in the amount of one third of any settlement amount after expenses are deducted from the gross settlement amount. Before accepting the terms of the settlement, each plaintiff was advised of and accepted the amount of fees and expenses on his/her behalf as part of the settlement. Counsel did not receive any payment for their time spent litigating, nor did they receive reimbursement for their out-of-pocket expenses during the litigation.

21. We seek an award of 33.3% of the net settlement fund, after the costs are deducted. Three other district courts have approved plaintiffs' request for a fee award of 33.3% plus expenses. *See Smalley et al. v. Home Depot, U.S.A.*, Inc., 3:11-cv-02951-JCS (N.D. Cal. Mar. 17, 2014) (approving settlement in the parallel matter that included an award of 33.3% in attorneys' fees and a *pro rata* allocation of expenses); *Johnson et al. v. Home Depot, U.S.A., Inc.*, 3:11-cv-03561-PGS-TJB (D.N.J. Mar. 3, 2014) (same); *Love v. Home Depot, U.S.A., Inc.*, 4:11-cv-00485-JMM (E.D.Ark. Mar. 5, 2014) (same).

22. We have put significant time and resources into the action, expending 475 hours. Our lodestar fee amount is approximately $158,383.38. We are seeking only $113,588,76.00 in attorneys' fees (one third the total settlement amount after expenses are deducted pursuant to our fee agreement with each Plaintiff). Even if I reduced my rate to $600 an hour, plaintiffs' counsel's lodestar would be $120,914.50, which is still above the requested attorneys' fees. *See* Exhibit 3. Based on the documented 475 hours

9
DECLARATION OF LEE SQUITIERI

of work by plaintiffs' counsel, the requested fee award of $113,000 averages to an hourly rate of less than $240.

23. Attached here to as Exhibit 4 are my firm's billing records for this case. Time has been tracked contemporaneously and sometime entries have been removed due to plaintiffs' counsel's billing judgment. In calculating our lodestar, we have also not included the estimated hundreds of hours of time spent litigating this matter between 2004 and 2011, in which counsel obtained conditional certification of a national class which allowed plaintiffs the ability to opt into the litigation, tolled the statute of limitations for plaintiffs while the motion for conditional certification was pending, and took and defended multiple depositions and obtained document discovery from Home Depot, all of which plaintiffs' counsel believes furthered plaintiffs' claims in this matter. However we have included half of the time we spent briefing plaintiffs' motion in *Smalley* for the proper method of calculating damages in this matter because that work was used to craft the motion filed here.

24. Attorneys from my firm billed at a rate of $225 to $695 per hour over the course of the litigation. *See* Exhibit 4. Paralegals billed at $150 per hour. *Id.* And when attorneys billed for travel, they billed at half their hourly rate. *Id.*

25. Plaintiffs' counsel's billing rates are within the range of those attorneys practicing complex wage and hour matters in this jurisdiction. For example, in 2012,

Scott Cole and Associates, APC sought a 33.3 % award in attorneys' fees and billed at rates that ranged between $320 for attorneys admitted to the bar in 2011 to $720 for attorneys admitted to the bar in 1992. *See* Exhibit 5 (*Moore et al. v. Fitness Int'l, LLC*, 3:12-cv-155`-LAB-NLS (S.D. Cal. Oct. 8, 2013) (Doc. No. 32-1 at 6, Exhibit D)). The *Moore* court subsequently granted plaintiffs' counsels' request for 33.3% in attorney's fees. *Moore et al. v. Fitness Int'l, LLC*, 3:12-cv-155`-LAB-NLS (S.D. Cal. Oct. 8, 2013) (Doc. No. 36 at 9) (attached hereto as Exhibit 6).

26. Similarly, in 2013, the attorneys pursuing a FLSA collective action sought a 30% award in attorneys' fees based on a 1.26 multiplier. The attorneys' billable rates ranged from $750, $700, and $650 for partners admitted to the bar in 1974, 1984, and 1987 respectively, and an hourly rate of $350 for an associate admitted in 2001. *See* Exhibit 7 (*Graham et al. v. Overland Solutions, Inc.*, 10CV0672 BEN (BLM), (S.D.Cal. Jan. 14, 2013) (Doc. No. 102-2)). The *Graham* Court subsequently granted class counsel's request for attorney's fees. *See* Exhibit 7 (*Graham et al. v. Overland Solutions, Inc.*, 10CV0672 BEN (BLM), (S.D.Cal. Jan. 30, 2013) (Doc. No. 106)).

27. Our fee agreements in this action also provide for reimbursement of costs. Plaintiffs' counsel thus seeks reimbursement of pro rata expenses totaling $39,291.15, all of which counsel advanced with the risk of no recovery. An itemization of plaintiffs' counsel's costs is attached hereto as Exhibit **8**.

28. The pro rata expenses are based on plaintiffs' counsel's total expenses in litigating this action, including the expenses incurred in *Aquilino v. Home Depot, U.S.A., Inc.*, 04-cv4100 (D.N.J. 2004), as well as the other three actions subject to the aggregate settlement. Starting from 2004 through the present, plaintiffs' counsel has incurred a total of $182,826.00 in expenses litigating this action on behalf of plaintiffs and the others involved in the aggregate settlement. *See* Exhibit 8. Those expenses include mediator fees, filing fees, correspondence with clients, postage, depositions and travel expenses for depositions, court appearances, as well as document discovery from defendant. *Id.*

29. Specifically, plaintiffs' counsel incurred $135,476.18 in expenses in the earlier *Aquilino* action that are relevant to this action. But plaintiffs' counsel is not seeking expenses that were not borne for the common good of the opt-in plaintiffs. Plaintiffs' counsel capped expenses incurred for everyone in *Aquilino* at $105,000 before allocating those expenses among plaintiffs and the other 27 plaintiffs who are settling their claims in the aggregate settlement. Plaintiffs' counsel also incurred an additional $47,352.42 in expenses for the 41 plaintiffs, including the 14 plaintiffs here, who are part of the aggregate settlement with Home Depot. Thus, plaintiffs' counsel only seeks $152,352.00 of its total allocable expenses from the aggregate settlement.

30. Some of the 41 plaintiffs sat for depositions while others had yet to be

12
DECLARATION OF LEE SQUITIERI

deposed. Each plaintiff however would eventually be deposed and each plaintiff who was deposed contributed to the strength of each plaintiff's claim. As such, plaintiffs' counsel believed it was fair and equitable to allocate all costs and expenses (including those incurred for individual plaintiff depositions) to each plaintiff on a *pro rata* basis that was determined by each plaintiff's claim value in relation to the other plaintiffs in the aggregate settlement. Plaintiffs' counsel allocated those expenses across all 41 plaintiffs based on each plaintiff's *pro rata* share in the total aggregate settlement.

31. Based on the claim value of each plaintiff here, plaintiffs' counsel seeks reimbursement of $39,291.15 in expenses from the plaintiffs. This amount is based on plaintiffs' *pro rata* share of expenses compared to the 27 other plaintiffs who are part of the aggregate settlement with Home Depot.

32. After fees and costs, the amount to be distributed to plaintiffs under this settlement is approximately $224,061.81. This amount is slightly higher than if the plaintiffs prevailed on liability, established the full amount of their estimated overtime hours, failed to prove a willful violation for entitlement to a third year of liability or liquidated damages, lost on the half time overtime method, but did not pay anything from the recovery to their attorneys for fees and costs.

I declare under penalty of perjury under the laws of the United States that the foregoing statements are true and correct.

_____
Lee Squitieri

Executed on May 27, 2014 in New York, New York