# EXHIBIT 5

1  Matthew R. Bainer, Esq. (S.B. #220972)
2  Molly A. DeSario, Esq. (S.B. #230763)
   Hannah R. Salassi, Esq. (S.B. #230117)
3  **SCOTT COLE & ASSOCIATES, APC**
   1970 Broadway, Ninth Floor
4  Oakland, California 94612
   Telephone: (510) 891-9800
5  Facsimile: (510) 891-7030
   Email: mbainer@scalaw.com
6  Email: mdesario@scalaw.com
   Email: hsalassi@scalaw.com
7  Web: www.scalaw.com

   Attorneys for Representative Plaintiffs
8  and the Plaintiff Class

9

10              **UNITED STATES DISTRICT COURT**

11              **SOUTHERN DISTRICT OF CALIFORNIA**

12

| | |
|---|---|
| 13  QUENTIN MOORE and LEAH ERVIN, individually, and on behalf of all others similarly situated,<br><br>14<br><br>15                    Plaintiff,<br><br>16  vs.<br><br>17  FITNESS INTERNATIONAL, LLC,<br><br>18<br><br>19                    Defendant. | Case No. 3:12-CV-1551-LAB-NLS<br><br>**COLLECTIVE ACTION**<br><br>**DECLARATION OF MOLLY A. DESARIO, ESQ. IN SUPPORT OF FINAL APPROVAL OF CLASS/COLLECTIVE ACTION SETTLEMENT**<br><br>Date:    **November 12, 2013**<br>Time:    **12:00 p.m.**<br>Room:    **Courtroom 14A**<br>Judge:   **Honorable Larry Alan Burns** |

20

21

22  I, Molly A. DeSario, do hereby declare as follows:

23       1.       I am an attorney-at-law, licensed to practice in all jurisdictions of this

24  State, and I am a Senior Associate Attorney with the law offices of Scott Cole &

25  Associates, APC ("SCA" or "Class Counsel"), attorneys-of-record for the Plaintiffs

26  and the Plaintiff Class in the above-entitled proceeding.

27       2.       I make these statements based on personal knowledge, would so testify if

28  called as a witness at trial, and have personal knowledge of the foregoing. I make this

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY NINTH FLOOR
OAKLAND, CA 94612
TEL (510) 891-9800

1   declaration in support of Plaintiffs' Motion for an Order: (1) Granting Final Approval
2   to Class/Collective Action Settlement; (2) Awarding Attorneys' Fees and Costs to
3   Class Counsel; (3) Awarding Service Payment to Representative Plaintiffs; (4)
4   Awarding Reimbursement of Settlement Administration Expenses; and (5) Entering
5   Judgment of Dismissal With Prejudice ("Motion for Final Approval").

6

7   ## PROCEDURAL HISTORY AND SETTLEMENT NEGOTIATIONS

8       3.    This case was filed by Plaintiff Moore on June 22, 2012. At around the
9   same time, Plaintiffs' counsel, Scott Cole & Associates, APC ("SCA" or "Class
10  Counsel") also began prosecuting two other cases against Defendant for claims similar
11  to those alleged on behalf of the California gym-level employees here: 1) *Commiato v.*
12  *L.A. Fitness International, LLC*, Case No. BC476852 ("*Commiato*"), filed January 13,
13  2012 and 2) *Antis v. L.A. Fitness International, LLC*, Case No. 37-2011-00096680
14  ("*Antis*"), filed August 22, 2011. The class claims in *Commiato* were dismissed on
15  August 26, 2013 and those in *Antis* were dismissed August 12, 2013.

16      4.    The *Baker* settlement received final approval on December 12, 2012,
17  subsuming the claims asserted in *Commiato* and *Antis* for the release period therein.
18  However, Class Counsel thoroughly investigated the claims of this case with specific
19  and identifiable work separate and apart from *Antis* and *Commiato*. Plaintiffs' counsel
20  conducted an extensive telephone campaign prior to mediation and obtained discovery
21  from Defendant to adequately assess the value of the class claims.

22      5.    Class Counsel also requested and received information from Defendant
23  related to meal and rest breaks at its California clubs and information related to
24  business expenses incurred by Personal Trainers. Thus, the parties are very familiar
25  with the facts and legal issues involved here and have been able to properly value the
26  claims alleged.

27      6.    On September 10, 2012, the parties attended a full day mediation session
28  with David A. Rotman, a well-respected mediator with substantial class action

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL (510) 891-9800

Declaration of Molly A. DeSario, Esq. in Support of Plaintiffs' Motion for Final Settlement Approval

1    expertise. Prior to mediation, Plaintiffs submitted a thorough Brief summarizing the

2    evidence, the state of the applicable law, and a comprehensive, class-wide damages

3    analysis. The mediation session proved fruitful and the parties reached an agreement

4    in principle. Nonetheless, the final terms of settlement were only reached after months

5    of subsequent bilateral negotiations.

6        7.    Counsel for Defendant informed me on October 3, 2013 that the 28

7    U.S.C. § 1715 notices of settlement would be sent out on or by October 7, 2013.

8

9    **FAIRNESS AND ADEQUACY OF THE SETTLEMENT AGREEMENT**

10       8.    Class Counsel evaluated the Settlement by weighing the maximum

11   damages available to the Class and Collective Members for their overtime and

12   statutory break claims against the relevant risk factors. These risks included:

13       • Some employees, such as personal trainers and sales representatives,
14         work several hours off-the-clock each week, while others, such as class
15         instructors, reported that they worked generally only about 2 hours a
16         week and rarely worked off-the-clock.

17       • The aggregate value of all time spent by class instructors outside of
18         teaching group classes amounted to about $25,000.

19       • Defendant also pays Class Instructors for an hour of their time, even
20         though classes last only 50 minutes, to account for any off-the-clock
21         work.

22       • Around April of 2010, L.A. Fitness modified its time-keeping procedures
23         to allow Class Instructors to report all time worked separate and apart
24         from teaching their group classes.

25       • Although other categories of employees might work more hours in a
26         week, they are even less likely to perform work off-the-clock, given that
27         most of their duties will be performed on-site (vs. instructors, who might
28         prepare choreography or music at home).

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

- Plaintiffs' off-the-clock claims are vulnerable to a defense that the claims are de minimis, and had to be discounted.
- Class Members also reported missing an average of one meal period per week.
- Defendant verified that a significant number of meal period premiums were paid and only unreported missed meal periods were uncompensated.
- Class Members also missed approximately one rest break per week. Because employers have no obligation to record rest periods, the relative lack of written proof, besides the declarations from the Class Members, would have diminished the prospect of certifying the claim.
- The Supreme Court's decision in Brinker v. Super.Ct., 165 Cal. App. 4th 25, 21 (2008) (holding that employers "need only provide [meal breaks] and not ensure they are taken"), was a decidedly mixed result with regard to meal and rest break claims, favorable to workers in parts, but also establishing doctrines favorable to employers.
- Plaintiffs alleged that L.A. Fitness did not reimburse Class Members for expenses incurred by the employees in the execution of their duties. As a general matter, Defendant would likely argue that such claim raise individualized issues, citing variances in expenses such as mileage and the lack of documentation.
- In August of 2011, Defendant clarified its reimbursement policies in an email to all L.A. Fitness employees.
- L.A. Fitness provided a sampling of 17,000 employee time records (for 150 employees). The sampling allowed for one to determine the scheduled time (the time for which the employee was paid) and the time recorded by the log-in and log-out times. These records revealed that the

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

-4-

median underpayment for all of Defendant's hourly employees was approximately 3 hours per workweek.

- Plaintiffs also brought claims for PAGA penalties and waiting-time penalties, based on the failure to pay for all time worked and pay the appropriate meal and rest premiums. Defendant could have argued that PAGA penalties are discretionary, and any amount sought could be reduced or denied in full by a court (Cal.Lab.Code § 2699.3(1)).

- The lack of published cases to provide courts with guidance as to the application and discretion in approving PAGA awards renders valuation of the amount uncertain and implies a corresponding discount for settlement.

- Section 203 arguably requires a willful failure to pay wages, and in light of the difficulties associated with establishing a common policy of paying wages after they are due, the value of the claim had to be discounted.

9. Class Counsel's opinion that this settlement represents a fair, adequate, and reasonable result for the class is based on its weighing of the maximum possible recovery against the strengths of the defenses to class certification, liability, and damages as outlined in this declaration.

10. Based thereon, Class Counsel reached the conclusion that the proposed Settlement is in the best interests of the class.

## CLASS COUNSEL

11. Since SCA was founded in 1992, its attorneys have devoted themselves primarily to prosecuting employment law matters and, since 2000, almost exclusively to class actions. In that time, the firm has litigated a large number of wage and hour class actions dealing with meal and rest break violations, and was one of the first

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

1    California firms to devote itself so entirely to a wage and hour practice. A true and
2    correct copy of SCA's professional resume is attached hereto as Exhibit "G."

3         12.    SCA's attorneys regularly serve as guest speakers at wage and hour
4    conferences and have written articles on wage and hour class action issues. SCA
5    served as co-counsel in connection with the largest meal and rest period-only
6    settlement in the nation's history (*Cornn/Despres v. United Parcel Service, Inc. et al.*,
7    Case No. 3:03-cv-02001 THE (N.D. Cal. 2007) ($87 million)) and has successfully
8    achieved class certification in difficult factual scenarios. *See, e.g., Kurihara v. Best*
9    *Buy*, Case No. C 06-01884 MHP (N.D. Cal. 2007) (49,000+ non-exempt employee
10   class certified for meal/rest period violations due to employee security checks); *Torres*
11   *v. ABC Security*, Case No. RG04158744 (Alameda County Sup. Ct.) (1,600 person
12   class of security guards working at scores of different work sites).

13        13.    Consistent with the negotiated Settlement Agreement, SCA requests an
14   award of fees equal to 33 1/3% of the Gross Settlement Amount, in light of the risks
15   incurred and benefits procured on behalf of the Settlement Class. Defendant does not
16   oppose this request.

17        14.    From the outset, the prosecution of this case has involved significant
18   financial risks for Class Counsel. SCA undertook this matter solely on a contingent
19   basis, with no guarantee of recovery of fees or even reimbursement of costs, and no
20   guarantee as to the potential duration of this litigation.

21        15.    The time Class Counsel spent on litigation and the settlement process
22   in this case prevented it from pursuing other work at the same hourly rates reflected in
23   the lodestar it submitted here. Indeed, SCA devoted 590 hours to litigating this action
24   against Defendant.  These 590 billable hours do not include any administration work,
25   work SCA has completed on related cases *Commiato* and *Antis*, or work completed on
26   the Baker settlement.

27        16.    Class Counsel has provided this Court with a summary of its hourly
28   rates (which are scaled in accordance with the degree of specialization, expertise and

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
1970 BROADWAY, NINTH FLOOR
THE WACHOVIA TOWER
OAKLAND, CA 94612
TEL: (510) 891-9800

1   reputation they bring to this litigation) and hours billed in this matter, which reflect

2   contemporaneous time records kept by all SCA staff throughout the litigation. SCA

3   has reported a total lodestar of roughly $216,877.50.

4       17.    In the course of this litigation, Class Counsel incurred substantial costs in

5   the form of legal and factual research, photocopies, fax, travel, postage and telephone

6   charges, with SCA incurring over $10,698.99 (as of September 30, 2103). SCA will

7   incur additional expenses through the completion of the distribution process including,

8   but not limited to, photocopies, fax, postage and telephone charges.

9

10                       **EXHIBITS**

11       18.    Attached hereto and marked as **Exhibit "A"** is a true and correct copy of

12   the fully executed settlement agreement entitled "Stipulation of Class and Collective

13   Action Settlement and Release."

14       19.    Attached hereto and marked as **Exhibit "B"** as a true and correct copy of

15   the Declaration of Krista Tittle, for Simpluris, Inc., Appointed Claims Administrator.

16       20.    Attached hereto and marked as **Exhibit "C"** is a true and correct copy of

17   Notice of Motion and Motion for Final Approval of Class Action Settlement;

18   Memorandum of Points and Authorities in *Baker et al. v. L.A. Fitness International,*

19   *LLC*, Case No. BC438654.

20       21.    Attached hereto and marked as **Exhibit "D"** is a true and correct copy of

21   SCA's professional resume which outlines some of this firm's experience in

22   complex/class litigation. As this resume demonstrates, SCA has substantial experience

23   prosecuting complex litigation and/or class action lawsuits and is devoted almost

24   exclusively to the prosecution of wage and hour actions such as this.

25       22.    Attached hereto and marked as **Exhibit "E"** is a true and correct copy of

26   SCA's Lodestar Summary Report.

27       23.    Attached hereto and marked as **Exhibit "F"** is a true and correct copy of

28   SCA's Cost Journal.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

24.     Attached hereto and marked as **Exhibit "G"** is a true and correct copy of the Declaration of Quentin Moore.

25.     Attached hereto and marked as **Exhibit "H"** is a true and correct copy of the Declaration of Leah Ervin.

I declare, under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this October 8th, 2013 at Oakland, California.

/s/ Molly A. DeSario
Molly A. DeSario, Esq.
Attorneys for the Representative Plaintiffs
and the Plaintiff Class

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

Declaration of Molly A. DeSario, Esq. in Support of Plaintiffs' Motion for Final Settlement Approval

# EXHIBIT A

1 MATTHEW R. BAINER (S.B. #220972)
mbainer@scalaw.com
2 MOLLY A. DESARIO (S.B. #230763)
mdesario@scalaw.com
3 SCOTT COLE & ASSOCIATES, APC
1970 Broadway, Ninth Floor
4 Oakland, CA 94612
Telephone: (510) 891-9800
5 Facsimile: (510) 891-7030

6 Attorneys for Named Plaintiffs and putative plaintiff
collective and class
7

8 FRAMROZE M. VIRJEE (S.B. #120401)
fvirjee@omm.com
9 O'MELVENY & MYERS LLP
400 South Hope Street
10 Los Angeles, CA 90071-2899
Telephone: (213) 430-6000
11 Facsimile: (213) 430-6407

12 ADAM J. KARR (S.B. #212288)
akarr@omm.com
13 O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
14 Newport Beach, CA 92660-6429
Telephone: (949) 760-9600
15 Facsimile: (949) 823-6994

16 Attorneys for Defendant
FITNESS INTERNATIONAL, LLC
17

18 **UNITED STATES DISTRICT COURT**

19 **SOUTHERN DISTRICT OF CALIFORNIA**

20

21 QUENTIN MOORE, individually, and on | Case No. 3:12-cv-1551-LAB-NLS
behalf of all others similarly situated,
22 | **COLLECTIVE ACTION**
Plaintiff,
23 | **JOINT STIPULATION OF CLASS**
v. | **AND COLLECTIVE ACTION**
24 | **SETTLEMENT AND RELEASE**
FITNESS INTERNATIONAL, LLC,
25
Defendants.
26

27

28

# I.
# PREAMBLE

1.     This Joint Stipulation of Class and Collective Action and Release ("Settlement" or "Agreement") is entered into between Plaintiffs Quentin Moore ("Moore") and Leah Ervin ("Ervin") (collectively, the "Named Plaintiffs") individually and as representatives on behalf of certain additional putative collective members (collectively, with Moore, the "Settlement Collective") and class members (collectively, with Ervin, the "Settlement Class") as further defined in Section III of this Agreement, and defendant Fitness International, LLC ("Fitness International"), formerly known as L.A. Fitness International, LLC.  The Settlement Collective, Settlement Class, and Fitness International will be referred to collectively herein as the "Settling Parties."

2.     On June 22, 2012, Moore, a former Fitness International "Personal Trainer," filed the instant action ("*Moore*" or "the Action") in the U.S. District Court for the Southern District of California.  Moore asserts the following claims:  (i) failure to pay wages under the Fair Labor Standards Act ("FLSA"); (ii) failure to pay overtime wages under California Labor Code §§ 510, 1194, and 1198 and Industrial Welfare Commission Wage Order 7; (iii) failure to provide meal and rest periods under California Labor Code §§ 226.7 and 512; (iv) failure to reimburse expenses and/or prohibited cash bond under California Labor Code §§ 406 and 2802; (v) failure to provide accurate itemized wage statements under California Labor Code §§ 226 and 1174; and (vi) unfair business practices under California Business & Professions Code §§ 17200-17208.  Moore also seeks penalties under California's Private Attorneys General Act for his California-law causes of action.  Moore brings his first claim for relief on behalf of a putative nationwide collective under the FLSA.  He asserts the remainder of his claims individually (i.e. not on behalf of a class or collective).

3.     The Settling Parties have agreed that Moore will prepare and file an Amended Complaint naming Ervin as an additional named plaintiff in the instant Action.  Specifically, Ervin holds or held the position of "Operations Manager" with Fitness International in the state of

1    California and began her employment with Fitness International on or after December 1, 2011.

2    Moore intends to file the Amended Complaint simultaneously with the Motion for Preliminary

3    Approval of the Settlement.  The Amended Complaint shall be substantially in the form attached

4    hereto as Exhibit A, and shall include additional claims on behalf of the Settlement Class for: (i)

5    unlawful failure to pay overtime wages under California Labor Code §§ 510, 1194, and 1198 and

6    Industrial Welfare Commission Wage Order 7;  (ii) failure to provide meal and rest periods under

7    California Labor Code §§ 226.7 and 512; (iii) failure to reimburse expenses and/or prohibited

8    cash bond under California Labor Code §§ 406 and 2802; (iv) failure to provide accurate itemized

9    wage statements under California Labor Code §§ 226 and 1174; (v)  unfair business practices

10   under California Business & Professions Code §§ 17200-17208; (vi) penalties under California's

11   Private Attorneys General Act; (vii) unpaid minimum wages under California Labor Code §§

12   1194, 1197 and 1197.1; (viii) unlawful wage deductions under California Labor Code §221; (viii)

13   wages not timely paid upon termination under California Labor Code §§ 201 and 202; (x) wages

14   not timely paid during employment under California Labor Code § 204; and (xi) breach of

15   contract.

16       4.    Moore's counsel has a second case pending against Fitness International in Los

17   Angeles County Superior Court: *Commiato v. L.A. Fitness International, LLC*, Case No.

18   BC476852 ("*Commiato*").  After filing the current Action, Moore, a former named plaintiff in

19   *Commiato*, was dismissed from that case.  *Commiato* was filed on January 13, 2012.  Commiato

20   alleges the same California-law causes of action that Moore asserts individually in the Action, but

21   on behalf of a putative class of California-based, Fitness International personal trainers.  On May

22   7, 2012, the *Commiato* court sustained Fitness International's demurrer and stayed *Commiato*

23   indefinitely.

24       5.    Moore's counsel also has a third case pending against Fitness International in San

25   Diego County Superior Court: *Antis v. L.A. Fitness International, LLC*, Case No. 37-2011-

26   00096680 ("*Antis*").  *Antis* was filed on August 22, 2011.  Antis alleges similar causes of action

27   as the *Commiato* plaintiffs, but on behalf of a class of California-based, Fitness International

28

- 3 -

1    group fitness instructors.  On July 23, 2012, *Antis* was stayed by the Honorable Emilie Elias, who

2    was reviewing a petition to coordinate *Antis* and *Commiato* with several other California-law

3    class actions brought against Fitness International.

4        6.    The claims asserted in *Commiato* and *Antis*, as well as the claims in several other

5    cases, were subsumed by the class action settlement of another California-law class action

6    pending against Fitness International in Los Angeles County Superior Court: *Baker et al. v. L.A.*

7    *Fitness International, LLC*, Case No. BC438654 ("*Baker*").  The *Baker* court granted final

8    approval of the settlement on December 12, 2012.

9        7.    The settlement class in *Baker* consists of all non-exempt, club level Fitness

10   International employees who were employed by Fitness International in the State of California

11   from May 26, 2006, to November 30, 2011.

12       8.    On September 10, 2012, the Settling Parties attended a private mediation with Mr.

13   David Rotman and reached a preliminary agreement, which is now set forth in this document.

14       9.    While the Action was only filed six months ago, Fitness International has been

15   involved in litigation with Moore in *Commiato* for a year and with Class Counsel in *Antis* for

16   longer.  Over the course of the Action, *Commiato*, and *Antis*, the Settling Parties have engaged in

17   significant litigation.  They have propounded two hundred twenty-two discovery requests; noticed

18   two depositions; filed three *ex parte* applications, three motions, and a demurrer; and zealously

19   argued their positions related to the *Baker* settlement through filings and appearances at hearings

20   in that matter.  In addition, Fitness International has already extensively litigated the issues

21   presented here in the *Baker* action.  In *Baker*, the parties exchanged hundreds more discovery

22   requests and responses, held the depositions of named plaintiffs and Fitness International's Person

23   Most Knowledgeable, and litigated certain issues all the way to the California Supreme Court.

24   Thus, while the Action is still in its early stages, the Settling Parties are very familiar with the

25   facts and legal issues presented here and are able to properly value the claims involved.

26       10.   The Settling Parties have now agreed to avoid further litigation and to settle and

27   resolve all existing and potential disputes, actions, lawsuits, charges and claims that the

28

- 4 -

1   Settlement Collective and the Settlement Class has or may have against Fitness International, to

2   the fullest extent permitted by law and without any admission of liability or wrongdoing by either

3   party.  The Named Plaintiffs and their counsel have concluded that the Settlement reflected herein

4   is fair, reasonable, and in the best interests of the Settlement Collective and the Settlement Class

5   and respectfully request that the Settlement be approved by the Court.

6       11.     This Agreement shall become effective upon the "Effective Date," as set forth in

7   Section VI below.  The Settling Parties hereby agree to do all things and to engage in all

8   procedures reasonably necessary and appropriate to obtain final Court approval of this

9   Agreement, in consideration for:  (a) the payment by Fitness International of the consideration

10  described herein, subject to the terms, conditions and limitations of this Agreement; and (b) the

11  release of claims by the members of the Settlement Collective and the Settlement Class, as

12  described in Paragraphs 38, 71, 72, 73, and 74 of this Agreement, and entry of judgment

13  thereafter.

14                                          **II.**
                 **PAYMENTS TO THE SETTLING COLLECTIVE AND SETTLING**
15               **CLASS, CLASS COUNSEL, NAMED PLAINTIFFS, AND THE CLAIMS**
                                     **ADMINISTRATOR**
16

17      12.     Subject to Court approval and the provisions of this Agreement, Fitness

18  International shall pay up to a maximum of six hundred thousand U.S. dollars and no cents

19  ($600,000) on a claims-made basis (except for Moore and Ervin, who are automatically deemed

20  to be part of the Settling Collective and Settling Class, respectively, as defined below) (the "Gross

21  Settlement Value" or "GSV") to be paid in consideration for the settlement of this Action and the

22  related release of all claims the members of the Settlement Collective and the Settlement Class

23  may have against Fitness International, as described in Paragraphs 38, 71, 72, 73, and 74 of this

24  Agreement.

25      13.     No portion of the GSV shall be disbursed or distributed until after the Effective

26  Date.

27

28

JOINT STIP OF CLASS ACTION
                                                   SETTLEMENT AND RELEASE
                                                   3:12-cv-1551-LAB-NLS

14.     The Gross Settlement Value is the maximum amount that Fitness International shall be required to pay for settlement of this Action.  The GSV will cover compensation to the Settlement Collective and the Settlement Class, additional compensation to Moore and Ervin as collective and class representatives, respectively, the cost of claims administration and notice, compensation to the Labor and Workforce Development Agency ("LWDA") under California Labor Code section 2699(i), and attorneys' fees and reimbursement of litigation costs and expenses to Class Counsel (as defined in Sections IV and VIII).

## III.
## CERTIFICATION FOR SETTLEMENT PURPOSES

15.     Solely for the purposes of effectuating this Settlement, and subject to Court approval, the Settling Parties hereby stipulate to certification of the following "Settlement Collective" under the FLSA:  All persons employed by Fitness International as Personal Trainers in the United States from June 22, 2009, through the date of the Court's Order Granting Preliminary Approval of this Settlement, excluding those individuals who filed valid claim forms in the *Baker* settlement (collectively, with Moore, the "Settlement Collective") for the time period released therein, i.e. May 26, 2006 through December 12, 2012.

16.     Solely for the purposes of effectuating this Settlement, and subject to Court approval, the Settling Parties hereby stipulate to the certification of the following Rule 23 "Settlement Class":  All non-exempt, club level Fitness International employees in the State of California who began employment on or after December 1, 2011, from that date through the date of the Court's Order Granting Preliminary Approval of this Settlement (collectively, with Ervin, the "Settlement Class").  The Settlement Class is not intended to include any members of the *Baker* settlement class, which consists of non-exempt, club level Fitness International employees in the State of California who began employment *before* December 1, 2011.

17.     For the purposes of the Settlement Class, "non-exempt, club level employees" shall be defined exclusive to those California-based, Fitness International employees who held the following job positions:

JOINT STIP OF CLASS ACTION
SETTLEMENT AND RELEASE
3:12-cv-1551-LAB-NLS

1      ACTIVI - Activity Director

2      AEROBC - Aerobics Instructor

3      ASTCNS - Operations Manager 1

4      ASTDIR - Personal Training Salesperson

5      BABYST – Babysitter

6      EQIPTK – Equipment Technician

7      FITDIR - Fitness Director

8      GMHRLY - General Manager

9      JANITE - Lead Janitor 1

10     JANITR - Janitor

11     LEAGEE - Referee

12     LEAGUE - League Supervisor

13     MBRREL - Operations Manager 2

14     OFCMGE - Operations Manager 3

15     OFCMGR - Operations Manager 4

16     RECEPT - Receptionist

17     SECURI - Security Guard

18     SLSCNS - Sales Counselor

19     SLSMGR - Weekend General Manager

20     SNRMSD - Operations Manager 5

21     SPTDIR - Sports Director

22     TRAINR - Personal Trainer

23     TRWMGR - Trainer Weekend Manager

24     WNDMSD - Lead Janitor 2

25     18.   For the purposes of this Agreement, Fitness International employees who meet the

26  criteria of both the Settlement Collective and the Settlement Class (i.e., California-based Personal

27

28

JOINT STIP OF CLASS ACTION
SETTLEMENT AND RELEASE
3:12-cv-1551-LAB-NLS

1    Trainers who began working for Fitness International on or after December 1, 2011) shall be

2    considered members of the Settlement Class.

3          19.    Putative members of the Settlement Class who properly exclude themselves from

4    this Settlement in accordance with the provisions of this Agreement shall not share in the

5    distribution of the GSV, are not included in the Settlement Class, and will not be bound by the

6    terms of this Agreement.

7          20.    Putative members of the Settlement Collective who do not submit timely Claim

8    Forms shall not share in the distribution of the GSV, are not included in the Settlement

9    Collective, and will not be bound by the terms of this Agreement.

10         21.    Putative members of the Settlement Collective who submitted timely claim forms

11   in the *Baker* settlement and, therefore, opted-in to that settlement for FLSA purposes shall not

12   share in the distribution of the GSV for any workweeks released in the *Baker* settlement.

13         22.    The certification of the Settlement Collective and the Settlement Class, the Settling

14   Parties' settlement of this Action, and their rights and obligations hereunder, are contingent upon

15   final approval by the Court of this Agreement as to the Settlement Collective and the Settlement

16   Class.  The Settlement Collective and Settlement Class recognize and agree that—in

17   consideration of the covenants undertaken herein by Fitness International, including, without

18   limitation, Fitness International's agreement to pay an amount not to exceed the Gross Settlement

19   Value—this Agreement settles any and all claims, known and unknown, the Settlement Collective

20   and Settlement Class have or may have against Fitness International as provided herein.

21         23.    Subject to Court approval, the Settling Parties jointly propose Simpluris as the

22   third-party company to be appointed as "Claims Administrator" for this Settlement.  The Claims

23   Administrator will be responsible for calculating the monies to be made available to each putative

24   member of the Settlement Collective or Settlement Class; mailing the Notice Packets; receiving

25   and logging the Claim Forms and Requests for Exclusion; researching and updating addresses

26   through skip-traces and similar means; answering questions from Settlement Collective or

27   Settlement Class members; reporting on the status of the Settlement to the Settling Parties;

28

JOINT STIP OF CLASS ACTION
SETTLEMENT AND RELEASE
3:12-cv-1551-LAB-NLS

1   preparing declarations regarding its due diligence in completing and facilitating the claims

2   administration process; providing the Settling Parties with data regarding the filing of Claim

3   Forms and Requests for Exclusion, and the calculation of distributions; establishing and

4   maintaining a non-interest-bearing distribution account for purposes of distributing settlement

5   checks and distributions of attorneys' fees, costs, and Enhancement Awards; calculating

6   withholding amounts and other tax obligations; and performing such other tasks as the Settling

7   Parties may direct.

**IV.**
**APPOINTMENT OF NAMED PLAINTIFFS' COUNSEL AS**
**SETTLEMENT CLASS COUNSEL**

10          24.     Subject to the Court's approval, the Settling Parties hereby stipulate to the Court's

11   appointment of Matthew Bainer and Molly DeSario of Scott Cole & Associates, APC, 1970

12   Broadway, 9th Floor, Oakland, California 94612, (510) 891-9800 (phone), (510) 891-7030

13   (facsimile) as class settlement counsel ("Class Counsel") with respect to the Settlement Collective

14   and the Settlement Class.

**V.**
**SETTLEMENT APPROVAL PROCEDURES AND NOTICE**
**TO COLLECTIVE AND CLASS MEMBERS**

17          25.     The Settling Parties' settlement of this Action, and their rights and obligations

18   hereunder, are expressly conditioned on both the Court's preliminary and final approval of this

19   Settlement as to the Settlement Collective and Settlement Class defined in Section III of this

20   Agreement.  Preliminary approval shall be through the entry of an "Order of Preliminary

21   Approval," substantially in the form and content of Exhibit B hereto, and/or as modified by the

22   Court.

23          26.     The Settling Parties shall jointly file a motion with the Court for preliminary

24   approval of the Settlement Agreement, and for an order certifying the Settlement Collective and

25   the Settlement Class for settlement purposes only, and setting a date for the settlement fairness

26   hearing ("Final Approval Hearing").  In conjunction with this request, the Settling Parties shall

27   submit this Agreement and supporting papers, which shall set forth the terms of this Agreement,

28

1    and will include proposed forms of all notices and other documents, as attached hereto, necessary

2    to implement the Settlement Agreement.  The Order of Preliminary Approval shall provide for

3    notice of the Agreement and related matters to the Settlement Collective and Settlement Class as

4    specified herein, including, notice of the procedure for excluding oneself from or objecting to the

5    Settlement (with the exception of the Named Plaintiffs).  Said notice shall be sent in "Notice

6    Packets" containing substantially the forms attached hereto as Exhibit C and D, and as further

7    described in Paragraphs 52 through 55 of this Agreement, and/or as modified by the Court.

8           27.     Not later than thirty (30) calendar days after receipt of notice of the Court's entry

9    of an Order of Preliminary Approval, and to the extent possible based on the presence of

10   information in its records, Fitness International shall provide to the Claims Administrator a

11   spreadsheet in electronic format that contains the name, social security number, dates of

12   employment, last known mailing address, phone number, and Pay Cycles of every member of the

13   Settlement Collective and the Settlement Class (the "Collective and Class Contact Information").

14          28.     The Notice Packets shall consist of the Notice of Proposed Class and Collective

15   Action Settlement ("Class Notice") and Claim Form (substantially in the form attached as

16   Exhibits C and D, and/or as modified by the Court) that the Court orders to be sent to all

17   Collective and Class Members via regular First Class U.S. Mail.  The Notice Packet shall also

18   include instructions on how to submit a valid Claim Form, how to exclude oneself from the

19   Settlement, and how to object to the Settlement.

20          29.     A Class Notice substantially in the form attached hereto as Exhibit C, and/or as

21   modified by the Court, shall be sent by the Claims Administrator to Collective and Class

22   members by first class mail.  Accompanying the Class Notice will be a "Claim Form" in

23   substantially the form attached hereto as Exhibit D, and/or as modified by the Court.  The Class

24   Notice shall advise Collective and Class Members of their rights under this Stipulation of

25   Settlement and shall also include instructions on how to submit a valid Claim Form, how to

26   exclude oneself from the Settlement, and how to object to the Settlement.

27

28

30.     Fitness International shall meet-and-confer with the Claims Administrator regarding the format of the spreadsheet referenced in Paragraph 27 of this Agreement and cooperate to provide any additional information which the Claims Administrator may request that is reasonable and necessary for the purpose of distributing Notice Packets to the Settlement Collective and Settlement Class and otherwise administering this Agreement.

31.     Prior to the mailing, the Claims Administrator shall perform a search based on the National Change of Address Database for information to update and correct for any known or identifiable address changes. Any Notice Packets returned to the Claims Administrator as non-deliverable on or before the Response Deadline shall be sent promptly via regular First-Class U.S. Mail to the forwarding address affixed thereto and the Claims Administrator shall indicate the date of such re-mailing on the Notice Packet. If no forwarding address is provided, the Claims Administrator shall promptly attempt to determine the correct address using a skip-trace, or other search using the name, address and/or Social Security number of the Collective Member or Class Member involved, and shall then perform a single re-mailing. Those Collective Members or Class Members who receive re-mailed Notice Packets shall have the latter of (i) an additional fifteen (15) calendar days or (ii) the Response Deadline to postmark a Claim Form, Request for Exclusion, or an objection to the Settlement.

32.     Not later than ten (10) calendar days after the Claims Administrator receives the information described in Paragraph 27 of this Agreement, the Claims Administrator shall mail Notice Packets and accompanying documents to all members of the Settlement Collective and Settlement Class whose address information are known. This mailing will be sent by first-class U.S. mail.

33.     The Notice Packet sent to each putative member of the Settlement Collective or Settlement Class will include pre-printed information on the Claim Form stating the number of Pay Cycles the individual worked for Fitness International as a putative member of the Settlement Collective or Settlement Class. For purposes of this Agreement, a putative member of the Settlement Collective or Settlement Class will have been deemed to have worked a "Pay Cycle"

1    to the extent he or she was employed for at least five (5) calendar days during any Fitness

2    International bi-monthly pay cycle and had payroll activity during said bi-monthly pay cycle

3    during the time periods described in Paragraphs X.62(a) and X.63(b), respectively. The

4    information concerning Pay Cycles shall be based on Defendant's records and shall be presumed

5    to be correct, unless proof to the contrary is provided to the Claims Administrator.  A member of

6    the Settlement Collective or Settlement Class may challenge the information on the Claim Form

7    as to the number of Pay Cycles he or she worked during the relevant time periods by submitting

8    evidence to the Claims Administrator along with the Claim Form.  All Pay Cycle disputes will be

9    resolved and decided by the Claims Administrator, and the Claims Administrator's decision on all

10   Pay Cycle disputes will be final, binding, and non-appealable.

**VI.**
**THE EFFECTIVE DATE**

13        34.      This Agreement shall become final and effective on the occurrence of all of the

14   following events described in Paragraphs 35 through 37 (the "Effective Date"):

15        35.      Entry by the Court of an Order of Preliminary Approval as discussed in Paragraphs

16   25 and 26 of this Agreement, appointment of Class Counsel as described in Paragraph 24 of this

17   Agreement, appointment of a Claims Administrator as described in Paragraph 23 of this

18   Agreement, and expiration of the time period for Fitness International to withdraw from this

19   Agreement as described in Paragraph 40.

20        36.      Class Counsel filing, at or before the Final Approval Hearing, a declaration from

21   the Claims Administrator:

22            (a)       Certifying that a Notice Packet was sent to each Collective and/or Class

23        Member in accordance with Sections V and X of this Agreement and the Order of

24        Preliminary Approval; and

25            (b)       Delineating the number of Collective Members and Class Members who

26        submitted timely Claim Forms or timely Requests for Exclusions.

37.     The occurrence of the "Effective Date of Judgment," which shall be deemed to be the last to occur of the following:

     (a)     If an appeal or other review is not sought from the Order and Judgment Granting Final Approval and Dismissing Actions with Prejudice, the thirty-fifth (35th) calendar day after the Judgment is signed by the Court; or

     (b)     If an appeal or other review is sought from the Order and Judgment Granting Final Approval and Dismissing Actions with Prejudice by a member of the Settlement Collective or the Settlement Class, the next day after the trial court's judgment is affirmed or the appeal or other review is dismissed or denied, and the judgment is no longer subject to judicial review or other challenge.

38.     The Settling Parties shall jointly prepare a proposed Order and Judgment to this effect, which shall reflect, inter alia, the settlement and entry of judgment of this Action and the Court's approval of the settlement pursuant to the terms of this Agreement, including but not limited to the releases set out in Paragraphs 71, 72, 73, and 74.  Said proposed Order and Judgment shall be lodged with the Court no later than sixteen (16) calendar days before the Final Approval Hearing.

## VII.
## EFFECT OF NON-APPROVAL, FAILURE OF THE EFFECTIVE DATE TO OCCUR, OR OPT-OUTS IN EXCESS OF TEN PERCENT

39.     If the Effective Date does not occur, this Agreement shall be void.  In such event:

     (a)     Nothing in this Agreement shall be construed as a determination, admission, or concession of any substantive or procedural issue in this Action, and nothing in this Agreement may be offered into evidence in any hearing or trial, or in any subsequent pleading or in any other judicial, arbitral, or administrative proceeding;

     (b)     The Settling Parties expressly reserve their rights with respect to the prosecution and defense of this Action as if this Agreement never existed.  In particular, Fitness International does not waive, but rather expressly reserves, all rights to challenge any and all claims and allegations asserted in this Action upon all procedural and

1   substantive grounds, including, without limitation, the ability to challenge collective

2   and/or class Action treatment on any grounds and to assert any and all potential defenses

3   or privileges. The Settling Parties agree that Fitness International retains and reserves

4   these rights, and they agree not to take a position to the contrary. Specifically, the Settling

5   Parties agree that, if this Action were to proceed, they will not present any argument based

6   on this Agreement, or any exhibit, attachment, act performed or document executed

7   pursuant to this Agreement; and

8               (c)     The Settling Parties shall each bear half (50%) of any costs for notice or

9   claims administration incurred by the Claims Administrator through the date that the

10  Settlement is determined to be void.

11      40.     The Claims Administrator shall provide written notice to Class Counsel and

12  Fitness International no later than five (5) court days after the Claims Filing Deadline—as defined

13  in Paragraph IX.51(b) of this Agreement—with a complete list of all putative members of the

14  Settlement Class who have timely requested exclusion from the class. Fitness International, in its

15  sole and independent discretion, shall have the right, but not the obligation, to revoke this

16  Agreement if Requests for Exclusion from the settlement are filed by members of the Settlement

17  Class (but not the Settlement Collective) representing five percent (5%) or more of all the Pay

18  Cycles worked by the entire Settlement Class during the period from December 1, 2011, to the

19  date of the Court's Order Granting Preliminary Approval. If Fitness International chooses to

20  exercise this option, the effect will be precisely the same as if one of the events specified in

21  Section VI did not occur. Fitness International must exercise this right, if at all, within ten (10)

22  calendar days after receipt of the written notice from the Claims Administrator discussed in this

23  Paragraph 40.

24                              **VIII.**
                **ATTORNEY'S FEES, COSTS AND EXPENSES, PAYMENT TO THE LWDA, AND**
25                      **ENHANCEMENT AWARDS**

26

27

28

1       41.     This Action alleges a claim for attorneys' fees and costs pursuant to, *inter alia*, the

2 California Labor Code and the FLSA. The Settling Parties agree that any and all such claims for

3 attorneys' fees and costs have been settled as set forth in this Agreement.

4       42.     Fitness International recognizes that Class Counsel will apply to the Court for an

5 award of attorneys' fees in an amount up to, but not more than, thirty-three and one-third percent

6 (33.33%) of the GSV, as well as an award for reasonable and necessary costs and expenses

7 incurred up to the date of filing of said application, currently estimated to be $9,615.09. Fitness

8 International will not oppose Class Counsel's application under this Paragraph 42 for said

9 amount, and Class Counsel's application under this Paragraph 42 shall be scheduled for

10 determination at the Final Approval Hearing. The Named Plaintiffs, Class Counsel, and putative

11 or actual members of the Settlement Collective and the Settlement Class shall not seek payment

12 of attorneys' fees or reimbursement of costs or expenses except as set forth herein.

13       43.     Fitness International recognizes that, at the same time the application under

14 Paragraph 42 is made, Class Counsel will also apply to the Court for an additional award to the

15 Named Plaintiffs of two thousand, five hundred U.S. Dollars and no cents ($2,500) each, as

16 reasonable additional compensation for their prosecution of this case, the time and effort

17 expended by them in doing so, and in consideration for the claims released herein (the

18 "Enhancement Awards"). Fitness International will not oppose Class Counsel's application under

19 this Paragraph 43. Any Enhancement Awards will be in addition to the amount that the Named

20 Plaintiffs may be entitled to receive on account of their own individual claim pursuant to Section

21 X of this Agreement; however, the releases set out in Paragraphs 71, 72, 73, and 74 of this

22 Agreement shall bind Moore and Ervin regardless of whether they file Claim Forms, and the

23 Enhancement Awards shall be adequate consideration for said releases. The Named Plaintiffs,

24 Class Counsel, and putative or actual members of the Settlement Collective and the Settlement

25 Class shall not seek payment of any additional enhancement awards except as set forth herein.

26       44.     The Parties also agree that the Claims Administrator will allocate two thousand

27 five hundred dollars ($2,500) of the GSV to penalties under the Private Attorneys General Act

28

JOINT STIP OF CLASS ACTION
SETTLEMENT AND RELEASE
3:12-cv-1551-LAB-NLS

1  ("PAGA") and pay seventy-five percent (75%) of this sum to the Labor and Workforce

2  Development Agency pursuant to California Labor Code section 2699(i).  The remaining twenty-

3  five percent (25%) of this sum shall be returned to the NSV and disbursed to the Settlement

4  Collective and Settlement Class.

5       45.      Any awards pursuant to Paragraphs 42 and/or 43 will be funded solely and

6  completely from the GSV.

7       46.      If the Court does not approve the total amount of attorneys' fees, costs, and/or

8  Enhancement Awards requested by Class Counsel pursuant to Paragraphs 42 and 43 of this

9  Agreement, any remaining portion of the requested amount will be added to the Net Settlement

10  Value (as that term is defined in Paragraph 48(e) of this Agreement).

11       47.      Any proceedings or Court decisions related to Class Counsel's application for

12  attorneys' fees, costs and expenses, and/or Enhancement Awards shall not terminate or cancel this

13  Agreement, or otherwise affect the finality of the Court's Order and Judgment Granting Final

14  Approval, or affect the settlement and releases set forth herein concerning this Action.  Further,

15  nothing in this Agreement shall prevent, waive, impair or impinge upon Class Counsel's right to

16  appeal the Court's decision related to the application for attorneys' fees, costs and expenses,

17  and/or Enhancement Awards.

18                                 IX.
                  **PLAN OF ALLOCATION AND DISTRIBUTION OF THE**
19                        **SETTLEMENT FUND**

20       48.      The GSV shall be allocated, in order, as follows:

21       (a)      First, to any attorneys' fees and reasonable and necessary costs and

22  expenses of Class Counsel, as may be awarded by the Court pursuant to Paragraph 42 of

23  this Agreement.

24       (b)      Second, to any Enhancement Awards, as may be awarded by the Court

25  pursuant to Paragraph 43 of this Agreement.

26       (c)      Third, to the costs and expenses incurred by, or fees imposed by, the

27  Claims Administrator in performing its duties under this Agreement.

28

- 16 -

1        (d)    Fourth, to the payment to the LWDA of penalties under the PAGA

2    pursuant to Paragraph VIII.44 of this Agreement.

3        (e)    Fifth, to the "Net Settlement Value" or "NSV." The Net Settlement Value

4    shall be defined as the maximum possible value of the GSV less the items described in

5    Paragraphs 48(a), 48(b), 48(c) and 48(d). The Net Settlement Value shall be made

6    available to the Settlement Collective and the Settlement Class as described in Section X.

7    The Claims Administrator shall be responsible for the allocation and distribution of the

8    Net Settlement Value to Settlement Collective and Settlement Class members who submit

9    timely Claims Forms as set forth in Paragraph 52 herein.

10       49.    The Claims Administrator shall make payments from the distribution account only

11   pursuant to the terms of this Agreement and only after the Effective Date.

12       50.    Any award by the Court of attorneys' fees and costs shall be paid by Defendant to

13   the Claims Administrator within five (5) business days of the Effective Date. That amount shall

14   then be payable by the Claims Administrator to Class Counsel within three (3) business days

15   thereafter.

16       51.    For the purposes of calculating applicable taxes:

17       (a)    Each settlement payment ("Member Payment" or "Settlement Payment")

18   shall be allocated as follows: (1) one third to unpaid wages from which the Claims

19   Administrator shall make appropriate withholdings for the payment of taxes; (2) one third

20   to interest; and (3) one third to penalties.

21       (b)    Two thousand five hundred dollars ($2,500) of the GSV shall be allocated

22   to penalties under the PAGA, seventy-five percent (75%) of which will be paid to the

23   LWDA and the remaining twenty-five percent (25%) of which shall be returned to the

24   NSV and allocated pursuant to Paragraph 51(a).

25       (c)    Fitness International will be responsible for the employer's share of any

26   standard tax deductions and withholding applicable to the Settlement Payments, the

27   payment of which shall be made separately and shall not come from the GSV or the NSV,

28

- 17 -

1    and each member of the Settlement Collective and Settlement Class shall be individually

2    responsible for the employee's share of taxes attributable to receipt of the Member

3    Payment. The Claims Administrator shall be responsible for determining the employer

4    share of any applicable standard tax deductions and withholdings attributable to the

5    Settlement Payments, after which Fitness International shall—either, at Fitness

6    International's option, directly or through the Claims Administrator—remit said monies,

7    along with the appropriate documentation, to the relevant taxing agencies in accordance

8    applicable laws and regulations.

9         (d)    Each member of the Settlement Collective or Settlement Class shall be

10   individually responsible for the employee's share of taxes attributable to receipt of the

11   Member Payment.

12        (e)    One hundred percent (100%) of the Enhancement Awards will be allocated

13   to ordinary income, payable on a Form 1099.

14                                          X.
                DETERMINATION OF THE AMOUNT, PROCESSING, AND PAYMENT
15                     OF COLLECTIVE AND CLASS MEMBER CLAIMS

16        52.    The Class Notice sent to each member of the Settlement Collective or Settlement

17   Class shall be accompanied by a separate Claim Form which is attached hereto as Exhibits B and

18   D. The Claim Form shall be individualized for each member of the Settlement Collective or

19   Settlement Class. For members of the <u>Settlement Collective</u>, the Claim Form will have

20   information reflecting the Pay Cycles the member worked from June 22, 2009, to the date of the

21   Court's Order Granting Preliminary Approval. For members of the <u>Settlement Class</u>, the Claim

22   Form will have information reflecting the Pay Cycles the member worked from December 1,

23   2011, to the date of the Court's Order Granting Preliminary Approval. Additionally, the Notice

24   Packet will contain the estimated dollar value of the Member Payment, as that term is defined in

25   Paragraph 62(b) for the Settlement Collective and Paragraph 63(e) for the Settlement Class,

26   assuming that Class Counsel's request under Paragraphs 42 and 43 of this Agreement are granted

27   in their entirety and that one hundred percent (100%) of all Pay Cycles are claimed. The Class

28

JOINT STIP OF CLASS ACTION
SETTLEMENT AND RELEASE
3:12-cv-1551-LAB-NLS

1   Notice and Claim Form shall direct that, in order to submit a claim for distribution of a portion of

2   the NSV, each member of the Settlement Class or the Settlement Collective must:

3           (a)     Submit a Claim Form in which the member of the Settlement Collective or

4   Settlement Class either (i) agrees with the number of Pay Cycles reflected on the Claim

5   Form or (ii) disagrees, under penalty of perjury, with the stated number of Pay Cycles

6   worked and encloses documentation supporting said disagreement; and

7           (b)     Return the completed Claim Form by first class U.S. mail such that it is

8   actually received by the Claims Administrator with a postmark reflecting a date within

9   sixty (60) calendar days from the date of mailing of the Notice and Claim Form (the

10   "Claim Filing Deadline" or "Response Deadline").

11           (c)     Members of the Settlement Collective or Settlement Class who timely

12   return a properly completed and executed Claim Form shall be deemed to be participating

13   in the Settlement.

14         53.     Any <u>Class</u> Member wishing to opt out from the Settlement Agreement and exclude

15   him/herself from the Settlement Class must sign and postmark a written "Request for Exclusion"

16   to the Claims Administrator as set forth in the Class Notice within the Response Deadline.  The

17   date of the postmark on the return mailing envelope shall be the exclusive means to determine

18   whether a Request for Exclusion has been timely submitted.  The Class Notice shall provide

19   instructions informing Class Members how to submit a Request for Exclusion in this regard.  The

20   Class Notice shall also indicate that all members of the Settlement Class (except for the Named

21   Plaintiffs) shall have the right to file written objections to the Settlement and/or to appear at the

22   Final Approval Hearing (the then-current date of which shall be included in the Class Notice).

23   Written objections, if any, must be filed with the Court and served on the contact persons set out

24   in Paragraph 79 no later than the Claim Filing Deadline.

25         54.     Any <u>Collective</u> Member may exclude him/herself from the Settlement Collective

26   by declining to submit a Claim Form.  Collective Members who do not submit a Claim Form by

27   the Claim Filing Deadline will not receive any portion of the NSV and will not be bound by the

28

- 19 -

1   terms of this Agreement. The Notice Packet shall provide instructions to this effect and indicate

2   that all members of the Settling Collective (except for the Named Plaintiff) shall have the right to

3   file written objections to the Settlement and/or to appear at the Final Approval Hearing, pursuant

4   to the same procedures and deadlines set forth for Class Members in Paragraph 53.

5          55.     The Class Notice shall contain the release and waiver of claims against Fitness

6   International (including the waiver of California Civil Code § 1542) contained in Paragraphs 71,

7   72, 73, and 74 of this Agreement. The Class Notice shall also contain an easily understood

8   statement alerting putative members of the Settlement Class that by failing to submit a Request

9   for Exclusion the individual is executing a release and waiver of all of the claims related to those

10  alleged in this Action which the employee may have against Fitness International, whether or not

11  they submit a Claim Form and whether or not they receive a portion of the NSV. The Class

12  Notice shall further contain an easily understood statement alerting putative members of the

13  Settlement Collective that, by submitting a Claim Form, the individual is executing a release and

14  waiver of all of the claims related to those alleged in this Action which the employee may have

15  against Fitness International.

16         56.     As provided in Paragraph 27, Fitness International will provide the Claims

17  Administrator with the information required to individualize the Claim Forms with the number of

18  Pay Cycles worked by each member of the Settlement Collective or Settlement Class. The

19  Claims Administrator will be solely responsible for resolving any discrepancies between Fitness

20  International's documentation and conflicting information provided by a Settlement Collective or

21  Settlement Class member, and said resolution by the Claims Administrator shall be final and

22  binding on all parties, and non-appealable. Once the Claims Administrator resolves a given

23  discrepancy, it will notify the member of the Settlement Collective or Settlement Class of its

24  decision in writing and within ten (10) calendar days. Fitness International agrees to provide

25  additional information which is reasonable and necessary for the Claims Administrator to resolve

26  any such discrepancies, to the extent such information is available within its records and

27  reasonably accessible.

28

57. If a Collective Member's Claim Form or a Class Member's Claim Form and/or Request for Exclusion is defective as to the requirements listed herein, that Collective Member or Class Member shall be given the opportunity to cure the defect(s). The Claims Administrator shall mail the Collective Member or Class Member a cure letter within three (3) business days of receiving the defective submission to advise the Collective Member or Class Member that his or her submission is defective and that the defect must be cured to render the Claim Form or Request for Exclusion valid. The Collective Member or Class Member shall have until the later of (i) the Response Deadline or (ii) fifteen (15) calendar days from the date of the cure letter, whichever date is later, to postmark or fax a revised Claim Form or Request for Exclusion. If the revised Claim Form or Request for Exclusion is not postmarked or received by fax within that period, it shall be deemed untimely.

58. Not earlier than twenty-five (25) calendar days after the initial mailing, but no later than 30 days after the initial mailing, the Claims Administrator will send a Reminder Postcard to all Collective Members and Class Members who have not returned a Claim Form or a Request for Exclusion. All Reminder Postcards shall include a short description of the proposed Settlement, the Response Deadline and the contact information for Class Counsel and the Claims Administrator.

59. Those Settlement Class members who have not returned a completed Claim Form or a Request for Exclusion by the Claim Filing Deadline (or by another acceptable date under Paragraphs 31 and 57 of this Agreement) shall not share in the distribution of any part of the Net Settlement Value, but nevertheless shall be bound by the Judgment entered in this Action and the release of claims set forth in Paragraphs 71, 72, 73, and 74 of this Agreement.

60. Those Settlement Collective members who have not returned a completed Claim Form by the Claim Filing Deadline (or by another acceptable date under Paragraphs 31 and 57 of this Agreement) shall not share in the distribution of any part of the Net Settlement Value and will not be bound by the Judgment entered in this Action or the release of claims set forth in Paragraphs 71, 72, 73, and 74 of this Agreement.

- 21 -

61.     As soon as practicable after receiving the spreadsheet referenced in Paragraph 27, the Claims Administrator shall determine the allocation and distribution of the Net Settlement Value to those members of the Settlement Collective or the Settlement Class who timely submit completed Claim Forms.

62.     The Claims Administrator shall perform the following calculations for use in allocation and distribution of the Net Settlement Value to members of the Settlement Collective who timely submit completed Claim Forms:

(a)     The Claims Administrator will allocate seventy percent (70%) of the NSV to the Settlement Collective, and divide said amount by the total number of Pay Cycles worked by all putative members of the Settlement Collective during the period from June 22, 2009, to the date of the Court's Order Granting Preliminary Approval (the "Settlement Collective Pay Cycle Payment").

(b)     The disbursement to each member of the Settlement Collective who returns a timely and complete Claim Form (the "Collective Member Payment") shall be the number which results from multiplying the number of Pay Cycles the individual worked during the period from June 22, 2009, to the date of the Court's Order Granting Preliminary Approval by the value of the Settlement Collective Pay Cycle Payment.

63.     The Claims Administrator shall perform the following calculations for use in allocation and distribution of the Net Settlement Value to members of the Settlement Class who timely submit completed Claim Forms:

(a)     The Claims Administrator will allocate thirty percent (30%) of the NSV to the Settlement Class ("Settlement Class Payment"), allocating a portion of this amount to each job position in the Settlement Class according to the formula set forth herein.

(b)     The percentage of the Settlement Class Payment allocated to each job position shall be determined by dividing (i) the total number of Pay Cycles worked by Settlement Class members assigned to that job position multiplied by the average regular rate of pay for that job position during the period from December 1, 2011, to the date of

- 22 -

1    the Court's Order Granting Preliminary Approval (the "Job Position Value") by (ii) the

2    sum of all Job Position Values in the Settlement Class (the "Job Position Percentage").

3          (c)    The dollar amount allocated to each job position shall be determined by

4    multiplying the Settlement Class Payment by the Job Position Percentage (the "Job

5    Position Allocation").

6          (d)    The Claims Administrator will then divide each Job Position Allocation by

7    the total number of Pay Cycles worked by Settlement Class members assigned to that job

8    position (the "Job Position Pay Cycle Payment").

9          (e)    The disbursement to each member of the Settlement Class who returns a

10    timely and complete Claim Form (the "Class Member Payment") shall be the number

11    which results from multiplying the number of Pay Cycles the individual spent as a

12    member of the Settlement Class by the Job Position Pay Cycle Payment for the job

13    position assigned to that member of the Settlement Class.

14    64.    The Claims Administrator shall provide counsel for the Settling Parties with a

15    Final Accounting and Report not later than ten (10) calendar days after the Effective Date. This

16    Final Accounting and Report will include the calculations discussed in Sections IX and X of this

17    Agreement, and shall provide the sum total of all Member Payments (the "Total Distribution

18    Amount").

19    65.    Fitness International shall pay the Total Distribution Amount, plus the employer's

20    share of payroll taxes attributable to same, to the Claims Administrator not later than ten (10)

21    calendar days after receiving the Final Accounting and Report.

22    66.    The Claims Administrator shall deposit the Total Distribution Amount in a non-

23    interest-bearing distribution account immediately upon receipt of the fund transfer discussed in

24    Paragraph 65. The Claims Administrator shall pay out the Total Distribution Amount, less

25    applicable taxes and withholdings—by mailing Member Payments via first-class mail to members

26    of the Settlement Collective or Settlement Class who filed a Claim Form—within ten (10)

27    calendar days of receipt of the Total Distribution Amount.

28

1    67.    Any portion of the NSV not paid out through the process discussed in this Section

2    X—whether due to non-participation of members of the Settlement Collective or Settlement

3    Class, the filing of Requests for Exclusion, or any other reason—shall remain the property of

4    Fitness International.

5    68.    If a putative member of the <u>Settlement Class</u> files both a timely and complete

6    Claim Form and a timely and complete Request for Exclusion, the latter-dated document shall

7    control.  If a putative member of the Settlement Class files both a timely Claim Form and a timely

8    Request for Exclusion, but only one document is complete, the complete document shall control.

9    If a putative member of the Settlement Class files both a Claim Form and a Request for Exclusion

10   simultaneously, and both are timely and complete, the Claims Administrator shall attempt to

11   contact the individual and determine his or her intent.  If said contact is unsuccessful, the Request

12   for Exclusion shall control.

13   69.    Because members of the <u>Settlement Collective</u> may exclude themselves from the

14   settlement merely by not submitting Claim Forms, the participation by Settlement Collective

15   Members in the Settlement will be determined solely on this basis, and any Requests for

16   Exclusion erroneously submitted by such members will be disregarded.  Thus, if a putative

17   member of the <u>Settlement Collective</u> files a Claim Form and also files a Request for Exclusion, he

18   or she will participate in and be bound by the Settlement regardless of whether the Collective

19   Member intended to exclude him or herself from the Settlement by submitting the Request for

20   Exclusion.

21   70.    After the Claims Administrator mails out the Member Payments, as provided for in

22   Paragraph 66, members of the Settlement Collective or Settlement Class who filed a Claim Form

23   shall have one hundred and twenty (120) calendar days to cash the check that was mailed to them.

24   After said time frame reminder notices shall be sent out and members of the Settlement Collective

25   and the Settlement Class who filed a Claim Form shall have an additional one hundred and

26   twenty (120) calendar days to cash the check that was mailed to them.  After two hundred and

27   forty (240) calendar days from the date of initial mailing, the checks shall become null and void,

28

- 24 -

1    and any monies remaining in the distribution account shall be distributed to the Legal Aid

2    Foundation of Los Angeles as a *cy pres* award.

## XI.
### RELEASES

5      71.     In exchange for the consideration, undertakings, and covenants agreed to by

6    Fitness International in this Agreement, and to the extent permitted by applicable law, the

7    Settlement Collective hereby releases, discharges, and covenants not to sue Fitness International,

8    and all of its respective past and present employees, directors, officers, attorneys, representatives,

9    insurers, agents, parents, subsidiaries, affiliates, related companies, predecessors, successors,

10    lessees, and assigns, and any entity that could be jointly liable with any of these (individually and

11    collectively "the Fitness International Releasees") from and with respect to all actions, causes of

12    action, suits, liabilities, claims, and demands whatsoever, and each of them, whether known or

13    unknown, from the beginning of time to the date this Court's Order Granting Preliminary

14    Approval is entered, inclusive, which the Settlement Collective, or individual members thereof,

15    has, had, or hereafter may claim to have, against Fitness International Releasees, or any of them,

16    which, by way of description, but not by way of limitation, are based on, or in any way related to:

17    (i) the claims alleged in the Action, (ii) any claim for unpaid wages, unpaid minimum wage,

18    unpaid overtime wages, failure to timely pay wages, failure to pay wages owed under contract, or

19    failure to compensate employees for all hours worked, (iii) any claim for missed meal periods or

20    rest breaks, (iv) any claim for failure to reimburse business expenses, (v) any claim for failure to

21    provide accurate wage statements, (vi) and any claims arising from the claims described in (i)

22    through (v) above under federal or applicable state, local, or territorial law, including, but not

23    limited to, the federal Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the regulations

24    thereunder ("the Settlement Collective Released Claims"). The Settling Parties intend the

25    Settlement Collective's release to be general and comprehensive in nature and to release all

26    claims and potential claims against the Fitness International Releasees which were brought in the

27    Action, or arise from and/or relate to the claims brought in the Action, to the maximum extent

28

1   permitted at law.  The Released Claims include specifically, by way of further description, but not

2   by way of limitation, any and all claims the Settlement Collective may have arising out of or in

3   any way related to:

4             (a)    Any and all allegations set forth in the pleadings in the Action, whether in

5   original or subsequently amended pleadings filed in the Action;

6             (b)    Any and all alleged claims for failure to pay wages, failure to pay

7   minimum wage, failure to pay overtime compensation, failure to compensate employees

8   for all hours worked, failure to provide reimbursement for business expenses, failure to

9   provide meal periods, failure to provide rest breaks, unlawful wage deductions, failure to

10  provide accurate and complete wage statements, failure to timely pay wages upon

11  separation, and/or failure to timely pay wages during employment, whether arising under

12  federal or state statutory, regulatory, or common law, including, but not limited to, the

13  Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the regulations thereunder, that

14  occurred prior to the date of the Court's Order Granting Preliminary Approval of this

15  Settlement; and that arose from or are related to the causes of action set forth in the

16  pleadings in the Action.

17            (c)    Any and all fines, penalties, wages, premium wages, interest, restitution,

18  liquidated damages, punitive damages, declaratory relief, and/or injunctive relief allegedly

19  due and owing by virtue of the allegations set out in this Action and/or referenced in this

20  Paragraph 71, whether based on federal or state statutory, regulatory, or common law,

21  including, but not limited to, the federal Fair Labor Standards Act, 29 U.S.C. §§ 201-219,

22  and the regulations thereunder;

23            (d)    Any and all violations of federal and state unfair competition laws,

24  including, but not limited to, California Business & Professions Code §§ 17200, et seq.,

25  that are predicated, in whole or in part, on any of the allegations contained in the operative

26  complaint in this Action and/or referenced in this Paragraph 71; and/or

27

28

- 26 -

1         (e)     Claims for attorneys' fees, attorneys' costs/expenses, and/or any and all

2    claims based on calculations, distributions or payments made in accordance with this

3    Agreement.

4         72.     In exchange for the consideration, undertakings, and covenants agreed to by

5    Fitness International in this Agreement, and to the extent permitted by applicable law, the

6    Settlement Class hereby releases, discharges, and covenants not to sue the Fitness International

7    Releasees from and with respect to all actions, causes of action, suits, liabilities, claims, and

8    demands whatsoever, and each of them, whether known or unknown, from the beginning of time

9    to the date this Court's Order Granting Preliminary Approval is entered, inclusive, which the

10    Settlement Class, or individual members thereof, has, had, or hereafter may claim to have, against

11    Fitness International Releasees, or any of them, which, by way of description, but not by way of

12    limitation, are based on, or in any way related to alleged violations of:  California Labor Code

13    sections 201, 202, 204, 221, 226, 226.7, 406, 510, 512, 1174, 1194, 1197, 1197.1, 1198, 2699,

14    2800, 2802, any Wage Order of the California Industrial Welfare Commission ("IWC"),

15    California Business and Professions Code section 17200 et seq., and any claims arising from the

16    claims described above under federal or applicable state, local, or territorial law ("the Settlement

17    Class Released Claims").  The Settling Parties intend the Settlement Class' release to be general

18    and comprehensive in nature and to release all claims and potential claims against the Fitness

19    International Releasees which were brought in this Action, or arise from and/or relate to the

20    claims brought in this Action, to the maximum extent permitted at law.  The Released Claims

21    include specifically, by way of further description, but not by way of limitation, any and all

22    claims the Settlement Class may have arising out of or in any way related to:

23         (a)     Any and all allegations set forth in the pleadings in this Action, whether in

24    original or subsequently amended pleadings filed in this Action;

25         (b)     Any and all alleged claims for failure to provide meal periods, failure to

26    provide rest breaks, failure to pay wages, failure to pay minimum wage, failure to pay

27    overtime compensation, failure to compensate employees for all hours worked, failure to

28

1    provide reimbursement for business expenses, unlawful wage deductions, failure to

2    provide accurate and complete wage statements, failure to timely pay wages upon

3    separation, failure to timely pay wages during employment, that occurred prior to the date

4    of the Court's order granting Preliminary Approval of this Settlement and that arose from

5    or are related to the causes of action set forth in the pleadings in the Action;

6         (c)    Any and all claims under California Labor Code § 2699 predicated, in

7    whole or in part, on some or all of the allegations set out in this action and/or referenced in

8    this Paragraph 71;

9         (d)    Any and all violations of California Business & Professions Code §§

10   17200, et seq. predicated, in whole or in part, on any of the allegations contained in the

11   operative complaint in this Action and/or referenced in this Paragraph 72;

12        (e)    Any and all fines, penalties, wages, premium wages, interest, restitution,

13   liquidated damages, punitive damages, declaratory relief, and/or injunctive relief allegedly

14   due and owing by virtue of the allegations set out in this Action and/or referenced in this

15   Paragraph 72, whether based on statutory, regulatory, or common law; and/or

16        (f)    Claims for attorneys' fees, attorneys' costs/expenses, and/or any and all

17   claims based on calculations, distributions or payments made in accordance with this

18   Agreement.

19   Notwithstanding any other provision of this Agreement, including without limitation this

20   Paragraph 72, "Settlement Class Released Claims" shall not include claims under the federal Fair

21   Labor Standards Act ("FLSA") arising from a Settlement Class member's services for Fitness

22   International unless the Settlement Class member has affirmatively opted-in to the case by

23   submitting a timely and valid Claim Form.

24        73.    In exchange for the consideration, undertakings, and covenants undertaken by

25   Fitness International in this Agreements, including but not limited to the payment of the

26   Representative Enhancements, and to the extent permitted by applicable law, Named Plaintiffs

27   Quentin Moore and Leah Ervin hereby release, discharge, and covenant not to sue the Fitness

28

- 28 -

1    International Releases from and with respect to any and all claims, charges of discrimination,

2    demands, liens, agreements, contracts, covenants, actions, suits, causes of action, disputed wages,

3    obligations, debts, expenses, attorneys' fees, damages, penalties, interest, judgments, orders and

4    liabilities of whatever kind or nature in law, equity or otherwise, whether now known or

5    unknown, suspected or unsuspected, and whether or not concealed or hidden, which they now

6    own or hold or they have at any time heretofore owned or held, arising out of or in any way

7    connected with their employment, separation of employment or any other relationship with the

8    Fitness International Releasees or any other transactions, occurrences, acts or omissions or any

9    loss, damage or injury whatsoever, known or unknown, suspected or unsuspected, resulting from

10   any act or omission by or on the part of said Fitness International Releasees, or any of them,

11   committed or omitted prior to the date of the Court's Order Granting Preliminary Approval

12   (collectively, "Named Plaintiffs' Claims.")  The Settling Parties intend the Named Plaintiffs'

13   release to be general and comprehensive in nature and to release all Named Plaintiffs' Claims and

14   potential Named Plaintiffs' Claims against the Fitness International Releasees to the maximum

15   extent permitted by law.  The Named Plaintiffs' Claims being released include, by way of

16   description, but not by way of limitation, any and all the Named Plaintiffs' Claims arising out of

17   or in any way related to:  (i) any interactions between the Named Plaintiffs and the Fitness

18   International Releasees;  (ii) the Named Plaintiffs' employment, separation of employment,

19   contractual, and/or quasi-contractual relationship with the Fitness International Releasees; (iii)

20   any allegations as to disputed wages, remuneration, and/or other compensation, due by operation

21   of statute, ordinance, regulation, wage order, contract, or quasi-contract, including, but not limited

22   to, allegations under the federal Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the

23   regulations thereunder; (iv) any federal, state, or local law prohibiting discrimination or

24   retaliation on the basis of age, race, color, ancestry, religion, disability, sex, national origin, or

25   citizenship, including, without limitation, any such claims under Title VII, the California Fair

26   Employment and Housing Act, the California Labor Code, the California IWC Orders, the

27   Employee Retirement Income Security Act, and the Americans With Disabilities Act or any other

28

1    similar statutes whatever the city, county, state, or country of enactment; (v) any claims under the

2    Family and Medical Leave Act of 1993 and/or the California Family Rights Act; (vi) any

3    transactions, occurrences, acts, statements, disclosures, or omissions occurring prior to the date of

4    the Court's Order Granting Preliminary Approval; and (vii) any other tort or contract claims.

5         74.    **Waiver of California Civil Code Section 1542.** All members of the Settlement

6    Collective and the Settlement Class (including, without limitation, the Named Plaintiff) intend

7    and/or are deemed to intend that this Agreement should be effective as a bar to any and all of the

8    claims released by Paragraph 71 (for the Settlement Collective), Paragraph 72 (for the Settlement

9    Class), and Paragraph 73 (for the Named Plaintiffs). In furtherance of this intention, as to any

10   and all claims released by Paragraphs 71, 72, and 73, the Named Plaintiffs, and members of the

11   Settlement Collective and Settlement Class to the extent those claims are related to the claims

12   pled in the Action, expressly waive any and all rights or benefits conferred on them by the

13   provisions of Section 1542 of the California Civil Code, or any similar provision under state,

14   federal, or local law. California Civil Code Section 1542 provides as follows:

15              **"A GENERAL RELEASE DOES NOT EXTEND TO
                CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR**
16              **SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE
                TIME OF EXECUTING THE RELEASE, WHICH IF**
17              **KNOWN BY HIM OR HER MUST HAVE MATERIALLY
                AFFECTED HIS OR HER SETTLEMENT WITH THE**
18              **DEBTOR."**

19        As to any and all of the claims released by Paragraph 71 (for the Settlement Collective),

20   Paragraph 72 (for the Settlement Class), and Paragraph 73 (for the Named Plaintiffs), all members

21   of the Settlement Collective and the Settlement Class (including, without limitation, the Named

22   Plaintiffs) understand fully the statutory language of Civil Code § 1542, and, with this

23   understanding, assume all risks for claims released hereunder that have already arisen or may in

24   the future arise, whether known or unknown, suspected or unsuspected, and specifically waive all

25   rights they may have under California Civil Code § 1542, or any similar provision under state,

26   federal, or local law. The members of the Settlement Collective and the Settlement Class

27   (including, without limitation, the Named Plaintiffs) understand that, if any of the facts relating in

28

1  any manner to this Action, or to the release and dismissal of claims as provided in this

2  Agreement, are hereafter found to be other than or different from the facts now believed to be

3  true, they have expressly accepted and assumed that risk and agree that this Agreement and the

4  release of claims as set forth in Paragraph 71 (for the Settlement Collective), Paragraph 72 (for

5  the Settlement Class), and Paragraph 73 (for the Named Plaintiffs) contained herein shall

6  nevertheless remain effective.  As to any and all of the claims released by Paragraph 71 (for the

7  Settlement Collective), Paragraph 72 (for the Settlement Class), and Paragraph 73 (for the Named

8  Plaintiffs), the Settlement Collective and the Settlement Class (including, without limitation, the

9  Named Plaintiffs) desire and intend, or are deemed to desire and intend, that this Agreement shall

10  be given full force and effect according to each and all of its express terms and provisions,

11  including those relating to unknown and unsuspected claims, if any, as well as those relating to

12  the claims referred to above.

13        75.     Class Counsel and the Named Plaintiffs represent and warrant that—aside from

14  this Action, the *Commiato* action referenced in Paragraph 4, and the *Antis* action referenced in

15  Paragraph 5, it and they have not filed any complaints, charges, lawsuits, or other legal actions

16  with any court or government agency relating to any claims being released by the Settlement

17  Collective and the Settlement Class in Paragraphs 71, 72, 73, and 74 of this Agreement.  Class

18  Counsel and the Named Plaintiffs further represent and warrant that it and they have not

19  heretofore assigned or transferred to any person not a party to this Agreement any released

20  matter.

### XII.
### ADDITIONAL TERMS AND CONDITIONS

23        76.     <u>Final Approval Order</u>:  The Final Approval Order shall contain findings and

24  rulings to the effect that members of both the Settlement Collective and the Settlement Class who

25  submit a Claim Form to the Claims Administrator thereby indicate their desire to opt-in to a class

26  settlement of FLSA claims.  Accordingly, the submission of a Claim Form shall constitute

27  binding and irrefutable evidence that the Collective Member or Class Member in question desired

1    and intended to, and did, opt in to an FLSA settlement and released all claims under the Fair

2    Labor Standards Act of 1938, as amended.

3        77.    Settlement Fair and Reasonable

4            Class Counsel has considerable experience in litigating and settling wage-and-hour

5    class actions of this type, and is sufficiently familiar with the facts of this case and the applicable

6    laws and regulations to make an informed judgment as to the fairness of this Settlement.  In light

7    of this experience, and for reasons that will be more fully explained in the Settling Parties'

8    Motion for Preliminary Approval, Class Counsel and the Named Plaintiffs believe that the

9    settlement terms herein are fair and reasonable with regard to the interests of the Settlement

10   Class.

11       78.    Settlement the Result of Arm's-Length Bargaining

12           The terms of the Settlement of the Action resulted from several months of

13   litigation and arm's-length negotiations.

14       79.    Notices

15           Except for Class Notices which are required herein to be made to or by the Claims

16   Administrator, all notices, requests, demands and other communications related to or in

17   connection with this Agreement shall be in writing, and shall be provided by appropriate method

18   depending on the urgency (e.g., personal delivery, facsimile, overnight delivery, or first-class

19   U.S. mail) to:

20   **TO THE SETTLING COLLECTIVE**          **TO FITNESS INTERNATIONAL, LLC:**
     **AND CLASS:**
21
     MATTHEW R. BAINER                        ADAM J. KARR
22   SCOTT COLE & ASSOCIATES                  O'MELVENY & MYERS LLP
     1970 Broadway, Ninth Floor              610 Newport Center Drive, 17th Floor
23   Oakland, CA 94612                        Newport Beach, CA 92660-6429
     Telephone:   (510) 891-9800             Telephone:   (949) 760-9600
24   Facsimile:   (510) 891-7030             Facsimile:   (949) 823-6994
25

26       80.    No Admission of Liability

27

28

1    Nothing herein shall constitute any admission by Fitness International of

2 wrongdoing or liability or of the truth of any factual allegations in this Action. Nothing herein

3 shall constitute an admission by Fitness International that this Action was properly brought as a

4 class or representative action other than for settlement purposes. To the contrary, Fitness

5 International has denied and continues to deny each and every material factual, procedural, and/or

6 legal allegation and alleged claim asserted in this Action. To this end, the settlement of this

7 Action, the negotiation and execution of this Agreement, and all acts performed or documents

8 executed pursuant to or in furtherance of this Agreement or the settlement are not, shall not be

9 deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on

10 the part of Fitness International, or of the truth of any of the factual allegations in this Action; and

11 are not, shall not be deemed to be, and may not be used as, an admission or evidence of any fault

12 or omission on the part of Fitness International in any civil, criminal or administrative proceeding

13 in any court, administrative agency or other tribunal.

14    81.    Modification by Writing Only

15    This Agreement, and its terms and exhibits, may be modified only in a writing

16 signed by all counsel of record for the Settling Parties, and will not become effective unless and

17 until approved by the Court or otherwise as ordered by the Court.

18    82.    Representations

19    (a)    The Named Plaintiffs and Class Counsel represent that they are presently

20 unaware of any other lawsuit or administrative proceeding which alleges any of the claims

21 asserted in this Action that is not already identified in this Agreement or already known by

22 Fitness International.

23    (b)    The Named Plaintiffs, on behalf of themselves and the Settlement

24 Collective and Settlement Class, have expressly authorized Class Counsel to take all

25 appropriate action required or permitted to be taken pursuant to this Agreement to

26 effectuate its terms.

27

28

(c)     Each attorney executing this Agreement or any of its exhibits on behalf of any party hereto hereby warrants that full authority to do so has been given by his/her client(s).

(d)     Fitness International, Class Counsel, and the Named Plaintiffs waive their right to file an appeal, writ, or any challenge whatsoever to the terms of this Agreement; provided, however, that Class Counsel and the Named Plaintiffs may appeal the Court's determination with regard to the requests for attorneys' fees and costs and the Enhancement Awards set out in Paragraphs 42 and 43. Consistent with Paragraph 47, however, any such appeal will have no effect whatsoever on the other terms and provisions of this Agreement, including, by way of example but not of limitation, the releases set out in Paragraphs 71, 72, 73, and 74.

(e)     The Settling Parties represent and agree that neither have received and/or relied upon any advice and/or representations from the other party and/or its attorneys as to the necessity for withholding or the taxability of the consideration paid pursuant to this Agreement, whether pursuant to federal, state or local income tax statutes or otherwise.

83.     Further Cooperation

The Settling Parties and their respective counsel of record shall proceed diligently to prepare and execute all documents, to seek the necessary Court approvals, and to do all other things reasonably necessary to conclude this Settlement.

84.     Construction and Integration

This Agreement, including its exhibits, constitutes the entire agreement and understanding between the Settling Parties, and supersedes any previous agreements or understandings between the Settling Parties. No representations, warranties or inducements have been made to any party concerning the subject matter of this Agreement and/or exhibits other than the representations, warranties and covenants contained in such documents. This Agreement and related exhibits shall be construed each as a whole, and with reference to one another, according to their fair meaning and intent. Each of the Settling Parties represent that its/their

- 34 -

JOINT STIP OF CLASS ACTION
SETTLEMENT AND RELEASE
3:12-cv-1551-LAB-NLS

1  counsel has participated and cooperated in the drafting and preparation of this Agreement and

2  related exhibits; hence, in any construction to be made of this Agreement and/or exhibits, the

3  same shall not be construed against any party on the basis that said party was the drafter.

4       85.   Governing Law

5          This Agreement and the exhibits hereto shall be deemed to have been negotiated,

6  executed and delivered, and to be wholly performed, in the State of California.  The rights and

7  obligations of the parties under the Agreement shall be construed and enforced in accordance

8  with, and be governed by, the substantive laws of the State of California and the procedural laws

9  of the United States without regard to choice of law principles.

10       86.   Counterparts

11          This Agreement may be executed in one or more faxed counterparts, which may

12  be filed with the Court.  All executed counterparts, and each of them, shall be deemed to be one

13  and the same instrument.  Once available, a complete set of executed counterparts shall be filed

14  with the Court.  Copies of the complete set of executed counterparts may be used for all purposes

15  in lieu of the originals, and shall have the same force and effect as the originals.

16       87.   Attorneys' Fees, Costs and Expenses

17          Except as otherwise specifically provided for herein, each party shall bear its/her

18  own attorneys' fees, costs and expenses, taxable or otherwise, incurred by them in or arising out

19  of this Action, and shall not seek reimbursement thereof from any other party to this Agreement.

20       88.   C.C.P. § 384 Does Not Apply

21          The Settling Parties agree that California Code of Civil Procedure § 384 does not

22  apply to this Agreement.  More specifically, the Settling Parties represent and agree that the Gross

23  Settlement Value represents an amount that has been made available by Fitness International to

24  effectuate this Settlement, and that this Settlement contemplates a process as set out in Sections

25  IX and X.  Accordingly, no obligation to pay any given member of the Settlement Collective or

26  the Settlement Class is created until said member files a valid Claim Form and the Effective Date

27  occurs.

28

JOINT STIP OF CLASS ACTION
SETTLEMENT AND RELEASE
3:12-cv-1551-LAB-NLS

89.  Calculation of Time

To resolve ambiguity, any reference to a span of "days" in this Agreement should be interpreted as a reference to court days unless stated to the contrary. To the extent that a given span of days ends on a non-court day, the calculation should be deemed as ending on the next court day, such that a calculation that ends on a Saturday will carry forward to the following Monday.

90.  Publicity

The Named Plaintiffs and Class Counsel agree that they will not publicize or announce this Settlement in press releases, marketing materials, or on the internet until after the Effective Date, unless required by the Court. After the Effective Date, the Named Plaintiffs and Class Counsel agree that references to this Settlement on their websites, the internet or in other public, non-court-filed communications will not identify the specific claims asserted (except that reference to the matter as a "wage and hour class action" is not prohibited) or Fitness International as the defendant directly or indirectly by inference, unless the case is being cited and/or mentioned in a document filed with any state or federal court in connection with Class Counsel seeking to obtain approval from the court as appointment as class counsel, or in connection with a fee request, with the exception that Class Counsel will be permitted to post the following on its website: "Scott Cole and Associates filed a wage and hour class action lawsuit against Fitness International. The lawsuit was subsequently settled and dismissed by the court."

91.  Continuing Jurisdiction

Except as otherwise specifically provided for herein, the United States District Court for the Southern District of California shall retain jurisdiction to construe, interpret and enforce this Agreement and the settlement, to supervise all notices, the administration of the settlement and this Agreement and distribution of the Settlement Fund, and to hear and adjudicate any dispute arising from or related to the settlement and/or this Agreement.

1       IN WITNESS WHEREOF, the undersigned Settling Parties and their duly-authorized

2   representatives accept and agree to the terms of this Agreement and hereby execute it voluntarily

3   and with a full understanding of its consequences.

4

5                ————————————————————          ————————————

6                Quentin Moore                          Date
             Plaintiff, individually, and on behalf of the Settlement

7                Collective as Collective Representative

8                ————————————————————          ————————————

9                Leah Ervin                            Date
             Plaintiff, individually, and on behalf of the Settlement

10               Class as Class Representative

11               ————————————————————        3/15/13

12               Rob Bryant                          Date

13               Senior Vice President, Legal, for and on behalf of
             Defendant Fitness International, LLC

14

15

16

17

18  **APPROVED AS TO CONTENT AND FORM:**

19

20               **SCOTT COLE & ASSOCIATES, APC**

21               Matthew R. Bainer
             Molly DeSario

22

23               ————————————————————        3/11/13

24               By: Matthew R. Bainer             Date
             Attorney for Quentin Moore Baker, and the

25               Settlement Collective and Class

26

27

28
                                    - 37 -

1    IN WITNESS WHEREOF, the undersigned Settling Parties and their duly-authorized

2    representatives accept and agree to the terms of this Agreement and hereby execute it voluntarily

3    and with a full understanding of its consequences.

4

5    _____          3/8/13
     Quentin Moore                      Date

6    Plaintiff, individually, and on behalf of the Settlement
     Collective as Collective Representative

7

8

9    _____          _____
     Leah Ervin                         Date

10   Plaintiff, individually, and on behalf of the Settlement
     Class as Class Representative

11

12   _____          _____
     Rob Bryant                         Date

13   Senior Vice President, Legal, for and on behalf of
     Defendant Fitness International, LLC

14

15

16

17

18   APPROVED AS TO CONTENT AND FORM:

19

20   SCOTT COLE & ASSOCIATES, APC
     Matthew R. Bainer
21   Molly DeSario

22

23

24   By: Matthew R. Bainer              _____
     Attorney for Quentin Moore Baker, and the    Date
25   Settlement Collective and Class

26

27

28

JOINT STIP OF CLASS ACTION
SETTLEMENT AND RELEASE
3:12-cv-1551-LAB-NLS

1    **IN WITNESS WHEREOF**, the undersigned Settling Parties and their duly-authorized

2  representatives accept and agree to the terms of this Agreement and hereby execute it voluntarily

3  and with a full understanding of its consequences.

4

5              Quentin Moore                Date

6              Plaintiff, individually, and on behalf of the Settlement
                Collective as Collective Representative

7

8              Leah Ervin                3-7-/3
                                                      Date

9              Plaintiff, individually, and on behalf of the Settlement
                Class as Class Representative

10

11

12             Rob Bryant                Date

13             Senior Vice President, Legal, for and on behalf of
                Defendant Fitness International, LLC

14

15

16

17

18  **APPROVED AS TO CONTENT AND FORM:**

19

20

21             **SCOTT COLE & ASSOCIATES, APC**
                Matthew R. Bainer

22             Molly DeSario

23

24             By: Matthew R. Bainer           Date
                Attorney for Quentin Moore Baker, and the

25             Settlement Collective and Class

26

27

28

1

**O'MELVENY & MYERS LLP**
Framroze M. Virjee
Adam J. Karr

2

3

4

By: Adam J. Karr              Date  3/15/13
Attorneys for Defendant
Fitness International, LLC

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 38 -

# EXHIBIT B

1   MATTHEW R. BAINER (S.B.#220972)
    mbainer@scalaw.com
2   MOLLY A. DESARIO (S.B. #230763)
    mdesario@scalaw.com
3   SCOTT COLE & ASSOCIATES, APC
4   1970 Broadway, Ninth Floor
    Oakland, CA 94612
5   Telephone: (510)891-9800
6   Facsimile: (510) 891-7030

7   Attorneys for Named Plaintiffs and putative plaintiff
8   collective and class

9   FRAMROZE M. VIRJEE (S.B. #120401)
    fvirjee@omm.com
10  O'MELVENY & MYERS LLP
11  400 South Hope Street
    Los Angeles, CA 90071-2899
12  Telephone: (213) 430-6000
    Facsimile: (213) 430-6407
13

14  ADAM J. KARR (S.B. #212288)
    akarr@omm.com
15  O'MELVENY & MYERS LLP
16  610 Newport Center Drive, 17th Floor
    Newport Beach, CA 92660-6429
17  Telephone: (949) 760-9600
    Facsimile: (949) 823-6994
18

19  Attorneys for Defendant
    **FITNESS INTERNATIONAL, LLC**

20                  **UNITED STATES DISTRICT COURT**

21              **SOUTHERN DISTRICT OF CALIFORNIA**

22  QUENTIN MOORE, individually, and on          ) Case No.: 3:12-cv-1551-LAB-NLS
23  behalf of all others similarly situated,     )
                                                  ) **COLLECTIVE ACTION**
24                  Plaintiff,                    )
                                                  ) **DECLARATION OF KRISTA TITTLE,**
25          v.                                    ) **FOR SIMPLURIS, INC., APPOINTED**
                                                  ) **CLAIMS ADMINISTRATOR**
26  FITNESS INTERNATIONAL, LLC,                   )
27                                                )
                    Defendants.                   )
28  _____  )

1

Declaration of Krista Tittle for Simpluris, Inc. , the Appointed Claims Administrator

I, KRISTA TITTLE, hereby declare:

1.      I am employed as a Case Manager by Simpluris, Inc. ("Simpluris"), the claims administrator in the above-entitled action. Our Corporate Office address is 3176 Pullman Street, Suite 123, Costa Mesa, CA 92626. My telephone number is (714) 824-8590. I am over twenty-one years of age and authorized to make this declaration on behalf of Simpluris and myself.

2.      Simpluris, Inc. is a Class Action Settlement Administration company located in Costa Mesa, CA. It was founded by individuals who have each managed hundreds of settlements, along with professionals in the areas of Software Development, Third-Party Claims Administration, Mail-House Operations, and Call Center Support Management.

3.      Simpluris was engaged by Counsel for the Class Representatives ("Plaintiffs") and Counsel for Fitness International, LLC ("Defendants") (collectively the "Parties"), to provide settlement administration services in the Moore v. Fitness International, LLC settlement ("Settlement"). Duties included: a) printing and mailing of the Notice of Class/Collective Action Settlement and Claim Form ("Class Notice"); b) receipt of undeliverable Class Notices; c) receipt and validation of Claim Forms and requests for exclusion; d) calculation of claim payments; and e) will also include distribution of funds and tax-reporting following final approval; and f) mailing of settlement checks.

4.      On July 21, 2013, Simpluris received from Plaintiff Counsel the Class Notice prepared by Counsel. The Class Notice advised Class Members they could submit a request for exclusion post-marked on or before October 22, 2013, or a Claim Form post-marked on or before October 22, 2013. The Settlement Class Claim Form was enclosed with the Class Notice, and they are attached here as Exhibit "A" ("Settlement Class Notice Packet".) The Collective Class Claim Form was enclosed with the Class Notice, and they are attached here as Exhibit "B" ("Collective Class Notice Packet".)

5.      On August 1, 2013, Counsel for Fitness International, LLC, provided Simpluris with a mailing list ("Class List") containing the name, social security numbers, dates of employment, last known mailing address, phone number, and Pay Cycles of every member of the Settlement Collective and the Settlement Class

**Declaration of Krista Tittle for Simpluris, Inc. , the Appointed Claims Administrator**

6.      The mailing addresses contained in the Class List were processed and updated utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. The NCOA contains requested changes of address filed with the U.S. Postal Service. In the event that any individual had filed a U.S. Postal Service change of address request, the address listed with the NCOA would be utilized in connection with the mailing of the Notice Packets.

7.      On August 23, 2013, Notice Packets were mailed to 13,166 identified Settlement Collective Class Members and 6,629 identified Settlement Class Members contained in the Class List via First Class mail.

8.      As of this date, 2,993 Notice Packets were returned by the post office. For those without forwarding addresses, Simpluris performed a skip trace on all of these addresses by using Accurint. Simpluris utilized the Class Member's name and previous address for locating a current address. Two thousand two hundred fifty eight (2,258) Notice Packets were re-mailed to either a newfound address, with forwarding addresses provided by the United States Postal Service or at the request of the Class Member.  Ultimately, after additional searches, 608 Notice Packets were undeliverable because Simpluris was unable to find a better address.

9.      Ten additional employees contacted Simpluris and stated they believed they were class members. Presently, Defense Counsel is reviewing these individuals records.

10.     Simpluris is responsible for receipt of all Claim Forms. As of this date, Simpluris has received a total of 650 Settlement Class Claim Forms and 1,389 Settlement Collective Class Claim Forms. One (1) is invalid as the members son completed the claim in error.

The 619 current valid claims received by the Settlement Class represent 9.34% of the Settlement Class, whose pay cycles represent 14.17% of all pay cycles worked by the Settlement Class.

The 1,356 current valid claims received by the Collective Class represent 10.30% of the Collective Class, whose pay cycles represent 15.36 % of all pay cycles worked by the Collective Class.

Declaration of Krista Tittle for Simpluris, Inc. , the Appointed Claims Administrator

1           The 1,975 current valid claims received by the both Classes represent 9.98 % of

2    the both Classes, whose pay cycles represent 15.13% of all pay cycles worked by both

3    Classes.

4        11.    The *highest* claim to be paid is approximately $ 83.45 and the *average* claim to be

5    paid is approximately $21.75. The *highest* pay cycle payout is 104 and the *average* pay cycle

6    payout is 26.58.

7        12.    On September 17, 2013, Simpluris mailed a reminder postcard to 18,290 Class

8    Members that had not submitted a response.

9        13.    As of this date, 60 of the 2,039 Claim Forms received are deficient, for lack of

10    competing and signing their Claim Form.   Simpluris is corresponding with the Class Members

11    to cure the deficiencies.

12        14.    As of this date, 4 of the 19,795 Class members are disputing the number of pay

13    cycles worked during the Class Period, which number was printed on their respective Claim

14    Forms.

15        15.    As of this date, Simpluris has received 2 requests for exclusion.

16        16.    As of this date, Simpluris has not received any objections to the settlement.

17        17.    The most current weekly report dated October 2, 2013 is attached hereto as

18    Exhibit "C".

19        18.    With regard to Simpluris' invoice for services in connection with the

20    Administration of the settlement, Simpluris' fees and costs are $105,000.00, which includes all

21    work to conclude Simpluris' duties and responsibilities pursuant to the settlement, to calculate

22    the settlement payments, issuance and mailing of settlement payment checks, to do the necessary

23    tax reporting on such payments, answer class member questions, and the like.

24        19.    Once the claims process has concluded I will supplement this declaration with the

25    finalized data.

26        I declare under penalty of perjury under the laws of the State of California that the

27    foregoing is true and correct and that this declaration was executed on October 4, 2013, at Frisco,

28    Texas.

*Krista Tittle*

KRISTA TITTLE

4

# EXHIBIT C

1    G. Arthur Meneses (SBN 105260)
     Initiative Legal Group APC
2    1800 Century Park East, Mezzanine
     Los Angeles, California 90067
3    Telephone:    (310) 556-5637
     Facsimile:    (310) 861-9051
4
     David R. Markham (SBN 071814)
5    R. Craig Clark (SBN 129219)
     James M. Treglio (SBN 228077)
6    Laura M. Cotter (SBN 259445)
     Clark & Markham LLP
7    600 B Street, #2130
     San Diego, California 92101
8    Telephone:    (619) 239-1321
     Facsimile:    (619) 239-5888
9
     Attorneys for Plaintiffs and the putative settlement class
10

11              SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                  FOR THE COUNTY OF LOS ANGELES

13

14   MAURICIO BAKER and JACKIE            Case No.  BC438654
     WHITLEY, individually, and on behalf of
15   other members of the general public   Assigned to Hon. Mary H. Strobel
     similarly situated, and as aggrieved
16   employees pursuant to the Private Attorneys   CLASS ACTION
     General Act ("PAGA"),
17                                         NOTICE OF MOTION AND MOTION
            Plaintiffs,                    FOR FINAL APPROVAL OF CLASS
18                                         ACTION SETTLEMENT;
        vs.                                MEMORANDUM OF POINTS AND
19                                         AUTHORITIES
     L. A. FITNESS INTERNATIONAL, LLC,
20   a California Limited Liability Corporation,   Date:    December 12, 2012
     and DOES 1 through 10, inclusive,     Time:    1:30 p.m.
21                                         Place:   Department 32
            Defendant.
22

23

24

25

26

27

28

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 12, 2012 at 1:30 p.m., or as soon thereafter as counsel may be heard, in Department 32 of the above-captioned court, located at 111 North Hill St., Los Angeles, CA 90012, the Honorable Mary H. Strobel presiding, Plaintiffs Myke Andrews, Mauricio Baker, Devon Del Valle, Walter Fuller, Adam Herbes, Gabriel Jimenez, Gayle Michel, Iliana Morales, William Morrisey, Liliana Vasquez, and Jackie Whitley will, and hereby do, move this Court for entry of an order and judgment granting final approval of this class action settlement and all agreed-upon terms therein. This Motion, unopposed Defendant L.A. Fitness International, LLC, seeks final approval of a class action settlement. Plaintiffs request that the Court grant final approval of the Joint Stipulation of Class Action Settlement and Release, settlement payments to participating Class Members, a payment to the California Labor and Workforce Development Agency, and administrative expenses to the claims administrator, Simpluris, Inc.

This Motion is based upon: (1) this Notice of Motion and Motion, (2) the Memorandum of Points and Authorities in Support of Motion for Final Approval of Class Action Settlement, (3) the Declaration of G. Arthur Meneses, (4) the Declaration of Michael Bui, (5) the [Proposed] Order Granting Final Approval of Class Action Settlement, the [Proposed] Judgment, (6) the records, pleadings, and papers filed in this action, and (7) upon such other documentary and/or oral evidence as may be presented to the Court at the hearing of this Motion.

Dated:  November 9, 2012

Respectfully submitted,

Initiative Legal Group APC

By: _____
G. Arthur Meneses

Attorneys for Plaintiffs

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................. 1

II.     FACTS AND PROCEDURE ........................................................................... 2

        A.    Plaintiffs Baker and Whitley Brought a Class Action Against L.A.
              Fitness for Violation of the California Labor Code .............................. 2

        B.    Plaintiff Devon Del Valle Filed a Related Class Action Lawsuit
              Against L.A. Fitness for Violation of the California Labor Code .......... 2

        C.    Class Counsel Conducted a Thorough Investigation of the Factual
              and Legal Issues .................................................................................... 3

        D.    The Parties Engaged in Lengthy Settlement Negotiations .................... 4

        E.    The Proposed Settlement Fully Resolves the Claims ........................... 4

              1.    Composition of the Class ............................................................ 4

              2.    Settlement Consideration ............................................................ 5

              3.    Formula for Calculating Class Members Payments .................... 5

        F.    The Notice and Claims Administration Process Were Completed
              Pursuant to the Court Order .................................................................. 6

III.    ARGUMENT ................................................................................................... 8

        A.    All Relevant Factors Under California Law Support Final Approval ..... 8

              1.    California Law Sets Forth the Relevant Factors for Final
                    Approval ..................................................................................... 8

              2.    Class Counsel Conducted Significant Investigation and
                    Discovery .................................................................................... 9

              3.    The Settlement Was Reached Through Arm's-Length
                    Bargaining in Which Both Parties Were Represented by
                    Experienced Counsel ................................................................ 10

              4.    The Proposed Settlement Is Reasonable Given the Strength of
                    Plaintiffs' Claims and the Risks and Expense of Litigation .......... 11

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, NETZAHR · LOS ANGELES, CALIFORNIA 90067

1             5.    The Response of the Class Was Positive ....................................................... 16

2     B.   The Proposed PAGA Settlement Is Reasonable ..................................................... 16

3     C.   The Requested Payment to the Claims Administrator Is Reasonable

4           and Should Receive Final Approval ................................................................ 17

5  IV.  CONCLUSION ................................................................................................................. 17

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, MEZZANINE · LOS ANGELES, CALIFORNIA 90067

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1

## TABLE OF AUTHORITIES

2

3 **STATE CASES**

4 *7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th

5   1135 (2000) ...................................................................................................8, 16

6 *Brinker v. Super. Ct.*, 165 Cal. App. 4th 25 (2008), rev. granted Oct. 22, 2008,

7   S166350 .........................................................................................................13, 14

8 *Brinkley v. Pub. Storage, Inc.*, 167 Cal. App. 4th 1278 (2008), rev. granted

9   Jan. 14, 2009, S168806 ......................................................................................14

10 *Brown v. Ralphs Grocery Co.*, 197 Cal. App. 4th 489 (2011) ...........................10, 11

11 *Cellphone Termination Fee Cases*, 180 Cal. App. 4th 1110 (2009) .........................8

12 *Clark v. American Residential Services LLC*, 175 Cal. App. 4th 785 (2009) .........12

13 *Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th 1286 (2010)...................................15

14 *Kullar v. Foot Locker Retail, Inc.*, 168 Cal. App. 4th 116 (2008) ...........................12

15 *Mallick v. Super. Ct. (County of Marin)*, 89 Cal. App. 3d 434 (1979).......................9

16 *Munoz v. BCI Coca-Cola Bottling Co.*, 186 Cal. App. 4th 399 (2010)...................12

17 *Nordstrom Com. Cases*, 186 Cal. App. 4th 576 (2010) .....................................9, 16

18 *Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136 (2011) .....................................15

19 *Rebney v. Wells Fargo Bank*, 220 Cal. App. 3d 1117 (1991) .................................11

20 *State v. Levi Strauss & Co.*, 41 Cal. 3d 460 (1986) ..............................................10

21 *Wershaba v. Apple Computers, Inc.*, 91 Cal. App. 4th 224 (2001) .........................12

22

23 **FEDERAL CASES**

24 *Elliot v. Spherion Pacific Work, LLC*, 572 F. Supp. 2d 1169 (C.D. Cal. 2008) .......................15

25 *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 U.S. Dist. LEXIS

26   33900 (N.D. Cal. Apr. 3, 2009)...........................................................................16

27 *In Re M.L. Stern Overtime Litig.*, No. 07-CV-O118-BTM, 2009 U.S. Dist.

28   LEXIS 31650 (S.D. Cal. Apr. 13, 2009)...............................................................16

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, 2ND FLOOR · LOS ANGELES, CALIFORNIA 90067

1    *Ortega v. J.B. Hunt Transport, Inc.*, 258 F.R.D. 361 (C.D. Cal. 2008) ..................................15

2    *Perez v. Safety-Leen Systems, Inc.*, 253 F.R.D. 508 (N.D. Cal. 2008) ....................................15

3    *Wang v. Chinese Daily News, Inc.* 435 F. Supp. 2d 1042 (C.D. Cal. 2006)..............................15

4

5    **STATE STATUTES**

6    Cal. Lab. Code § 226(a) ..........................................................................................14

7    Cal. Lab. Code § 226(e) .....................................................................................14, 15

8    Cal. R. Ct. 3.769.............................................................................................................9

9    Labor Code Private Attorneys General Act of 2004

10   (Cal. Lab. Code §§ 2698, et seq.) ...........................................................10, 15, 16

11

12   **SECONDARY AUTHORITIES**

13   "*Brinker*: "Mixed Results for Class in 54-Page Unanimous Decision," Impact

14   Litig. J. (Apr. 20, 2012)...................................................................................14

15   "California Supreme Court's *Brinker* Decision Offers Mixed Results," at

16   http://www.gordonrees.com/publications/viewPublication.cfm?contentID=25

17   97 (Apr. 2012)...................................................................................................14

18   Conte & Newberg, *Newberg on Class Actions* (4th ed. 2002) ...........................9, 10

19

20

21

22

23

24

25

26

27

28

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, 2ND FLOOR, LOS ANGELES, CALIFORNIA 90067

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On July 16, 2012, this Court granted preliminary approval of the Joint Stipulation of Class Action Settlement and Release ("Settlement" or "Settlement Agreement"),[1] and approved distribution of the Notice of Class Action Settlement and Claim Form (collectively "Class Notice") to the Settlement Class.  Plaintiffs Myke Andrews, Mauricio Baker, Devon Del Valle, Walter Fuller, Adam Herbes, Gabriel Jimenez, Gayle Michel, Iliana Morales, William Morrisey, Liliana Vasquez, and Jackie Whitley ("Plaintiffs" or "Class Representatives") (collectively with Defendant, the "Parties") now seek final approval of this Settlement with Defendant L.A. Fitness International, LLC ("L.A. Fitness" or "Defendant") (collectively with Plaintiffs, the "Parties").  LA Fitness does not oppose Plaintiffs' Motion for Final Approval of Class Action Settlement.

This Settlement Agreement was reached after extensive arms-length negotiations under the guidance David Rotman, a prominent wage and hour class action mediator.  The settlement terms are fair, reasonable, and serve the best interests of all Class Members, particularly in light of the risk of delay and uncertainty associated with litigation, as well as potentially meritorious defenses that Defendant might have asserted.  In the face of such risks, Plaintiffs' counsel ("Class Counsel") were able to negotiate a gross settlement of $5,500,000.

The Class' response reflects its satisfaction with the Settlement.  Out of a class of over 17,450 members, less than one-tenth of a percent opted out and not a single Class Member has objected to the Settlement.  This is a strong, positive response.

Accordingly, Plaintiffs respectfully request that this Court:  (1) grant this Motion for Final Approval of the Settlement Agreement, (2) grant final approval of the claims administration costs, (3) enter judgment pursuant to the Settlement Agreement, and (4) retain jurisdiction to enforce the Settlement.

---

[1] Unless indicated otherwise, all capitalized terms used herein have the same meaning as those defined by the Settlement Agreement.

## II.  FACTS AND PROCEDURE

### A.  Plaintiffs Baker and Whitley Brought a Class Action Against L.A. Fitness for Violation of the California Labor Code

Plaintiffs Baker and Whitley filed a class action Complaint against L.A. Fitness in Los Angeles Superior Court on May 28, 2010 ("Baker Action").  In the operative Second Amended Complaint ("SAC"), Baker and Whitley allege that L.A. Fitness: (1) failed to pay overtime (in violation of California Labor Code[2] sections 510 and 1198), (2) failed to pay meal period premiums (in violation of sections 226.7 and 512(a)), (3) failed to pay rest period premiums (in violation of section 226.7), (4) failed to reimburse for necessary business expenses (in violation of sections 2800 and 2802), (5) failed to pay minimum wages (in violation of sections 1194, 1197, and 1197.1), (6) unlawfully deducted wages from employee earnings (in violation of section 221), (7) failed to timely pay all wages owed to employees upon termination of their employment (in violation of sections 201 and 202), (8) failed to timely pay all wages owed to employees during their employment (in violation of section 204), (9) issued non-compliant wage statements to employees (in violation of section 226(a)), (10) engaged in unfair and/or unlawful business practices (in violation of California Business & Professions Code §§ 17200, *et seq.*), and (11) breached the terms of its employment agreement with employees.  (Declaration of Miriam L. Schimmel ["Schimmel Decl."] ¶ 2.)[3]

### B.  Plaintiff Devon Del Valle Filed a Related Class Action Lawsuit Against L.A. Fitness for Violation of the California Labor Code

On May 26, 2010, Plaintiff Devon Del Valle filed a class action lawsuit against L.A. Fitness in the Orange County Superior Court (Case No. 30-2010-00375634-CU-OE-CXC) ("Del Valle Action").  Del Valle alleges that L.A. Fitness: (1) failed to pay overtime, (2) failed to pay meal period premiums, (3) failed to pay rest period premiums, (4) failed to reimburse for necessary business expenses, (5) failed to pay minimum wages, (6) unlawfully

---

[2] Unless indicated otherwise, succeeding statutory references are to the California Labor Code.
[3] Executed and filed on May 31, 2012.  For the Court's convenience, the Schimmel Decl. has been re-filed along with this Motion.

1    deducted wages, (7) failed to timely pay all wages owed to employees upon termination of

2    their employment, (8) failed to timely pay all wages owed to employees during their

3    employment, (9) issued non-compliant wage statements to employees, (10) engaged in unfair

4    and/or unlawful business practices, and (11) breached the terms of its employment agreement

5    with employees.  (Declaration of David R. Markham ["Markham Decl."] ¶ 4.)[4]

6        **C.**    **Class Counsel Conducted a Thorough Investigation of the Factual and**

7                  **Legal Issues**

8        Class Counsel have thoroughly investigated and researched the claims in controversy,

9    their defenses, and the developing body of law.  (Schimmel Decl. ¶ 6.)  Class Counsel's

10    investigation entailed the exchange of information pursuant to formal and informal discovery,

11    including document inspection demands (a total of 77), special interrogatories (a total of 11),

12    the deposition of L.A. Fitness' Person Most Qualified to testify about L.A. Fitness' labor

13    policies, and the analysis of confidential class demographic data produced informally in

14    advance of mediation.  (*Id.*)  The investigation also involved numerous meetings and

15    conferences between Class Counsel and Defendant's counsel.  (*Id.*)

16        Following L.A. Fitness' production of Class Member contact information, Class

17    Counsel expended considerable resources interviewing prospective Class Members (over 50)

18    to learn more about the day-to-day conditions of their employment with L.A. Fitness and the

19    circumstances giving rise to the alleged violations.  (Schimmel Decl. ¶ 5.)  Defendant's

20    informal production of confidential class demographic data in advance of mediation assisted

21    Class Counsel in developing a realistic estimate of Defendant's exposure for the claims at

22    issue.  (*Id.*)

23        Overall, Class Counsel performed an exhaustive investigation into the claims at issue,

24    which included:  (1) determining the suitability of the putative class representatives through

25    interviews, background investigations, and analyses of their employment files and related

26    records, (2) evaluating all of Plaintiffs' potential claims, (3) researching similar wage and

27

28    ———————————

       [4] Executed and filed on May 31, 2012.  For the Court's convenience, the Markham
Decl. has been re-filed along with this Motion.

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, MEZZANINE · LOS ANGELES, CALIFORNIA 90067

1  hour class actions to the claims brought, the nature of the positions, and the type of employer,

2  (4) interviewing Class Members to acquire information about potential claims, secure

3  declarations, identify additional witnesses, and obtain documents, (5) analyzing Defendant's

4  labor policies and practices, (6) researching settlements in similar cases, (7) conducting

5  discounted valuation analysis of claims, (8) drafting the mediation brief, (9) participating in

6  the mediation, (10) finalizing the Joint Stipulation of Class Action Settlement and Release,

7  (11) and drafting preliminary approval papers. (Schimmel Decl. ¶ 8, Markham Decl. ¶¶ 8-13.)

8  The extensive document and data exchanges have allowed Class Counsel to appreciate the

9  strengths and weaknesses of the claims against Defendant and the benefits of the proposed

10  Settlement. (*Id.*)

11  **D.     The Parties Engaged in Lengthy Settlement Negotiations**

12  On March 1, 2012, Plaintiffs Baker, Whitley, and Del Valle and Defendant L.A.

13  Fitness, through their counsel of record, participated in mediation with David Rotman, a

14  respected mediator of wage-and-hour class actions. Mr. Rotman was particularly helpful in

15  managing the expectations of the Parties and providing a useful, neutral analysis of the issues

16  and risks to both sides. (Schimmel Decl. ¶ 9.) Throughout the day, the parties engaged in

17  contentious, arm's-length negotiations, and after a near 10-hour exchange of offers and

18  counter-offers, were eventually able to reach a compromise. (*Id.*) That compromise is now

19  set forth in complete and final form in the Joint Stipulation of Class Action Settlement and

20  Release. (*Id.*) At all times, the Parties' negotiations were adversarial, non-collusive, and

21  conducted at arm's-length. (*Id.*) The Settlement constitutes a fair, adequate, and reasonable

22  compromise of the claims at issue. (*Id.*)

23  **E.     The Proposed Settlement Fully Resolves the Claims**

24  **1.     Composition of the Class**

25  The proposed Settlement Class consists of all Activity Directors, Aerobics Instructors,

26  Babysitters, Fitness Directors, General Managers, Janitors, Lead Janitors 1-2, League

27  Supervisors, Operations Managers 1-5, Personal Trainers, Personal Training Salespersons,

28  Receptionists, Referees, Sales Counselors, Security Guards, Sports Directors, Trainer

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, MEZZANINE, LOS ANGELES, CALIFORNIA 90067

1    Weekend Managers, and Weekend General Managers who worked for L.A. Fitness anywhere

2    in the State of California from May 26, 2006 to November 30, 2011. (Settlement Agreement ¶

3    12.)

4              **2.    Settlement Consideration**

5              Plaintiffs and Defendant have agreed to settle the underlying class claims in exchange

6    for the Gross Settlement Value of $5,500,000. The Gross Settlement Value includes: (1)

7    settlement payments to Class Members, (2) Claims Administration Costs of $94,886, (3) the

8    Labor and Workforce Development Agency Payment of $18,750 to the LWDA, (4) Class

9    Representative Enhancement Awards totaling $50,000 to Plaintiffs for their services on behalf

10   of the class, and (5) attorneys' fees and costs of up to $1,833,150 and $50,000, respectively, to

11   Class Counsel. (Settlement Agreement ¶¶ 9, 34, 35, 40, and 43.) In exchange for the Gross

12   Settlement Value, Plaintiffs and Class Members will agree to release the Released Claims.

13   (Settlement Agreement ¶ 60.)

14             Class Counsel negotiated a mandatory minimum payout to Class Members of at least

15   55% of the Net Settlement Value. Significantly, Class Members have claimed over 56% of

16   the Net Settlement Value. (Declaration of Michael Bui ["Bui Declaration"] ¶ 8.)

17             **3.    Formula for Calculating Class Members Payments**

18             Class Members' settlement payments will be proportional to their hourly rates and the

19   total number of Pay Cycles during which they worked. To calculate settlement payments, the

20   Claims Administrator will first assign shares of the Net Settlement Value to each job position.

21   Each job position's share of the Net Settlement Value will be proportional to the product of its

22   average hourly rate and the total number of Pay Cycles during which its members worked.

23   (Settlement Agreement ¶ 51.) In turn, each Class Member's share of the Net Settlement Value

24   assigned to his job position will be proportional to the number of Pay Cycles during which he

25   worked in that job position. (*Id.*)

26             The Parties selected this method for calculating payments because it represents one of

27   the fairest and most orderly methods for apportioning settlement payments to Class Members.

28   Considering that the amount of damages members of any one job position could recover

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, 2ND FLOOR · LOS ANGELES, CALIFORNIA 90067

would be proportional to (1) the total number of class members who worked in that job

position, (2) their rates of pay, and (3) the length of their tenure (employees of longer terms

tend to experience more violations than employees of shorter terms), the negotiated formula

for calculating settlement payments closely mirrors the factors that a trier of fact would

consider in calculating damages.

**F.     The Notice and Claims Administration Process Were Completed Pursuant
            to the Court Order**

As authorized by the Court's Order preliminarily approving the Settlement Agreement,

the Parties engaged Simpluris, Inc. ("Simpluris") to provide settlement administration

services. (Bui Decl. ¶ 1-2.) Simpluris' duties have included:  (1) printing and mailing the

Class Notices, (2) receiving and logging undeliverable Class Notices, (3) processing Claim

Forms and requests for exclusion, (4) calculating claim payments (this will include

distribution of funds and tax-reporting following final approval), and (5) answering questions

from Class Members. (*Id.* at ¶ 2.)  Simpluris also set up a call center so that Class Members

could telephone and ask questions about the Settlement. (*Id.* at ¶ 3.)

On July 16, 2012, Simpluris received the Class Notice prepared jointly by Class

Counsel and counsel for Defendant and approved by the Court. (Bui Decl. ¶ 4.)  The Class

Notice summarized the Settlement's principal terms, provided Class Members with an

estimate of how much they would be paid if the Settlement received final approval, and

advised Class Members about how to submit claims for payment, opt out of the Settlement,

and how to object to the Settlement. (*Id.*)

Counsel for Defendant subsequently provided Simpluris with a mailing list (the "Class

List") including each Class Member's full name, last known address, Social Security

Numbers, and other information necessary to calculate payments. (Bui Decl. ¶ 4.)  The

mailing addresses contained in the Class List were processed and updated using the National

Change of Address Database maintained by the U.S. Postal Service. (*Id.* at ¶ 5.)  On August

29, 2012, Simpluris mailed Class Notices to all Class Members via First-Class U.S. mail. (*Id.*

at ¶ 6.)

1        Approximately 33% of the Settlement Class has claimed 56.4% of the Net Settlement

2    Value. (Bui Decl. ¶ 8.)  The average recovery is $337 and the highest is approximately $2937.

3    (*Id.*)  Significantly, less than one-tenth of a percent of the Class has opted out and not a single

4    Class Member objected to the Settlement.  (*Id.* at ¶¶ 10-11.)  This level of participation is

5    comparable to other wage and hour class action settlements approved by California state and

6    federal courts.  *See Hodges v. Thermasource, Inc.*, Case No. BC425928 (L.A. Super. Ct. July

7    26, 2011) (26% participation rate), *Charles v. Aaron's, Inc.*, Case No. BC431468 (L.A. Super.

8    Ct. May 24, 2011) (30% participation rate), *Grant v. Preferred Response Security Services*,

9    Case No. BC413046 (L.A. Super. Ct. Oct. 7, 2010) (30% participation rate), *Bejar v. Our*

10   *Lady Queen of the Angels*, Case No. BC390260 (L.A. Super. Ct. Apr. 30, 2010) (11%

11   participation rate), *Contreras v. United Food Group, LLC,* Case No. BC389253 (L.A. Super.

12   Ct. Sept. 10, 2009) (21% participation rate), *Fukuchi v. Pizza Hut, Inc.*, Case No. BC302589

13   (L.A. Super. Ct. Sept. 29, 2006) (8% participation rate), *Guerra v. L'Occitane, Inc.*, Case No.

14   BC373587 (L.A. Super. Ct., July 2, 2007) (21.4% participating rate), *Alberto v. GMRI, Inc.*

15   (Olive Garden), Case No. 07-cv-01895 (E.D. Cal. Sept. 12, 2007) (27.8% participation rate),

16   *Keplinger v. Cal. Pizza Kitchen*, Case No. 07CECG01534 (Fresno Super. Ct. May 15, 2007)

17   (12.2% participation rate), *Muniz v.  Pilot Travel Ctrs., LLC*, Case No. 07-cv-00325 (E.D. Cal.

18   Feb. 16, 2007) (14% participation rate), *Wu v. SR Invs.*, Case No BC356245 (L.A. Super. Ct.

19   Aug. 1, 2006) (30% participation rate), *Martinez v. Solar Link Technologies, Inc.*, Case No.

20   CIVRS813178 (San Bernardino Super. Ct. Sep. 29, 2011) (17.43% participation rate),

21   *Nelson v. YMCA of Metropolitan Los Angeles*, Case No. BC435814 (L.A. Super. Ct. Jul. 12,

22   2011) (25.33% participation rate), *Fernandez v. Dejon Enterprises, Inc.*, Case No. 30-2009-

23   00316746 (Orange County Super. Ct. Jan. 28, 2011) (22.11% participation rate), and

24   *Hernandez v. Quality Parking Service, Inc.*, Case No. BC363766 (L.A. Super. Ct. Apr. 8,

25   2011) (21.61% participation rate).

26       The percentage of the Net Settlement Value claimed by participating class members

27   here is also comparable to class action settlements approved by California state and federal

28   courts.  *See Hodges v. Thermasource, Inc.*, Case No. BC425928 (L.A. Super. Ct. July 26,

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, 2ND FLOOR, LOS ANGELES, CALIFORNIA 90067

1   2011) (32% of net settlement fund claimed), *Bejar v. Our Lady Queen of the Angels*, Case No.

2   BC390260 (L.A. Super. Ct. Apr. 30, 2010) (18% of net settlement fund claimed), *Fukuchi v.*

3   *Pizza Hut, Inc.*, Case No. BC302589 (L.A. Super. Ct. Sept. 29, 2006) (15% of net settlement

4   fund claimed), *Tae v. Wokcano Downtown L.A., Inc.*, Case No. BC428735 (L.A. Super. Ct.

5   Jan. 20, 2012) (50.77% claimed of the net settlement fund), *Morales v. GE Osmonics*, Case

6   No. 10-CV-01045 JM (WVG) (C.D. Cal Jan. 9, 2012) (45.57% claimed of the net settlement

7   fund), *Douglas v. Barney's Associates, L.P.*, Case No. BC402900 (L.A. Super. Ct. Nov. 19,

8   2010) (44.50% claimed of the net settlement fund).

9          Class Counsel attributes the Class' positive response to the Settlement to a number of

10   factors, including the significant monetary relief secured by the Settlement, the clarity of the

11   Class Notice and relative ease in submitting claims for payment, Simpluris' careful and

12   efficient administration of the Settlement, and Class Counsel's independent efforts to ensure

13   that Class Members were well-informed of the Settlement.  Class Counsel estimate that they

14   spoke to over 280 Class Members during the notice period, providing Class Members with an

15   explanation of the Settlement's terms, their rights to participate in the Settlement (or to opt

16   out) and to submit claims for payments, and apprising them of the deadline for submitting

17   claims for payment.  In cases where Class Members indicated that they had not received a

18   copy of the Class Notice, Class Counsel directly intervened to ensure that Class Notices were

19   re-mailed and received.  (Declaration of G. Arthur Meneses ["Meneses Decl."] ¶ 13.)

20   **III.    ARGUMENT**

21          **A.    All Relevant Factors Under California Law Support Final Approval**

22                **1.    California Law Sets Forth the Relevant Factors for Final Approval**

23          "Public policy generally favors the compromise of complex class action litigation."

24   *Cellphone Termination Fee Cases*, 180 Cal. App. 4th 1110, 1118 (2009), *see also 7-Eleven*

25   *Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135, 1151 (2000)

26   ("voluntary conciliation and settlement are the preferred means of dispute resolution . . . [t]his

27   is especially true in complex class action litigation . . . .").

28          Class action settlement approval occurs in two steps:  (1) an early (preliminary) review

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, 4 FLOOR  ·  LOS ANGELES, CALIFORNIA 90067

1   by the trial court, and (2) a subsequent (final) review after notice has been distributed to Class

2   Members for their comments and/or objections. Cal. R. Ct. 3.769. The Court granted

3   preliminary approval on July 16, 2012. Plaintiffs now seek final approval.

4         "[T]he trial court has broad powers to determine whether a proposed settlement in a

5   class action is fair." *Mallick v. Super. Ct.*, 89 Cal. App. 3d 434, 438 (1979). Fairness is

6   presumed when: (1) the settlement is reached through arm's-length bargaining,

7   (2) investigation and discovery are sufficient to allow counsel and the court to act

8   intelligently, (3) counsel is experienced in similar litigation, and (4) the percentage of

9   objectors is low. *Nordstrom Com. Cases*, 186 Cal. App. 4th 576, 581 (2010). "Where the

10   settlement terms are fair and reasonable, the settlement is presumptively valid, subject only to

11   objections that may be raised at a final hearing." Conte & Newberg, *Newberg on Class*

12   *Actions* § 11.26 (4th ed. 2002) (Newberg).

13        By granting preliminary approval, this Court has already determined that the

14   Settlement Agreement is fair and reasonable, subject to objections. With no objections to the

15   Settlement, the Court's preliminary assessment has been separately endorsed by the

16   Settlement Class. Accordingly, final approval should be granted.

17        **2.    Class Counsel Conducted Significant Investigation and Discovery**

18        Class Counsel thoroughly engaged in the discovery process and made use of

19   documents and data produced by Defendant to assess Defendant's exposure. As discussed in

20   greater detail above, Class Counsel were diligent and thorough in their investigation of the

21   Class' claims and in their preparation for mediation. Class Counsel propounded and

22   responded to written discovery, interviewed Class Members to acquire information about the

23   alleged claims and obtain evidence, conducted a detailed damages analysis and evaluation of

24   the strengths and weaknesses of Plaintiffs' claims, and participated in mediation. (Schimmel

25   Decl. ¶¶ 6-8.) Even after a successful mediation, Class Counsel conducted confirmatory

26   discovery by inspecting Defendant's timekeeping system at its corporate office. (Schimmel

27   Decl. ¶ 9, n.3.)

28        Using the information obtained through discovery and investigation, Class Counsel

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, 2ND FLOOR · LOS ANGELES, CALIFORNIA 90067

1    assessed the reasonable value of the Class' claims.  (Schimmel Decl. ¶ 7.)  Based on that

2    assessment, Class Counsel is of the opinion that this Settlement for the consideration, and on

3    the terms set forth in the Settlement Agreement, is fair, reasonable, and adequate, and is in the

4    best interest of the Class in light of all known facts and circumstances, including the risk of

5    significant delay and uncertainty associated with litigation, various defenses asserted by

6    Defendant, and potential appellate issues.  (*Id.* at ¶¶ 9, 11.)

               **3.**      **The Settlement Was Reached Through Arm's-Length Bargaining in**

                      **Which Both Parties Were Represented by Experienced Counsel**

9           "[W]hat transpires in settlement negotiations is highly relevant to the assessment of a

10   proposed settlement's fairness."  *State v. Levi Strauss & Co.*, 41 Cal. 3d 460, 482 (1986).

11   Courts presume the absence of fraud or collusion in the negotiation of a settlement, unless

12   evidence to the contrary is offered, thus there is a presumption that settlement negotiations are

13   conducted in good faith.  *See* Newberg, § 11.51.

14          The Parties were represented by experienced class action counsel throughout the

15   negotiations resulting in this Settlement.  Plaintiffs were represented by Initiative Legal Group

16   APC ("ILG") and Clark & Markham, LLP.

17          ILG regularly litigates wage-and-hour claims through certification and on the merits.

18   (Meneses Decl. ¶¶ 3-5.)  Over the past six years, ILG, as sole or lead counsel, has successfully

19   certified nineteen class actions by way of *contested* motions.  (*Id.* at ¶ 3.)  ILG has also, again

20   as sole or lead counsel, obtained final approval of over 70 class action settlements totalling

21   tens of millions of dollars on behalf of hundreds of thousands of class members.  (*Id.* at ¶ 5.)

22   ILG also maintains an active and successful appellate practice.  (*Id.* at ¶ 4.)  Most recently, in

23   *Brown v. Ralphs Grocery Co.*, 197 Cal. App. 4th 489 (2011), ILG succeeded in shielding its

24   client's Private Attorneys General Act ("PAGA") claims from arbitration, obtaining a ruling

25   that PAGA claims cannot be waived by private agreement.  Defendant had argued that under

26   *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011), the Federal Arbitration Act

27   (FAA) pre-empted state law invalidating such arrangements.  The Court of Appeal disagreed,

28   finding that *Concepcion* "does not provide that a public right, such as that created under the

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, MEZZANINE · LOS ANGELES, CALIFORNIA 90067

1 [PAGA], can be waived if such a waiver is contrary to state law."[5] *Id.* at 500.

2     Clark & Markham, LLP, specializes in representing consumers, employees and small-

3 to-medium sized business in enforcement of their rights under the consumer protection, labor,

4 securities and antitrust laws.  The firm's trial attorneys have been counsel in cases resulting in

5 large settlements for consumers in lawsuits in both California and throughout the United

6 States, with settlements over a billion dollars in the past five years.  Its partners have

7 substantial experience trying in federal and state courts over the past 30 years.

8     Defendants were represented by O'Melveny & Myers LLP, one of California's

9 preeminent defense firms with a significant wage and hour defense practice.

10     At all times, the Parties' settlement negotiations were adversarial, non-collusive, and

11 conducted at arm's-length with the assistance of experienced mediator David Rotman.

12 Moreover, the terms of the Settlement Agreement are premised on objective evidence that has

13 been weighed in light of the risks and expense of continued litigation.

14     **4.    The Proposed Settlement Is Reasonable Given the Strength of**

15     **Plaintiffs' Claims and the Risks and Expense of Litigation**

16     A settlement is not judged against what might have been recovered had a plaintiff

17 prevailed at trial, nor must a settlement provide 100% of the potential recovery in order to be

18 considered a fair and reasonable settlement.  *See Rebney v. Wells Fargo Bank*, 220 Cal. App.

19 3d 1117, 1139 (1991) (settlement found to be fair and reasonable even though the monetary

20 relief provided was a fraction of the potential recovery).  Rather, compromise is expected:

21         Compromise is inherent and necessary in the settlement
22         process . . . even if the relief afforded by the proposed settlement is substantially narrower than it would be if the suits were to be
23         successfully litigated, this is no bar to a class settlement because the public interest may indeed be served by a voluntary
24         settlement in which each side gives ground in the interest of avoiding litigation.

25
26 [5] In *Clymer v. Candle Acquisition* (L.A. Super. Ct. No. BC328765), ILG successfully appealed a trial court order denying class certification. In *Coleman v. Estes Express Lines, Inc.*, No. 10-56852 (9th Cir. January 25, 2011), ILG successfully defended an appeal of the
27 District Court Order remanding the action to state court.  The Ninth Circuit Court of Appeals adopted ILG's reasoning that a District Court should limit its analysis to the allegations
28 contained in complaint when determining whether it lacks subject matter jurisdiction pursuant to the Local Controversy under the Class Action Fairness Act.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

INITIATIVE LEGAL GROUP APC

*Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 250 (2001).

In *Munoz v. BCI Coca-Cola Bottling Co.*, the Court of Appeal re-emphasized the trial court's discretion to approve a settlement by assessing several well-recognized factors, including the "strength of plaintiffs' case," the "risk, expense, complexity and likely duration of further litigation," and the "risk of maintaining class action through trial." 186 Cal. App. 4th 399, 407 (2010). Although a trial court must satisfy itself that the consideration being received for the release of class members' claims is reasonable in light of the strengths and weaknesses of the claims and the risks of the particular litigation (*Kullar v. Foot Locker Retail, Inc.*, 168 Cal. App. 4th 116, 129 (2008), *Clark v. American Residential Services LLC*, 175 Cal. App. 4th 785, 799 (2009)), a plaintiff need not provide the trial court with an explicit statement of the maximum amount that the plaintiff class could recover if it were to prevail on all claims (*Munoz*, 186 Cal. App. 4th at 409, n.6) ("the standard list of factors a trial court should consider in determining whether a settlement is fair and reasonable does not expressly include specification of the maximum amount of recoverable damages.")).

Class Counsel's evaluated the strengths of the class claims alleged and assessed the range of potential outcomes in light of the risk, expense, complexity, and likely duration of the litigation. Below is an analysis of the risks regarding certification and trial of Plaintiffs' claims that Class Counsel took into consideration in determining that the settlement was fair and reasonable.

In Class Counsel's estimation, Plaintiffs' most valuable stand-alone claim was the claim that L.A. Fitness permitted employees to perform work off-the-clock work for no compensation. During interviews with Class Counsel, many Class Members, especially Personal Trainers and Sales Representatives, estimated that they generally worked several hours off-the-clock each week.[6] By contrast, other non-exempt employees, including Class

---

[6] Plaintiffs reviewed computer records of membership counselors (one of the largest groups of employees) which reflected the times of day these employees were working, and a comparison of these records with payroll data and work schedules indicated a shortfall in wage payment of approximately 3 hours a week. Using an average compensation rate of $8 an hour for these employees would indicate a gross damages claim of $24 a workweek.

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, 4TH FLOOR   LOS ANGELES, CALIFORNIA 90067

1   Instructors, estimated only a small amount of off-the-clock work each week. Factoring in the

2   risks of a successful certification motion and a successful verdict at trial, the value of the

3   classes off-the-clock claim was estimated in aggregate to be approximately $2.5 million.

4       It is important to note that, while Class Counsel determined that Plaintiffs' off-the-

5   clock claim was likely the most valuable of all their alleged claims, the claim, particularly as

6   it applies to Class Instructors, was not as valuable. The Class Instructors whom Class Counsel

7   interviewed reported that they worked generally about only 2 hours a week and rarely worked

8   off-the-clock because they had little incentive to spend much time at the gym before or after

9   their scheduled classes. Although group classes were 50-minutes, Class Instructors were paid

10  for an hour of their time because L.A. Fitness recognized that they needed to give Class

11  Instructors time to prepare for, and conclude, group classes. Perhaps most significantly,

12  around April of 2010, L.A. Fitness modified its time-keeping procedures to allow Class

13  Instructors to report all time worked separate and apart from teaching their group classes.

14  Extrapolated to the entire Class Period, the aggregate value of all time spent by Class

15  Instructors outside of teaching group classes amounts to only about $25,000. It follows that

16  Plaintiffs' off-the-clock claim for Class Instructors was particularly vulnerable to a defense

17  that the claim was *de minimis*, and accordingly had to be substantially discounted to account

18  for that defense.

19      Class Members also reported missing an average of one meal period per week.

20  However, Defendant provided data verifying that a significant number of meal period

21  premiums were paid, and further, only unreported missed meal periods were uncompensated.

22  Moreover, Class Counsel recognized the necessity of discounting the valuation of Plaintiffs'

23  meal period claim, owing to continuing uncertainty at the time of mediation as to how the

24  California Supreme Court will rule on pending meal break cases. At the time of mediation,

25  the California Supreme Court was reviewing cases that could have completely re-structured

26  the State's meal and rest break law. *See Brinker v. Super. Ct.*, 165 Cal. App. 4th 25, 31

27  (2008) (holding that employers "need only provide [meal breaks] and not ensure they are

28  taken"), rev. granted Oct. 22, 2008, S166350, and *Brinkley v. Pub. Storage, Inc.*, 167 Cal.

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, 2ND FLOOR · LOS ANGELES, CALIFORNIA 90067

1    App. 4th 1278, 1290 (2008) (accord), rev. granted Jan. 14, 2009, S168806.  As such,

2    uncertainty engendered by *Brinker*, and the prospect of a pro-employer ruling, required the

3    meal break claim to be substantially discounted for settlement purposes.  Indeed, when the

4    Supreme Court ultimately issued a decision in *Brinker*, it was a decidedly mixed result,

5    favorable to workers in parts, but also establishing doctrines favorable to employers.[7]

6    Accordingly, the value of the classes unpaid meal period premium claim, reduced by the risks

7    of litigation, was approximately $1 million.

8        Accordingly to interview data, Class Members also missed approximately one rest

9    break per week.  However, because employers have no obligation to record rest periods, the

10   relative lack of written proof, except for declarations from Class Members, would have

11   diminished the prospect of certifying the claim, as has occurred in other cases.  The value of

12   the rest break claim was approximately $1.5 million.

13       Plaintiffs also alleged that Defendants provided their employees with non-compliant

14   wage statements in violation of Labor Code section 226(a).  Penalties for violations of 226(a)

15   are assessed at the rate of $50 for the initial pay period in which a violation occurs and $100

16   per employee for each violation in a subsequent pay period, not to exceed an aggregate of four

17   thousand dollars per employee.  Cal. Lab. Code § 226(e).

18       However, Defendants commonly argue that Labor Code section 226(e) provides a right

19   of recovery only for employees "suffering injury" as a result of an employer's failure to

20   comply with section 226(a).  The statute provides that only "[a]n employee **suffering injury**

21   as a result of a knowing and intentional failure by an employer to comply with" the statute

22   may recover damages.  Cal. Lab. Code § 226(e) (emphasis added).  The dispositive issue is

23   whether "suffering injury" is satisfied by the deprivation of a legal right (i.e., an employer's

24   provision of non-compliant wage statements), or by the employees or class counsel having to

25   perform mathematical computations because of missing or incorrect information on the wages

26

27       [7] *See* "*Brinker*: "Mixed Results for Class in 54-Page Unanimous Decision," Impact
     Litig. J. (Apr. 20, 2012); "California Supreme Court's *Brinker* Decision Offers Mixed

28   Results," at http://www.gordonrees.com/publications/viewPublication.cfm?contentID=2597
     (Apr. 2012).

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, 2ND FLOOR · LOS ANGELES, CALIFORNIA 90067

1  statements (*Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th 1286, 1306-1307 (2010), *Wang v.*

2  *Chinese Daily News, Inc.*, 435 F. Supp. 2d 1042, 1050-1051 (C.D. Cal. 2006), *Elliot v.*

3  *Spherion Pacific Work, LLC* 572 F. Supp. 2d 1169, 1181(C.D. Cal. 2008), *Ortega v. J.B.*

4  *Hunt Transport, Inc.*, 258 F.R.D. 361, 374 (C.D. Cal. 2008), *Perez v. Safety-Leen Systems,*

5  *Inc.*, 253 F.R.D. 508, 517 (N.D. Cal. 2008)) or consequential damages, caused by the non-

6  compliant wage statements.  Employers have frequently prevailed in arguing for the latter

7  interpretation.[8]  The wage-statement claim had a cumulative value of approximately $2

8  million.

9      Plaintiffs alleged that L.A. Fitness did not reimburse Class Members for expenses

10  necessarily incurred by employees in the execution of their duties, namely for mileage.  L.A.

11  Fitness denied liability, and could have argued, however, that there was such substantial

12  variance in the mileage traveled, and a lack of documentation to establish each individual's

13  mileage that such a claim raised substantial individualized issues that would make

14  certification of the claim difficult, and would make proving damages similarly challenging.

15  Accordingly, the discounted value of the claim was at approximately $200,000.

16      Plaintiffs also brought claims for PAGA penalties and waiting-time penalties, based on

17  the failure to pay for all time worked and pay the appropriate meal and rest premiums.

18  However, Defendant could have argued that PAGA penalties are discretionary, and any

19  amount sought can be reduced or denied in full by a court.  (Cal. Lab. Code § 2699.3(*l*))

20  Additionally, PAGA defendants regularly argue that a lack of published cases to provide

21  courts with guidance as to the application of discretion in approving PAGA awards renders

22  valuation uncertain, and implies a corresponding discount for settlement.  With respect to the

23  waiting time penalties alleged, Plaintiffs recognized that because section 203 arguably

24  requires a willful failure to pay wages, and in light of the difficulties associated with

---

[8] The often dispositive wage statement issue frequently comes down to whether "suffering injury" is satisfied by the deprivation of a legal right (i.e., an employer's provision of non-compliant wage statements) or consequential damages, caused by the non-compliant wage statements.  In fact, California appellate authority held that some form of cognizable injury beyond the violation itself or confusion is required before statutory damages pursuant to Labor Code section 226(e) can be awarded. *Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th 1286, 1306 (2010); *Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136 (2011).

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, 2ND FLOOR, LOS ANGELES, CALIFORNIA 90067

1  establishing a common policy or practice of paying wages after they are due, the value of the

2  claim had to be discounted.  These derivative claims add approximately another $2.5 million

3  in value to this case.

4      Accordingly, L.A. Fitness' maximum realistic exposure was estimated to be

5  approximately $10 million.

6      **5.**    **The Response of the Class Was Positive**

7      The Class Members' response demonstrates their support for this settlement.  Class

8  Members have claimed over 56% of the Net Settlement Value, less than one-tenth of a percent

9  of the Class has opted out, and not a single Class Member objected to the Settlement.  (Bui

10  Decl. ¶¶ 8-11.)  A low number of opt outs and objections is a strong indicator that a settlement

11  is fair and reasonable.  *7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal.

12  App. 4th 1135, 1152-53 (2000) (class response favorable where "[a] mere 80 of the 5,454

13  national class members elected to opt out  [(1.5% of the entire Class)] and . . . [a] total of nine

14  members . . . objected to the settlement.)

15      **B.**    **The Proposed PAGA Settlement Is Reasonable**

16      Pursuant to the Settlement Agreement, $25,000 from the Gross Settlement Value shall

17  be paid allocated to the resolution of Plaintiffs' PAGA claim, of which 75% ($18,750) will be

18  paid directly to the LWDA as mandated by statute.  Where PAGA penalties are negotiated in

19  good faith and "there is no indication that [the] amount was the result of self-interest at the

20  expense of other Class Members," such amounts are generally considered reasonable.

21  *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 U.S. Dist. LEXIS 33900, at *24

22  (N.D. Cal. Apr. 3, 2009).  Moreover, the amount, approximately 0.5% of the Gross Settlement

23  Value, is well within the range of reasonable PAGA settlement amounts approved by courts.

24  *See, e.g., Nordstrom Com. Cases*, 186 Cal. App. 4th 576, 579 (2010) ("[T]rial court did not

25  abuse its discretion in approving a settlement which does not allocate any damages to the

26  PAGA claims."), *Hopson v. Hanesbrands Inc., supra* (approving a PAGA settlement of 0.3%

27  or $1,500), *In Re M.L. Stern Overtime Litig.*, No. 07-CV-O118-BTM, 2009 U.S. Dist. LEXIS

28  31650, at *4 (S.D. Cal. Apr. 13, 2009) (approving a PAGA settlement of 2%, or $20,000).

INITIATIVE LEGAL GROUP APC
1500 CENTURY PARK EAST, MEZZANINE, LOS ANGELES, CALIFORNIA 90067

**C.      The Requested Payment to the Claims Administrator Is Reasonable and Should Receive Final Approval**

Plaintiffs request final approval of claims administration costs in the amount of $94,886. (Bui Decl. ¶ 12.) Simpluris has promptly and properly distributed the Class Notice to Class Members and completed its duties in accordance with the settlement terms and the Court's preliminary approval Order. (*See generally* Bui Decl.) Accordingly, the $94,886 payment is fair and reasonable and should be accorded final approval along with the rest of the Settlement terms.

**IV.      CONCLUSION**

The Parties have negotiated a fair Settlement of the wage and hours claims that likely would not have been brought, let alone successfully resolved, but for the effort and resolve of the Class Representatives and Class Counsel. The Class Members' positive response indicates that the Settlement is fair and reasonable. Accordingly, Plaintiffs request that this Court grant final approval of the Settlement Agreement.

Dated:  November 9, 2012                     Respectfully submitted,

                                            Initiative Legal Group APC

                                            By: _____

                                            G. Arthur Meneses

                                            Attorneys for Plaintiffs

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# EXHIBIT D

# Scott Cole & Associates, APC
### Class Action Attorneys

### Firm Resume & Overview

**Introduction**:

Scott Cole & Associates, APC ("SCA") represents individuals in employment and consumer class action litigation. Founded in 1992, SCA has been devoted primarily to such matters, having litigated hundreds of cases against businesses of all types and in nearly every industry imaginable. The members of SCA have extensive experience prosecuting class/complex actions, both in a sole counsel capacity and in leadership positions, oftentimes among many firms, in California and nation-wide litigation, have published articles dealing with various substantive issues as well as class action litigation/procedure, speak regularly at public events, and have served as consulting experts in class action litigation. For over two decades, the firm has recovered hundreds of millions of dollars to hundreds of thousands of workers and consumers, been involved in record-setting resolutions and helped achieve the correction of numerous unlawful employment and consumer fraud practices.

**Attorney Backgrounds, Education and Professional Affiliations:**

In addition to an extensive staff of paralegal and other legal support personnel, the firm's practice is lead by the following attorneys, listed here by seniority with the firm.

Scott Edward Cole, Esq.
Born December 28, 1965 in San Pablo, California. San Francisco State University, B.A., Speech Communications (Individual Major in Rhetoric), 1989, Minor Study in Business Administration, 1989; University of San Francisco School of Law, J.D., 1992; President, University of San Francisco Labor & Employment Law Society; Admitted, California State Bar, December 1992; Member, California State Bar Labor and Employment Law Section, 1993-present; Admitted, United States District Court (Northern District), 1992; Admitted, United States Court of Appeals (9th Circuit), 1993; Admitted, United States District Court (Eastern District), 1995; Admitted, United States District Court (Central District), 2005; Admitted, United States District Court (Southern District), 2005; National Association of Securities Dealers (Registered Representative [Series 7], 1987-1989); Member/Referral Attorney, Animal Legal Defense Fund (1998-2000); Member, Board of Directors, American Synergy Center (2001); Member, Association of Trial Lawyers of America (2005-present); Member, California Employment Lawyers Association (2005-present); Member, American Bar Association (2007-present); Member, Alameda County Bar Association (2008-present); Vice Chair (2009 & 2010), Alameda County Bar Association's Labor & Employment Law Section Executive Committee; Member, National Employment Lawyers Association (2009-present); U.S. Delegate to the InterAmerican Meeting of Labor and Trade Union Lawyers, Havana, Cuba, March 2012.

<u>Matthew R. Bainer, Esq.</u>
Born March 27, 1976 in Riverside California. University of California. B.A., American Studies, 1999, Minor Study in City Planning; University of San Francisco School of Law, J.D., 2002; Managing Editor, University of San Francisco Maritime Law Journal, 2001-2002; Admitted, California State Bar, 2002; Admitted, United States District Court (Northern District), 2003; Admitted, United States Court of Appeal for the Ninth Circuit, 2003; Admitted, United States District Court (Central District), 2006; Member, California State Bar Labor and Employment Section (2003-present); Member, Alameda County Bar Association (2010); Executive Committee Member (2010), Alameda County Bar Association's Labor & Employment Law Section. Mr. Bainer serves as a Senior Associate.

<u>Molly A. DeSario, Esq.</u>
Born January 25, 1978 in Kettering, OH. University of Cincinnati, B.A., Marketing and International Business 1999; Northeastern University, School of Law, J.D., 2002; Teaching Assistant, Legal Writing and Research Course, 2001-2002. Admitted Maryland State Bar, 2002; Admitted, United States District Court for the District of Maryland, 2003. Admitted, California State Bar, 2004; Admitted, United States Court of Appeals for the Ninth Circuit, 2004; Admitted, United States District Court (Northern District), 2009. Member of the California Employment Lawyers Association, the San Francisco Barristers Club, the American Bar Association and the Queen's Bench Bar Association of the San Francisco Bay Area. Ms. DeSario serves as a Senior Associate.

<u>Hannah R. Salassi, Esq.</u>
Born May 13, 1976 in Houston, TX. University of Oklahoma, B.A., Letters (cum laude); University of Texas at Austin School of Law, J.D., 2003; Law Clerk, Travis County District Attorney's Office; Admitted, California State Bar, 2003; Admitted, United States District Court (Northern District), 2004; Admitted, Texas State Bar, 2004; Admitted, United States District Court (Central District), 2011; Admitted, United States District Court (Eastern District), 2011. Ms. Salassi is an associate attorney with the firm.

<u>Jessica L. Campbell, Esq.</u>
Born August 15, 1986 in Boston, MA. University of California at Berkeley, B.A., Rhetoric, Legal Studies; Santa Clara University School of Law, J.D., 2011; Admitted, California State Bar, 2011; Admitted, United States District Court (Northern District), 2012; Admitted, United States District Court (Central District), 2013. Ms. Campbell is an associate attorney with the firm.

**SCA Scholarly Publications (*Partial List Only*):**

Scott Edward Cole & Matthew Roland Bainer, *The Quest for Class Certification*, Employment Law Strategist (Sept. & Oct. 2003).

Scott Edward Cole & Matthew Roland Bainer, *To Be or Not to Be a Penalty: Defining the Recovery Under California's Meal and Rest Period Provisions*, Golden Gate U. L. Rev. (Spring 2005).

Scott Edward Cole & Matthew Roland Bainer, *To Certify or Not to Certify: A Circuit-By-Circuit Primer of the Varying Standards for Class Certification in Actions under the Federal Labors Standards Act*, B.U. Pub. Int. L.J. (Spring 2004).

Scott Edward Cole, *Kullar v. Footlocker Retail, Inc.: A New Standard for Class Action Settlement Approval*, CELA Bulletin (April 2009).

Matthew Roland Bainer, *Ninth Circuit Provides Much Needed Guidance on Evidentiary Burdens in Overtime Misclassification Litigation,* CELA Bulletin (May 2009).

Kevin Robert Allen, *Putting the "Rest" Back in Rest Break,* Alameda County Bar Association - Labor & Employment Section News (Autumn 2009).

Michael Scott Lubofsky, *Barristers to Blogs: Softening Ethical Restrictions in the Digital Age,* Los Angeles Daily Journal (June 14, 2010).

## Representative Class Action/Complex Litigation Matters:

Scott Cole & Associates, APC has represented hundreds of thousands of individuals in hundreds of legal matters, including over one hundred class actions and/or complex litigation cases. While the firm has experience in environmental, business and personal injury matters, nowadays, SCA is almost entirely devoted to the prosecution of class action wage and hour matters, only a sampling of which are listed below. We are currently investigating wage and hour violations by numerous companies and are prepared to prosecute these as California and/or nationwide cases. Far from being a comprehensive list of our class action experience, examples of the types of cases we litigate include:

## Employment Class Action Litigation Experience [*Partial List Only*]:

Brandt, et al. v. California State Automobile Association, et al.
United States District Court, District of Nevada, Case No. 3:03-CV-00310
> This wage and hour class action was brought on behalf of all Nevada claims adjusters working for CSAA between January 1997 and the present. This lawsuit alleged that, during these years, CSAA mis-classified these workers as exempt "administrators" and refused to pay them for overtime hours worked and fraudulently promised to pay them overtime compensation upon settlement of a companion case (*Thomas v. Cal. State Auto. Assoc.*, below). We served as co-counsel, *pro hac vice*, for the proposed class of employees in this matter.

Bulow, et al. v. Wells Fargo Investments, LLC

United States District Court, Northern District of California, Case No. 3:06-CV-7924

This matter was filed as a nation-wide class action against Wells Fargo Investments, on behalf of its Financial Consultants to recover overtime pay, compensation for denied meal and rest periods (California only) and reimbursement for business related service and supply expenses (California only). This matter settled for $6.9 million.

Cano, et al. v. United Parcel Service, Inc.

Alameda County Superior Court Case No. RG03089266

This wage and hour complex litigation matter involved the alleged mis-classification of overtime non-exempt Operations Management Specialists, Operational Excellence Specialists and/or Industrial Engineering Specialist at this company's California facilities. This action settled in 2004 for $4.5 million.

Chaidez, et al. v. Odwalla, Inc.

San Mateo County Superior Court Case No. CIV430598

This wage and hour complex litigation matter involved the alleged misclassification of overtime non-exempt California Route Sales Representatives. We served as primary counsel for this proposed class of employees. This action settled for $2.2 million.

Chang, et al. v. Tower Mart

Sacramento County Superior Court, Case No. 34-2009-00044408-CU-OE-GDS

Scott Cole & Associates, APC filed this lawsuit, alleging violations of California law for failure to pay overtime to Tower Mart's California store managers. It is also alleged that the company denied these managers meal and rest periods. This matter settled for $1.5 million.

Chatellier, et al. v. The White House/Black Market Stores Inc.

Santa Clara County Superior Court Case No. 1-04-CV-030489

This lawsuit involved claims against this retail clothing store for violations of California law for failure to pay overtime to its Store Managers as well as for the alleged denial of meal and rest periods. The settlement achieved in this action represented one of the highest per-workweek wage and hour settlements at the time.

Christman, et al. v. Good Guys, Inc.

San Diego County Superior Court Case No. GIS21939

This legal action alleged violations of California law for unpaid overtime wages and for failure to provide rest and meal periods on behalf of multiple employee classifications. This action settled for up to $1.05 million.

CKE Overtime Cases
Los Angeles County Superior Court Case No. BC283274 (JCCP No. 4274)
> This class action was brought against fast food chain Carl's Jr. for violations of California's overtime laws on behalf of the company's California restaurant chain Managers. The coordinated litigation settled for up to $9.0 million in 2004.

Dailey, et al. v. Performant Financial Corporation
Alameda County Superior Court Case No. RG10493644
> Scott Cole & Associates, APC filed this class action in 2010, on behalf of the company's non-exempt employees seeking wages for alleged violations of California law for unpaid overtime and denial of meal and/or rest periods. After defeating the defendant's summary judgment motion and filing our motion for class certification, we settled this case for $1.2 million.

Davis, et al. v. American Commercial Security Service, Inc.
San Francisco County Superior Court Case No. CGC-05-444421
(Consolidated with Los Angeles County Superior Court Case No. BC336416)
> Scott Cole & Associates, APC filed a claim against American Commercial Security Services, Inc. for violations of California law for denial of meal and rest periods toward security guards. The action achieved class certification status in 2009. Following summary judgment proceedings, a judgment of over **$89 million** was entered against the defendant along with a successful motion for $26.7 million in attorney fees. The judgment is on appeal.

Davis, et al. v. Universal Protection Security Systems, Inc., et al.
San Francisco County Superior Court Case No. CGC-09-495528
> Scott Cole & Associates, APC filed a claim in 2009 against Universal Protection Security Systems, Inc. for violations of California law for denial of meal and rest periods toward security guards. This case settled in 2013 for $4 million.

DeNeveu, et al. v. Ross Stores, Inc.
Alameda County Superior Court Case No. RG10504571
> Scott Cole & Associates, APC filed this class action in December 2009, alleging violations of California law for failure to pay overtime to Ross's salaried Store Manager positions. It was also alleged that the company denied these managers rest and meal periods.

Despres (Cornn), et al. v. United Parcel Service, Inc.
United States District Court, Northern District of California, Case No. 3:03-CV-02001
> This wage and hour class action litigation was brought to remedy violations of meal and rest period regulations on behalf of the company's California ground delivery drivers. We served as co-counsel for the certified class of drivers. This action settled for **$87 million**, an unprecedented settlement amount for such claims.

Escow-Fulton, et al. v. Sports and Fitness Clubs of America dba 24 Hour Fitness USA, Inc.
San Diego County Superior Court Case No. GIC881669; consolidated with Case No. GIC873193
Scott Cole & Associates, APC filed this class action against this health and fitness
company on behalf of the company's California "Group X" Instructors to recover regular
and overtime pay, related penalties and un-reimbursed expenses. The action achieved
class certification status in 2009. In 2011, the parties agreed to settle the class' expense
reimbursement claims for $10 million. The parties then filed cross-motions for summary
adjudication and on August 2, 2011, the court issued an Order finding 24 Hour Fitness'
session rate compensation scheme to be an invalid piece rate. The parties then agreed to
settle the class' unpaid wage claims for $9 million, and the summary adjudication order
was vacated pursuant to settlement.

Fakhro, et al. v. Turner's Outdoors, Inc.
Los Angeles County Superior Court Case No. BC388874
This lawsuit alleges violations of California law for failure to pay overtime to the
company's California Store Managers. It was also alleged that the company denied these
managers rest and meal periods. The Court granted final approval to a classwide
settlement in 2009.

Gilhuly v. Kmart Corporation
United States District Court, Northern District of California, Case No. 4:10-CV-0360
Scott Cole & Associates, APC filed this class action in December 2009, alleging
violations of California law for failure to pay wages, including unpaid overtime
compensation, to Kmart's Sales Coach, Operations Manager and Merchandise Manager
positions. It was also alleged that the company denied these managers rest and meal
periods.

Grindstaff, et al. v. Kohl's Department Stores, Inc.
Los Angeles County Superior Court Case No. BC341954
(Consolidated with Case No. BC327426)
This action alleged violations of California law for failure to pay overtime to assistant
store managers. It was also alleged that the company denied its assistant store managers
rest and meal periods. This action settled in 2008 for $6 million.

Grootboom v. Security Industry Specialists, Inc.
Alameda County Superior Court Case No. RG09435440
This class action was filed on behalf of the company's California-based security guards
to recover unpaid wages and compensation for missed meal and rest periods in violation
of California law. This action settled in 2009 for $775,000.

Holm, et al. v. Borders, Inc.
San Francisco County Superior Court Case No. CGC-05-445357
> Scott Cole & Associates, APC served as counsel for the proposed class against this retail chain for violation of California law for failure to pay Inventory and/or Sales Managers overtime wages. It was also alleged that the proposed class had been denied rest and meal periods. This matter settled in 2007 for $3.5 million.

Ingraham v. Orchard Supply Hardware, Corp.
San Mateo County Superior Court Case No. 457004
> Scott Cole & Associates, APC filed this matter on behalf of all company employees who were forced to maintain, as a condition of employment, a company-issued uniform. This class action also seeks recovery of unpaid wages, compensation for the improper denial of overtime pay and for missed meal and rest periods. This matter resolved in 2008 on behalf of approximately 22,000 class members for $1.75 million.

Kelly, et al. v. Walgreen Co.
San Francisco County Superior Court Case No. CGC-07-464347
> Scott Cole & Associates, APC filed an action against this retailer on behalf of employees who were allegedly subject to security searches for which they were not compensated, in violation of California law. Also alleged was that the company denied these employees rest and meal periods. The action settled for $7.5 million with SCA serving in the lead role.

Kullar v. Foot Locker, Inc.
San Francisco County Superior Court Case No. CGC-05-447044
> This action was brought against this sporting retailer on behalf of California employees who were allegedly forced to purchase shoes of a distinctive color or design as a term and condition of their employment and in violation of state law. The Court approved a $2.0 million settlement that resolved this action. After two separate appeals by an objector challenging the settlement, the Court of Appeal affirmed the trial court's judgment.

Kurihara v. Best Buy Co., Inc.
United States District Court, Northern District of California, Case No. 3:06-CV-01884
> We filed an action against this retailer on behalf of employees who were allegedly subject to security searches for which they were not compensated, in violation of California law. Also alleged was that the company denied these employees rest and meal periods. In 2007, the Court certified a class of over 16,000 Best Buy employees. The action settled for $5 million in 2010.

Lyons v. Elephant Bar Restaurant
Alameda County Superior Court Case No. RG08422299
> Scott Cole & Associates, APC filed an action against this restaurant chain challenging violations of California law for denial of meal and rest periods on behalf of the restaurant's hourly, non-exempt employees.

Mambuki, et al. v. Securitas Security Services USA, Inc.
Santa Clara County Superior Court Case No. 1-05-CV-047499 (JCCP No. 4460)
> Scott Cole & Associates, APC filed a claim against this defendant for violations of
> California law (for denial of meal and rest periods) on behalf of the company's
> California-based security guards. This coordinated proceeding settled in 2008 for $15
> million.

McFann, et al. v. Volt Telecommunications Group, Inc.
Riverside County Superior Court Case No. RIC475410
> (Los Angeles County Superior Court JCCP No. 4533)
> Scott Cole & Associates, APC filed this action on behalf of company field technicians to
> recover reimbursement for business-related expenses and for unpaid wages. The Court
> approved an Arbitration Award entered pursuant to a $3.45 million classwide settlement
> in 2009.

Menchykv. Beverages & More, Inc.
Alameda County Superior Court Case No. RG05196918
> Scott Cole & Associates, APC filed this action for violations of California law for unpaid
> overtime wages and for failure to provide meal and rest periods. Although a small
> putative class (98 class members), it settled for $1.2 million, representing one of the
> highest per-workweek settlements in California at the time.

Moore v. Albertsons Inc.
United States District Court, Northern District of California, Case No. 3:04-CV-03731
> Scott Cole & Associates, APC filed this action for violations of California's overtime
> laws on behalf of the company's California Drug Managers. This action settled for $2.35
> million, again representing one of highest per-workweek settlements in the state at the
> time.

Nunez v. AC Square, Inc., et al.
San Mateo County Superior Court Case No. CIV479622
(Consolidated with Case Nos. 464144 and 473571)
> Scott Cole & Associates, APC filed this class action on behalf of all California
> Technicians employed by AC Square (during the applicable claims period) to recover
> unpaid wages including overtime pay, meal and rest period compensation, related
> penalties and un-reimbursed expenses. This action settled for $800,000.

O'Brien v. Edward D. Jones & Co., LP.
United States District Court, Northern District of Ohio, Case No. 1:08-CV-00529
> We filed a nation-wide (and New York State) class action against this financial securities
> company on behalf of the company's financial services representatives to recover
> overtime pay and related penalties. We served on a Lead Counsel Committee in this
> action, which settled in 2007 for $19 million.

O'Hara, et al. v. Factory 2-U Stores, Inc.
Alameda County Superior Court Case No. 834123-5
> This class action, filed in 2000, alleged mis-classification of Factory 2-U's California Store Managers and Assistant Store Managers as exempt from overtime pay. In 2001, the Alameda County Superior Court certified two sub-classes (Managers and Assistant Managers) and, in 2002, granted final approval to a settlement of the action for $2 million.

Ramirez, et al. v. The Coca Cola Company, et al.
San Bernardino County Superior Court Case No. RCV 056388 (JCCP No. 4280)
> This is one of two companion actions we prosecuted against this soft drink giant for violations of California's overtime laws. This action was brought on behalf of over 4,000 hourly workers at the company's bottling, distribution and sales centers who were allegedly forced to work "off-the-clock" for Coca Cola and/or whose time records were ordered modified by the company. This well-publicized action settled for $12 million and on very favorable terms for the claimants. We filed the first action on these issues and ultimately worked with co-counsel for the proposed class of workers.

Rowe, et al v. California Commerce Casino, Inc.
Los Angeles County Superior Court Case No. BC321283
(Consolidated with Case Nos. BC288079 and BC320171)
> Scott Cole & Associates, APC filed a claim against this casino for violations of California law for failure to pay overtime to their dealers. Additionally, it was alleged that the casino demanded that its dealers pay a portion of their wages into a "tip pool" from which the supervisors (who had authority over the dealers) drew extra income. We and our co-counsel have settled the action, in part, and obtained certification of the remaining claims following an adversarial proceeding.

Schweinsburg v. Paragon Systems, Inc.
United States District Court, Central District of California, Case No. 2:09-CV-08139
> Scott Cole & Associates, APC filed a claim in 2009 against Paragon Systems, Inc., for violations of California law for denial of meal and rest periods toward non-exempt security guards. This case settled for the policy limit of $885,410.

Thomas, et al. v. Cal. State Auto. Assoc., et al.
Alameda County Superior Court Case No. CH217752
> Scott Cole & Associates, APC filed this class action litigation on behalf of all California claims adjusters working for CSAA after mid-January 1997. This lawsuit alleged that, during those years, CSAA mis-classified these workers as exempt "administrators" and refused to pay them for overtime hours worked. This lawsuit settled for $8 million. We commenced this action and served as co-counsel for the nearly 1,200 claims representatives.

Tierno v. Rite Aid Corporation

United States District Court, Northern District of California, Case No. 3:05-CV-02520

    Scott Cole & Associates, APC filed this action against Rite Aid Corporation on behalf of its salaried California Store Managers. It was alleged that defendant, purportedly the nation's third largest drug store chain, failed to pay overtime to those workers and denied them their meal and rest periods. In 2006, the federal court certified the class in this action, and approved our $6.9 million non-reversionary settlement in 2009.

Torres, et al. v. ABC Security Services, Inc.

Alameda County Superior Court Case No. RG04158744

    Scott Cole & Associates, APC filed this litigation, alleging violations of Cali- fornia law for denial of meal and rest periods on behalf of the company's security guards. This action received class certification status in 2006 and settled for $495,000.

**Other Mass and/or Complex Litigation Experience:**

In Re Tosco SFR Litigation

Contra Costa County Superior Court Case No. C97-01637

    During incidents on April 16, 1997 and, again, on January 7, 1998, the Tosco (old Unocal) Refinery in Rodeo, California released toxic chemicals airborne into the environment. These harmful substances traveled airborne into neighboring communities, seriously affecting the health of citizens and local workers. Our firm served as Lead Counsel in this complex litigation and represented thousands of members of the community in that role. We settled this matter for $2.5 million, the funds from which were disbursed to over 2,000 claimants who participated in the settlement.

In Re Unocal Refinery Litigation

Contra Costa County Superior Court Case No. C94-04141

    In response to Unocal's 16-day airborne release of chemicals over the County of Contra Costa in 1994, we filed a class action against the corporation on behalf of thousands of victims and thereafter served as one of a handful of firms (among dozens of law firms of record) on the Plaintiffs' Steering Committee. After hard-fought litigation, the matter eventually settled for $80 million.

In Re Westley Tire Fire Litigation

Santa Clara County Superior Court Case No. CV 801282

    On September 22, 1999, lightning struck and ignited a pile of approximately 7 million illegally stored waste tires in Westley, California, a town about 70 miles east of San Francisco. Over the subsequent five weeks, the fire spewed smoke and carcinogens over a large portion of the State of California. Our firm served as the (sole) Lead and (shared) Liaison Counsel over a Plaintiffs' Steering/Management Committee in the consolidated actions against the owners and operators of this tire pile and related entities. These cases

sought compensation for those individuals and businesses suffering personal and/or property damages as a result of these toxic substances and the fire's fall-out. In 2001, we reached a settlement with one defendant (CMS Generation Co.) for $9 million. In 2003, the Court granted final approval of the settlement. In 2005, two of the remaining defendants settled for an aggregate amount of roughly $1.4 million.

Onyeige, et al. v. Union Telecard Alliance, LLC
U.S.D.C. Northern District of California, Case No. 3:05-CV-03971
(U.S.D.C., District of New Jersey, MDL No. 1550)
   Scott Cole & Associates, APC filed an action against Union Telecard Alliance, LLC alleging negligent misrepresentation and for deceptive advertising practices related to the marketing of its pre-paid telephone calling cards. This action settled for approximately $22 million.

Witriol, et al. v. LexisNexis., et al.
U.S.D.C., Southern District of California, Case No. 3:06-CV-02360
   Scott Cole & Associates, APC filed an action against this company for its allegedly-unlawful disclosure of private credit, financial and/or other personal information. This action settled for up to $2.8 million.


**Notable Appellate Experience:**

Baddie v. Berkeley Farms, Inc. (9th Cir. 1995) 64 F.3d 487
   Case No. 93-17187

Dunbar v. Albertson's, Inc. (2006) 141 Cal.App.4th 1422
   First Dist., Division 1, Case No., A111153

Kullar v. Foot Locker Retail, Inc. (2008) 168 Cal.App.4th 116
   Case No. A119697

O'Hara v. Factory 2-U Stores, Inc. (2003) Not Reported in Cal.Rptr.3d, 2003 WL 22451991
   First District, Division 4, Case No. A101452

Taylor v. Park Place Asset Management, et al. (1999)
   First Dist., Division 5, Case No. A086407

Whiteway v. Fedex Kinko's Office and Print Services (9th Cir. 2009) 319 Fed.Appx. 688
   Case No. 07-16696


Scott Cole & Associates, APC // Class Action Attorneys
1970 Broadway, Ninth Floor // Oakland, California 94612
Telephone: (510) 891-9800 // Facsimile: (510) 891-7030 // Web Site: www.scalaw.com

# EXHIBIT E

**Scott Cole & Associates, APC**
**Moore v. Fitness International Lodestar**
**As of September 30, 2013**

| Employee | Duration | Rate | Lodestar | Percentage |
|---|---|---|---|---|
| Externs | 35.30 | 180.00 | 6,354.00 | 6% |
| Charles Davis | 21.90 | 135.00 | 2,956.50 | 4% |
| Brandon D. Eisenberg | 79.80 | 180.00 | 14,364.00 | 14% |
| Daniel C. Keller | 83.90 | 180.00 | 15,102.00 | 15% |
| Kate T. Ngo | 30.80 | 180.00 | 5,544.00 | 5% |
| Mari L. Medrano | 12.10 | 180.00 | 2,178.00 | 2% |
| Jessica L. Campbell | 20.70 | 320.00 | 6,624.00 | 4% |
| Hannah R. Salassi | 57.50 | 425.00 | 24,437.50 | 10% |
| Matthew R. Bainer | 57.30 | 525.00 | 30,082.50 | 10% |
| Molly A. Desario | 88.60 | 525.00 | 46,515.00 | 15% |
| Scott E. Cole | 89.60 | 700.00 | 62,720.00 | 16% |
| **TOTAL** | **577.50** | | **216,877.50** | **100%** |

# EXHIBIT F

**Scott Cole & Associates, APC**
**Moore v. Fitness International Cost Journal**
**As of September 30, 2013**

| Date | Description | Quantity | Price | Value |
|------|-------------|----------|-------|-------|
| 06/22/12 | San Diego County Clerk of Court | 1.00 | 350.00 | 350.00 |
| 08/28/12 | David A. Rotman | 1.00 | 8,000.00 | 8,000.00 |
| 09/10/12 | Molly Desario; Parking | 1.00 | 21.00 | 21.00 |
| 09/10/12 | Scott Cole; Business Meal | 1.00 | 4.35 | 4.35 |
| 09/10/12 | Scott Cole; Parking | 1.00 | 32.00 | 32.00 |
| 02/20/13 | USDC Southern District of California | 1.00 | 206.00 | 206.00 |
| | Copies | 1,330.00 | 0.25 | 332.50 |
| | Delivery and Freight Services | 1.00 | 137.45 | 137.45 |
| | Document Production | 1.00 | 223.03 | 223.03 |
| | Postage | 1.00 | 78.82 | 78.82 |
| | Rerearch Services | 1.00 | 717.23 | 717.23 |
| | Teleservices | 1.00 | 465.07 | 465.07 |
| | Vendor for Filing and Serving | 1.00 | 131.54 | 131.54 |
| | **TOTAL** | | | **10,698.99** |

# EXHIBIT G

1  Matthew R. Bainer, Esq. (S.B. #220972)
   Molly A. DeSario, Esq. (S.B. #230763)
2  Hannah R. Salassi, Esq. (S.B. #230117)
   **SCOTT COLE & ASSOCIATES, APC**
3  1970 Broadway, Ninth Floor
   Oakland, California 94612
4  Telephone: (510) 891-9800
   Facsimile: (510) 891-7030
5  Email: mbainer@scalaw.com
   Email: mdesario@scalaw.com
6  Email: hsalassi@scalaw.com
   Web:  www.scalaw.com
7
   Attorneys for Representative Plaintiffs
8  and the Plaintiff Class

9

10              **UNITED STATES DISTRICT COURT**

11          **SOUTHERN DISTRICT OF CALIFORNIA**

12

13

14  QUENTIN MOORE and LEAH              )   **Case No. 3:12-CV-1551-LAB-NLS**
    ERVIN, individually, and on behalf of )
15  all others similarly situated,       )   <u>CLASS</u> <u>ACTION</u>
                                         )
16                        Plaintiffs,    )   **DECLARATION OF QUENTIN MOORE IN**
                                         )   **SUPPORT OF A MOTION FOR AN ORDER:**
17  vs.                                  )
                                         )   **(1)   GRANTING FINAL APPROVAL OF**
18  FITNESS INTERNATIONAL, LLC,          )   **CLASS/COLLECTIVE ACTION**
                                         )   **SETTLEMENT AGREEMENT;**
19                        Defendant.     )   **(2)   AWARDING ATTORNEYS' FEES**
                                         )   **AND COSTS TO CLASS COUNSEL;**
20                                       )   **(3)   APPROVING ENHANCEMENT**
                                         )   **AWARD TO THE CLASS**
21                                       )   **REPRESENTATIVES;**
                                         )   **(4)   AWARDING REIMBURSEMENT OF**
22                                       )   **CLAIMS ADMINISTRATION FEES**
                                         )   **AND COSTS; AND**
23                                       )   **(5)    ENTERING JUDGMENT OF**
                                         )   **DISMISSAL WITH PREJUDICE**
24 _____   )
                                         )   **Date:      November 12, 2013**
25                                       )   **Time:      12:00 p.m.**
                                         )   **Room:      Courtroom 14A**
26                                       )   **Judge:     The Honorable Larry Alan Burns**

27

28

*(vertical left margin)* SCOTT COLE & ASSOCIATES, APC / ATTORNEYS AT LAW / THE TOWER BUILDING / 1970 BROADWAY, NINTH FLOOR / OAKLAND, CA 94612 / TEL: (510) 891-9800

DocuSign Envelope ID: 29A1723E-72E7-421B-BBA2-9BDD8A3EBAAZ

Case 3:12-cv-01551-LAB-NLS   Document 32-1   Filed 10/08/13   Page 97 of 103

I, Quentin Moore, do hereby declare as follows:

1.     I am over eighteen years old and unless the context indicates otherwise, I have personal knowledge of the following facts, and if called as a witness, I could and would testify competently to them. I am one of the named Plaintiffs in the above-captioned action. I make this declaration in support of the parties' Joint Motion for Final Approval of Class/Collective Action Settlement.

2.     I have been employed by defendant Fitness International, LLC ("Fitness International" or "Defendant") as a personal trainer from approximately December, 2010 to present.

3.     Fitness International runs sports and fitness clubs, and one of the services it offers its members is one-on-one personal training sessions. I am/was employed by Fitness International (also known as LA Fitness) as a Personal Trainer during the time period covered by this litigation.

4.     As detailed in the First Amended Complaint, among other problems that I experienced, I was repeatedly not compensated for all hours I actually worked, but instead was compensated only for the time spent providing personal training sessions.

5.     While I was only paid for personal training sessions, I was required to remain at the club to research and prepare a customized workout plan for each client, communicate with club members and clients, complete paperwork and attend meetings. L.A. Fitness required me to take certain certification classes and renew my certifications without reimbursement. I also had to pay for several work-related items in connection with the personal training Sessions that I taught at L.A. Fitness.  Furthermore, I was never able to take an uninterrupted 10 minute rest period during shifts lasting more than 3.5 hours.

6.     I contacted the attorneys at Scott Cole & Associates, APC ("SCA") about the prospect of litigating my claims against Fitness International. Although the attorney-client privilege requires that I not reveal the specifics of communications with my attorneys, I understand that the privilege is not waived by stating, in general, the information that I provided to SCA.

7.     The attorneys at SCA explained to me the legal bases for bringing a case against Fitness International, the advantages and disadvantages of litigation and my responsibilities as both a Plaintiff and a Class Representative.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

DocuSign Envelope ID: 29A1723E-72E7-421B-BBA3-9BDD6A3EBAA7

Case 3:12-cv-01551-LAB-NLS   Document 32-1   Filed 10/08/13   Page 98 of 103

8. By deciding to litigate my FLSA claims as part of this collective action, I agreed to pursue not only my own wage and hour claims, but the claims of all personal trainers in the United States. I understood that I would, if necessary, put the interests of the FLSA Class ahead of my own.

9. Most importantly, I agreed to participate actively in the lawsuit, knowing that my name would be associated with the lawsuit, and that the result would be the risk that finding other jobs might be more difficult if future employers learn about the lawsuit. I also accepted the risk that, if the case were not successful, I might be liable for significant costs, which would be financially devastating to me.

10. Throughout the litigation, I talked with my attorneys about the status of the case, helped explain Defendant's policies and procedures and my work experience, and assisted my attorneys in gathering evidence. Separately, I spent time reviewing my personal employment records to select documents that I believed would assist my attorneys in litigating my case. Furthermore, I remained on-call and readily accessible on the date of the mediation and discussing the settlement with my attorneys.

11. I have reviewed the terms of the proposed settlement. My attorneys explained the specifics of how the settlement would work and I accepted the settlement because the proposed outcome seemed to be a good result. Based upon my attorneys' evaluation and recommendation, and my own review, I believe the settlement is fair and reasonable and adequately compensates members of the FLSA Class.

12. As part of the settlement, I agreed to execute a general release of claims, which is broader than the release by all of the other members of the FLSA Class.

13. I believe that a $2,500 Enhancement Award is fair, reasonable, and adequate for the hours that I spent participating in the prosecution and settlement of this case, the stigma of being branded a "troublemaker" by prospective employers, and for the general release that I was required to sign.

14. I entered into a consensual contingency fee agreement with Class Counsel, and I wholeheartedly endorse the award of attorneys' fees and costs they are seeking.

///

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

DocuSign Envelope ID: 29A1723E-72E7-421B-BBA2-9BDD6A3EBAA7

1    15.    I will not receive any undisclosed compensation in this lawsuit outside of my share as

2  a class member and whatever incentive payment the Court approves at the final approval hearing.

3

4    I declare under penalty of perjury under the laws of the State of California and the United

5  States that the foregoing is true and correct.

6

7    Executed this 30th of September, 2013, at Riverside, California.

8

9    

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

-4-

Declaration Of Quentin Moore In Support Of Joint Motion For Final Approval Of Class/Collective Action Settlement

# EXHIBIT H

Case 3:11-cv-01319-L-MDD   Document 79-6   Filed 05/27/14   PageID.756   Page 102 of 104

DocuSign Envelope ID: 91CB0FC3-FD27-4953-A438-0E429B8393F9
Case 3:12-cv-01551-LAB-NLS   Document 32-1   Filed 10/08/13   Page 101 of 103

Matthew R. Bainer, Esq. (S.B. #220972)
Molly A. DeSario, Esq. (S.B. #230763)
Hannah R. Salassi, Esq. (S.B. #230117)
**SCOTT COLE & ASSOCIATES, APC**
1970 Broadway, Ninth Floor
Oakland, California 94612
Telephone: (510) 891-9800
Facsimile: (510) 891-7030
Email: mbainer@scalaw.com
Email: mdesario@scalaw.com
Email: hsalassi@scalaw.com
Web:   www.scalaw.com

Attorneys for Representative Plaintiffs
and the Plaintiff Class

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUENTIN MOORE and LEAH ERVIN, individually, and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> FITNESS INTERNATIONAL, LLC, <br><br> Defendant. | Case No. 3:12-CV-1551-LAB-NLS <br><br> <u>CLASS</u> <u>ACTION</u> <br><br> **DECLARATION OF LEAH ERVIN IN SUPPORT OF A MOTION FOR AN ORDER:** <br><br> **(1)    GRANTING FINAL APPROVAL OF CLASS/COLLECTIVE ACTION SETTLEMENT AGREEMENT;** <br> **(2)    AWARDING ATTORNEYS' FEES AND COSTS TO CLASS COUNSEL;** <br> **(3)    APPROVING ENHANCEMENT AWARD TO THE CLASS REPRESENTATIVES;** <br> **(4)    AWARDING REIMBURSEMENT OF CLAIMS ADMINISTRATION FEES AND COSTS; AND** <br> **(5)     ENTERING JUDGMENT OF DISMISSAL WITH PREJUDICE** <br><br> **Date:     November 12, 2013** <br> **Time:     12:00 p.m.** <br> **Room:    Courtroom 14A** <br> **Judge:    The Honorable Larry Alan Burns** |

Declaration Of Leah Ervin In Support Of Joint Motion For Final Approval Of Class/Collective Action Settlement

DocuSign Envelope ID: 91CB0FC3-FD27-4953-A438-0E429B8393F9

Case 3:12-cv-01551-LAB-NLS   Document 32-1   Filed 10/08/13   Page 102 of 103

I, Leah Ervin, do hereby declare as follows:

1.      I am over eighteen years old and unless the context indicates otherwise, I have personal knowledge of the following facts, and if called as a witness, I could and would testify competently to them. I am one of the named Plaintiffs in the above-captioned action. I make this declaration in support of the parties' Joint Motion for Final Approval of Class/Collective Action Settlement.

2.      I have worked for Defendant Fitness International, LLC ("Fitness International" or "Defendant") in Long Beach, California as an Operations Manager (a non-exempt position) from April 2012 to the present.

3.      As detailed in the First Amended Complaint, among other problems that I experienced, Defendant (also known as LA Fitness) allowed and expected operations managers and other non-exempt employees to perform off-the-clock work, without compensation. Additionally, Defendant's policies and practices do not always allow me the opportunity to take timely and complete rest breaks. I was never compensated with an additional hour of pay for rest break violations. Finally, I drive three days a week on work-related business and am not reimbursed for mileage.

4.      By deciding to litigate my claims as part of this class action, I understand that I agreed to pursue my own claims, and the claims of non-exempt gym-level employees in LA Fitness gyms in California. I understand that my name will now be associated with this lawsuit, and accepted the risk that future employers might learn of my participation.

5.      I have spoken with my attorneys regarding the claims in this litigation, and of my responsibilities as both a Plaintiff and a Class Representative.

6.      Most importantly, I agreed to participate actively in the lawsuit, knowing that my name would be associated with the lawsuit, and that the result would be the risk that finding other jobs might be more difficult if future employers learn about the lawsuit. I also accepted the risk that, if the case were not successful, I might be liable for significant costs, which would be financially devastating to me.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

DocuSign Envelope ID: 91CB0FC3-FD27-4953-A438-0E429B8393F9

7.      Throughout the litigation, I talked with my attorneys about the status of the case, helped explain Defendant's policies and procedures and my work experience, and assisted my attorneys in gathering evidence. Separately, I spent time reviewing my personal employment records to select documents that I believed would assist my attorneys in litigating my case.  Furthermore, I remained on-call and readily accessible on the date of the mediation and discussing the settlement with my attorneys.

8.      As part of the settlement, I agreed to execute a general release of claims, which is broader than the release by all of the other members of the Settlement Class.

9.      I believe that a $2,500 Enhancement Award is fair, reasonable, and adequate for the hours that I spent participating in the prosecution and settlement of this case, the stigma of being branded a "troublemaker" by prospective employers, and for the general release that I was required to sign.

10.     I understand the terms of the proposed settlement, and I believe the settlement is fair and reasonable and adequately compensates Class Members.

11.     I entered into a consensual contingency fee agreement with Class Counsel, and I wholeheartedly endorse the award of attorneys' fees and costs they are seeking.

12.     I will not receive any undisclosed compensation in this lawsuit outside of my share as a class member and whatever incentive payment the Court approves at the final approval hearing.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 30th of September, 2013, at Long Beach, California.

DocuSigned by:

*Leah Ervin*

82ED324A80004C7...

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800